UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10269-RWZ

MICHAEL P. HUBERT, DAVID HINCHLIFFE and WILLIAM TRAINOR

v.

MEDICAL INFORMATION TECHNOLOGY, INC.,
MEDICAL INFORMATION TECHNOLOGY PROFIT SHARING PLAN,
A. NEIL PAPPALARDO, LAWRENCE A. POLIMENO, RONALD L. DRISCOLL,
EDWARD B. ROBERTS, MORTON E. RUDERMAN and L.P. DAN VALENTE

MEMORANDUM OF DECISION

March 20, 2006

ZOBEL, D.J.

   In 1973, defendant Medical Information Technology, Inc. ("Meditech," or "Company"), a Massachusetts corporation, established a profit sharing plan on behalf of its employees in order to provide pension benefits upon retirement. The Medical Information Technology Profit Sharing Plan (the "Plan") is governed by the Employment Retirement Income Security Act ("ERISA"). Meditech makes cash and stock contributions to the Plan, and upon termination of employment, each employee receives a cash payment in the amount of that employee's vested interest in the Plan. Because Meditech stock accounts for approximately 85 percent of the Plan's holdings, the total value of an employee's interest upon leaving Meditech depends largely upon valuation of the stock held in the employee's Plan account. Such valuation, among other responsibilities for the Plan, is handled by the sole trustee of the Plan, defendant A. Neil Pappalardo ("Pappalardo"), who oversees the Plan in cooperation with

Meditech's directors, defendants Lawrence A. Polimeno, Roland L. Driscoll, Edward B. Roberts, Morton E. Ruderman and L.P. Dan Valente (collectively, the "Directors").

Plaintiff Michael P. Hubert worked for Meditech until 2004, while his coworkers and co-plaintiffs David Hinchliffe and William Trainor each left in 1998. According to plaintiffs, Pappalardo has knowingly undervalued Meditech's stock for at least the past eight years, and the Directors have approved this undervaluation. As a result, plaintiffs received smaller cash payments from the Plan upon termination than otherwise due if Pappalardo had valued the Company stock in compliance with a modern methodology for appraising fair market value. According to plaintiffs, these Plan payments do not fairly reflect the true value of plaintiffs' interests as a function of the Company's financial success. In an effort to recover the balance, plaintiffs filed the instant suit for failure to pay benefits due under the Plan in violation of ERISA (Count 1) and for breach of fiduciary duty owed under ERISA (Count 2). After defendants filed a Motion to Dismiss, plaintiffs filed an Amended Complaint. Defendants now move for dismissal of the Amended Complaint.

Defendants raise several grounds for dismissal. First, they argue that the facts alleged in the Amended Complaint, even if true, do not establish plaintiffs' rights to any additional benefits as alleged in Count 1. Defendants assert this ground as a matter of logic, essentially arguing that the Company's annual contributions were fixed amounts, and higher valuation of the stock would have simply led to fewer shares actually being allocated to the Plan. They argue that plaintiffs seek to benefit from both a low valuation at the time stock is contributed to the Plan, so that more shares are assigned,

and a high valuation at the time stock is distributed from the Plan, so that termination payments would reflect higher values without having reduced the number of shares originally contributed to the Plan and allocable to the individual plaintiffs.  However, defendants' theory does not foreclose the possibility that an original contribution of fewer, more highly valued shares would, by the time plaintiffs terminated their employment and under an independent appraisal, still have increased in value more quickly than reflected by defendants' methodology, especially given plaintiffs' claims of Meditech's financial strength.  In other words, the parties' competing valuation methodologies may involve different rates of growth (or decline) over time, so that the difference in actual share values each year would not necessarily be a constant margin.  Defendants' assertion that plaintiffs' have not adequately pled a loss in benefits is, thus, not persuasive.  Their second argument that regards standing but also relies upon this first argument similarly fails.

Third, defendants claim that the Amended Complaint fails to allege sufficiently arbitrary and capricious conduct by defendants in making discretionary decisions regarding benefits valuations.  While defendants correctly identify the standard of review to be arbitrary and capricious, plaintiffs appropriately note that "[i]n applying [this standard], . . . the existence of a conflict of interest on the part of the administrator is a factor which must be considered." Wright v. R.R. Donnelly & Sons Co. Group Benefits Plan, 402 F.3d 67, 74 (1st Cir. 2005).  On the face of the Amended Complaint, plaintiffs have alleged such a conflict.  (See Am. Compl. ¶¶ 56-58).  Further fact-finding

as to whether plaintiffs can sustain their assertion is, at this stage in the litigation, premature. Accordingly, defendant's motion on this basis is denied.

Fourth, defendants note that plaintiffs did not exhaust their remedies under the Plan prior to filing the instant suit. "Before a plaintiff asserts an ERISA claim, . . . he must first exhaust his administrative remedies." Madera v. Marsh USA, 426 F.3d 56, 61 (1st Cir. 2005). Plaintiffs do not dispute that they never filed a formal claim for review of the issues addressed in the instant suit. However, they challenge the existence of administrative remedies, as the Plan alluded to "rules . . . for filing a claim" that allegedly never materialized, and further deny that they ever received notice that such remedies were available. (See Am. Compl. ¶¶ 26-30; Ex. A, at 8). If plaintiffs' allegations are true, then they may qualify for relief or exception from the exhaustion requirement. See Madera, 426 F.3d at 61-62. On the present record, dismissal for failure to exhaust is inappropriate.

Next, defendants challenge Count 2 as an attempt by plaintiffs to repackage Count 1 as a fiduciary duty claim, even though "individuals cannot obtain compensatory or punitive damages for breach of fiduciary duty." Watson v. Deaconess Waltham Hosp., 141 F. Supp. 2d 145, 150 (D. Mass. 2001). Plaintiffs argue that Count 2 differs from Count 1 in that the latter pleads a contractual breach while the former pleads a breach of defendants' statutory duties of loyalty and care. To remedy a fiduciary breach under ERISA, plaintiffs may only obtain "appropriate equitable relief." 29 U.S.C. § 1132(a)(3). In Count 2, plaintiffs seek three remedies: (1) restitution, (2) disgorgement of unjust enrichment, and (3) an injunction that requires defendants to

Case 1:05-cv-10269-RWZ    Document 38    Filed 03/20/2006    Page 5 of 12

hire an outside appraiser for future valuations of Company stock.  As to the first, "for restitution to lie in equity, the action must generally seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 (2002).  Although plaintiffs characterize their restitution as seeking to "make whole the named plaintiffs," the remedy derives from benefits that plaintiffs believe they are entitled to under the terms of the Plan.  It is, as defendants contend, essentially the same compensation sought in Count 1.  As such, it amounts to legal restitution, not equitable restitution, and "this fine distinction between restitution at law and restitution in equity" forecloses plaintiffs' ability to obtain legal restitution for the alleged fiduciary breach.  Id.

With respect to plaintiffs' second remedy that defendants be ordered to disgorge unjust enrichment, a problem arises with the requirement that restitution in equity be able to "clearly be traced to particular funds or property in the defendant's possession." Id. at 213.  In the context of a suit by an ERISA plan to recover funds already paid to a beneficiary, "courts have applied a three-part test: 'Does [plaintiff] seek to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to [plaintiff], and (3) that are within the possession and control of the [defendant]?'" Admin. Comm. of the Wal-Mart Assoc. Health and Welfare Plan v. Willard, 393 F.3d 1119, 1122 (10th Cir. 2004).  Here, it is not at all clear how plaintiffs could prove that defendants in fact purchased more shares as a result of the alleged undervaluation than they otherwise would have bought.  Additionally, as a practical matter, defendants

will not realize profit from these holdings until they sell their shares, and there is no way to determine at this time what the eventual selling price will be. Thus, the actual amount by which defendants may be allegedly unjustly enriched, and thus to be disgorged, is not, according to any allegation set forth by plaintiffs, specifically identifiable or susceptible to reasonable calculation. Moreover, regarding the second prong of the test, defendants argue that plaintiffs fail to explain at whose expense defendants allegedly unjustly enriched themselves and whether or how anyone was, in fact, harmed by the conduct. Plaintiffs' allegation that Pappalardo and other "insiders" purchased more stock and therefore retained tighter control over the company because the price was artificially low necessarily implies that defendants obtained such control improperly as against other Company owners, namely the other shareholders (including plaintiffs and the Plan). Again, though defendants may still have purchased the same number of shares at a higher price, and even if the difference between the purchase prices may be characterized as unjust enrichment, plaintiffs have not clarified whether or why this amount would belong to them. Thus, the portion of Count 2 regarding unjust enrichment is dismissed.

    The remaining plea for prospective relief through an injunction requiring outside appraisal of the stock for future valuations may qualify as equitable, but plaintiffs have not demonstrated standing to obtain this remedy. Under Article III of the Constitution, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). As defendants argue, the injunctive relief sought in Count 2

cannot redress plaintiffs' alleged injuries, because the relief sought is prospective and plaintiffs are no longer members of the Plan.  Plaintiffs have sought class certification, but in defining the "putative class" as those individuals who "had the same or similar experience when receiving their [Plan] distributions," they necessarily include only former Company employees in the class.  Because neither plaintiffs nor any of the putative members of the asserted class would benefit from the order of an injunction affecting the future administration of the Plan, plaintiffs do not have standing to seek this relief.  Because none of the remedies sought by plaintiffs in Count 2 is permitted under relevant legal authority, "their suit [on this claim] is not authorized" under ERISA.  Great-West Life, 534 U.S. at 218.  The motion to dismiss Count 2 is allowed as to all defendants.

Defendants raise a statute of limitations defense as an additional basis for dismissing both Counts 1 and 2.  As Count 2 is dismissed, only the arguments with respect to Count 1 are considered.  "Because Congress did not provide a statute of limitations in the ERISA statute for [benefits] claims, federal courts must apply the limitations period of the state-law cause of action most analogous to the federal claim." Muldoon v. C.J. Muldoon & Sons, 278 F.3d 31, 32 (1st Cir. 2002).  Plaintiffs urge analogy to the six-year limitations period for contract actions under Massachusetts law, while defendants recommend the three-year limitations period under the Massachusetts wage payment statute.  Defendants rely upon a thoroughly-reasoned Third Circuit decision that found "[c]laims for recalculation of benefits already paid are essentially claims for past due 'wages' . . . [and] are subject to the Pennsylvania Wage

Payment and Collection Law's three-year limitation on actions for wages past due." Gluck v. Unisys Corp., 960 F.2d 1168, 1182 (3rd Cir. 1992). However, the Third Circuit also acknowledged that "where the ERISA claims asserted differ from those presented in [prior cases], [the court] should not rotely apply the same limitations period . . . ." Id. at 1180. For example, the Third Circuit found the Pennsylvania statute of limitations for contracts actions applied to claims for benefits that were bargained for, but noted that the Pennsylvania wage law limitations period might apply to claims for wages due on regular paydays. Id. at 1180-81. Of relevance in this case, the Third Circuit also distinguished, for statute of limitations purposes, between claims for past due wages and claims for benefits pursuant to "an ERISA violation," finding these "not analogous." Id.

> An employer's delinquency or an employee's receipt of diminished payment gives immediate, obvious notice to an employee that something is amiss, but an ERISA violation or a reduction in future benefits may be subtle and will go unnoticed far more often than delinquency. Furthermore, the analogy in [prior cases] between the 'wages' covered by Pennsylvania law and the delinquent employer contributions – which had been collectively bargained for – becomes inoperable when ERISA claims are based on statutory violations, plan interpretation and future benefits.

Id.

For the reasons articulated by the Third Circuit in Gluck, plaintiffs' claim for benefits is distinguishable from a claim for past due wages and renders inapposite the statute of limitations established by the Massachusetts wage payment statute. Additionally, as plaintiffs' contend, to the extent that the payments at issue constitute deferred compensation, "deferred compensation contributions are not 'wages' under

8

the weekly wage law." Boston Police Patrolmen's Ass'n, Inc. v. City of Boston, 435 Mass. 718, 721 (2002). Defendants argue that the characterization of deferred compensation as not constituting wages applies only when the contributions are not property of the employee, and that the Plan contributions were, to the contrary, plaintiffs' property. The characterization in Boston Police was driven, however, not by whether the contributions were employee property, but rather by the original intent behind the deferred compensation plan, namely, to withhold a portion of participating employees' salaries for later payment and "the benefit of a tax deferment." Id. at 720. If the deferred compensation constituted wages, then the tax benefit would not be available. Here, defendants do not allege that the contributions to the Plan on behalf of participants were intended to be wages, in the sense that tax would be due and owing upon contribution. Accordingly, the reasoning that supported the characterization in Boston Police dictates the same result in the instant case.

    While Gluck declined to apply the Pennsylvania contracts statute of limitations because the benefits at issue had not been bargained for, Massachusetts courts have ruled otherwise. When a plaintiff sues for benefits that "are incidents of the plaintiff's employment," and are provided "under an employment contract . . . the appropriate statute of limitations is six years [in accordance with the statute of limitations for contract actions]." Chambers v. Lemuel Shattuck Hosp., 41 Mass. App. Ct. 211, 212-213 (1996), citing Jones v. Wayland, 374 Mass. 249, 260 (1978)(finding payments for leave when incapacitated are "incidents of [plaintiff's] employment and are contingent on the continued employment of [plaintiff]," such that "[plaintiff]'s resignation . . .

operated to terminate his right to continued compensation . . ."). The Chambers court applied the statute of limitations for contractual disputes, because the benefits sought were originally provided as a result of the plaintiff's status as an employee, even though the benefits sought were mandated by statute and not the employee's contract. Similarly, in the instant case, defendants authorized contributions to the Plan on plaintiffs' behalf simply because plaintiffs were employees. Logically, then, plaintiffs' suit regarding Plan contributions is analogous to suits for payments that are incidents of employment, and the appropriate state statute of limitations is the six-year period for contracts claims as applied by the Massachusetts state courts.

With respect to determining the date on which plaintiffs' action accrued, "[c]onsistent with the [federal] discovery rule, the general rule in an ERISA action is that a cause of action accrues after a claim for benefits has been made and has been formally denied." Union Pacific R. Co. v. Beckham, 138 F.3d 325, 330 (8th Cir. 1998). Because plaintiffs never formally filed a claim for benefits, the appropriate date for accrual is less clear. Plaintiffs assert that defendants' conduct constituted a continuing violation, since the undervaluation occurred on an annual basis. This theory is unsatisfactory, because it places no burden on the plaintiffs to exercise reasonable diligence. Defendants argue that the action accrued on the date that the allegedly discounted payments were distributed by the Plan to the plaintiffs, since the amount itself should have raised plaintiffs' awareness of an issue. This suggestion better incorporates the expectation for reasonable diligence and is consistent with a rule set forth by the First Circuit in a case somewhat similar to the facts at hand. See Geo.

Knight & Co., Inc. v. Watson Wyatt & Co., 170 F.3d 210 (1st Cir. 1999). In that case, the plaintiff was an employer that established an ERISA plan, made contributions in amounts recommended by the defendant actuarial services company, and sued the company under state law when the plan was found to be underfunded. In determining, under the discovery rule, when the employer's action accrued, the First Circuit placed the burden on the employer to demonstrate when it "knew, or in the exercise of reasonable diligence should have known, about the Plan's 'underfunded' status," and based its finding on documentation that was available for review by the employer. Id. at 214.

Although the instant case concerns different underlying legal claims and the burden remains on defendants, as the asserting party, to demonstrate why Count 1 falls outside the statute of limitations, these differences do not undermine the relevance of the similar circumstances from which plaintiffs' Count 1 claim arose. Because plaintiffs derived their claim from data summarized over several years after 1998, the complaint as pled does not clearly fall outside the statute of limitations. The motion to dismiss is denied.

The defendant Directors filed separate motions to dismiss on an additional basis. Because these defendants were named only in Count 2, and Count 2 is dismissed, the separate motions are moot.

Accordingly, defendants' Motions to Dismiss the Amended Complaint (#5 and #24 on the docket) are denied as to Count 1 but are allowed as Count 2. Defendants' separate Motions to Dismiss (#3 and #26 on the docket) are moot.

|  |  |
|---|---|
| _____ | /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |