UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL P. HUBERT, WILLIAM TRAINOR, and DAVID HINCHLIFFE, Individually and On Behalf Of All Persons Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL INFORMATION TECHNOLOGY PROFIT SHARING PLAN, et al.<br><br>Defendants. | Civil Case No. 05-10269-RWZ |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH THE SUBPOENA DUCES TECUM FOR MICHAEL COLLORA

The defendants in this ERISA action have moved the Court for an order compelling the plaintiffs' lead counsel, Michael A. Collora. to appear for a deposition in this case. For the following reasons, plaintiffs Michael Hubert ("Mr. Hubert"), William Trainor ("Mr. Trainor"), and David Hinchliffe ("Mr. Hinchliffe") (collectively, "the Plaintiffs") respectfully request that this Court deny the defendants' motion.

### RELEVANT BACKGROUND

The parties have been engaged in discovery relating to the issue of class certification since May 1, 2006. On June 16, 2006, defendants Medical Information Technology, Inc. ("Meditech"), Medical Information Technology Profit Sharing Plan ("the Plan"), and A. Neil Pappalardo, Meditech's CEO and Chairman of the Board and the Plan's Trustee ("Mr. Pappalardo") (collectively, "the Defendants"), subpoenaed plaintiffs' lead counsel, Michael A. Collora, to produce documents and appear at a

deposition.  The undersigned promptly notified the Defendants by telephone that Mr. Collora objected to the subpoena, followed up with a letter in which Mr. Collora set forth his specific objections.  See Tab A (Letter from Michael A. Collora and Sara E. Noonan, dated July 5, 2006).[1]  The Defendants responded two weeks later by stating that they wished to question Mr. Collora about communications between him and his client, Mr. Hubert, that may have occurred at or around the time that Mr. Hubert offered to assist Meditech founder and fellow shareholder Dr. Jerome Grossman's efforts to force Meditech and its Directors – including defendant Pappalardo – to fairly value Meditech stock.[2]  See Tab B (Letter from Kevin P. Martin, dated July 18, 2006).  The Defendants also stated that they wished to question Mr. Collora about communications he may have had at or around that same time with Dr. Grossman's attorney, John Gilmore of DLA Piper Rudnick Gray Cary ("Mr. Gilmore") about Mr. Hubert's offer.  See id.

The Defendants have already copiously examined the facts surrounding Mr. Hubert's offer to assist Dr. Grossman.  They questioned Mr. Hubert about it during two separate depositions – once during the lawsuit filed by Dr. Grossman (but after this lawsuit had been filed) and again in this lawsuit.  See Tab C (Relevant portions of deposition of Michael Hubert in Grossman v. Medical Information Techonlogy, Inc. et al., dated July 14, 2005) at 6-25, 27-34, 47-50, 62-65, 122-31; Tab D (Relevant portions of deposition of  Michael Hubert in Hubert et al. v. Medical Information Technology

---

[1] Defense counsel was aware that the undersigned would be out of the office for over a week, beginning on Thursday, June 15, 2006.  The subpoena was left with the receptionist at Dwyer & Collora LLP on Friday, June 16, 2006, and the undersigned did not learn about it until returning from vacation on June 26, 2006.  On June 27, 2006, the undersigned informed defense counsel that Mr. Collora objected to the subpoena and that he would not appear at a deposition or produce documents.

[2] As the Court is aware, the Plaintiffs dispute the Defendants' characterization of Mr. Hubert's offer to assist Dr. Grossman's effort.  See Plaintiffs' Opposition to Defendants' Motion for Protective Order, dated July 26, 2006.  In the interest of efficiency, the relevant background contained in that Opposition are incorporated by reference into this Memorandum.

Profit Sharing Plan, et al., dated July 26, 2006) at 10-19, 53, 55-81, 163-67.  The Defendants have not alleged that Mr. Hubert gave inconsistent testimony during those depositions or otherwise failed to testify truthfully and to the best of his knowledge about his conversations with Dr. Grossman.  The Defendants also presumably questioned Dr. Grossman about those conversations, although the Plaintiffs cannot verify that for the simple fact that the Defendants have failed to provide the Plaintiffs with a copy of the deposition transcript despite a standing obligation to produce all relevant materials from Dr. Grossman's lawsuit.  See Tab E (Defendants' Response to Plaintiffs' First Request for Production of Documents) at Response No. 11, pp. 9-10.

The Defendants were also free to depose Mr. Gilmore or to otherwise seek discovery from him about his communications with Mr. Collora.  The Defendants noticed Mr. Gilmore's deposition on the same day that they purported to subpoena Mr. Collora.  See Tab F (Gilmore Deposition notice). Neither the Plaintiffs nor Mr. Gilmore objected to his deposition at any time during the discovery process.  However, the Defendants did not depose Mr. Gilmore within the discovery period or otherwise obtain from him any of the information that they have asked this Court to compel Mr. Collora to provide.

## ARGUMENT

A party seeking discovery on any matter must demonstrate that the matter is relevant to the claims and defenses at issue in the lawsuit.  See Fed. R. Civ,. P. 26(b)(1). In addition, even if relevant, the requested discovery shall not be permitted if it appears that (i) the request is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information sought; or (iii) the

burdens of permitting the discovery outweigh the benefits given, among other things, the importance of the proposed discovery in resolving the issues raised in the litigation. See Fed. R. Civ. P. 26(b)(2).

The information sought by the purported subpoena fails to meet these threshold requirements for two reasons. First, it is not relevant to any issue raised by this litigation. This is an action seeking damages for benefits due under 29 U.S.C. § 1132(a)(1)(B), not a suit alleging wrongful discharge. As a matter of law, the circumstances surrounding Mr. Hubert's termination – including his relationship with Dr. Grossman – are not relevant to the claim. Second, even if the sought-after information was relevant and likely to lead to the discovery of admissible evidence, it is not appropriate for the Defendants to obtain it through Mr. Collora. For the following reasons, the Defendants' motion to compel should be denied.

A.  **The Sought-After Information Is Not Relevant to Any Claim or Defense in this Litigation.**

Information pertaining to Mr. Hubert's offer to assist Dr. Grossman fails to meet the threshold requirement of Rule 26(b)(1) – that it, it is not relevant to any of the claims and defenses in this lawsuit. This lawsuit alleges that the Defendants failed to pay participants the full amount of their vested benefits because they intentionally undervalued the Plan's single largest asset – the company stock – in order to benefit company insiders such as Mr. Pappalardo at the expense of Plan participants in violation of 29 U.S.C. § 1132(a)(1)(B).[3] In order to prove their claim, the Plaintiffs will need to show (1) that the Defendants undervalued the Meditech stock held by the Plan; (2) that the undervaluing resulted in calculations which understated the value of the participants'

---

[3] In Count Two of the Amended Complaint, the Plaintiffs also sought equitable relief against the individual fiduciaries under 29 U.S.C. § 1132(a)(3). That count was dismissed by the Court on March 20, 2006.

interest in the Plan; and (3) that those calculations were relied upon by the Defendants in paying the participants less than the true value of their interest in the Plan. See Foltz v. US News & World Report, Inc., 613 F.Supp. 634, 639-40 (D.C. D.C. 1985) ("the liquidation of the plaintiffs' interests at undervalued rates constitutes a withholding of benefits due under the terms of a plan").

The circumstances surrounding Mr. Hubert's termination and/or his relationship with Dr. Grossman are irrelevant to the question of whether the manner in which the Defendants calculated and paid out benefits due to Plan participants violated their legal obligations. It is no defense to a claim for unpaid benefits brought under 29 U.S.C. § 1132(a)(1)(B) that the Plan participant misbehaved in a way unrelated to his or her participation in the Plan. Even Mr. Pappalardo has conceded that the circumstances under which an employee leaves Meditech are irrelevant to the calculation or payment of benefits due to that employee under the Plan. See Tab G (relevant portions of deposition of A. Neil Pappalardo, dated July 21, 2006) at 111-14, 120-21. If the Defendants were bothered by Mr. Hubert's conduct in offering to help Dr. Grossman, they were free to terminate him (which they did). They were not free, however, to undervalue the benefits due to him under the Plan (which they also did). It is the latter decision – and the latter decision alone – that is at issue in this case.

For the same reason, Mr. Hubert's offer to assist Dr. Grossman is not relevant to the class certification issue. In order to preclude a finding that a class representative is adequate, there must be proof that the representative misbehaved in a manner that is relevant to the lawsuit. See McCall v. Drive Fin. Serv., 236 F.R.D. 246, 251 (E.D. Penn. 2006) ("most courts have rejected challenges to class representatives based on allegations

5

of 'unrelated unsavory, unethical, or even illegal conduct'")(*citing* 1 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 3.36 (4th ed. 2002)); Caranci v. Blue Cross & Blue Shield of R.I., 194 F.R.D. 27, 41 (D. R.I. 2000) ("A conflict that will prevent a plaintiff from meeting the adequacy requirement . . . must go to the specific issues in controversy"); Koppel v. 4987 Corp., 191 F.R.D. 360, 368 (S.D. N.Y. 2000). As the Court is aware, the Plaintiffs do not believe that Mr. Hubert engaged in any misconduct at all. See Plaintiffs' Opposition to Motion for Protective Order, filed July 26, 2006. But even setting aside the factual disputes, the Defendants have never set forth how they believe Mr. Hubert's alleged misconduct is relevant to his ERISA claim. See McCall, 236 F.R.D. at 251 n.7 (finding class representative adequate despite prior felony conviction and allegedly false deposition testimony because credibility "is irrelevant in this case, where the dispute between plaintiffs and defendants is legal, not factual").[4] They certainly have not articulated how Mr. Hubert's efforts to have the company stock fairly valued somehow created a conflict with *Plan participants*. To the contrary, the Defendants' only real complaint about Mr. Hubert's conduct is that it might have hurt them. There is no precedent for the position that a potential class representative may properly be penalized for failing to protect the best interests of the *defendants*.

The Defendants' attempt to demonstrate relevance by manufacturing equitable defenses to the Plaintiffs' unpaid benefits claim should be summarily rejected. The Defendants have not cited to a single ERISA case, and the Plaintiffs are not aware of any, in which an employer has been allowed to avoid its legal obligation to pay accrued

---

[4] This is not a case where the class representative has engaged in a course of conduct during the litigation that calls into question the representative's ability to effectively litigate the class claims. Cf. Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) (class representative in a Fair Debt Collection Practices Act is inadequate where he repeatedly changed his position on whether he received "the letters that form the very basis of his lawsuit").

6

benefits to plan participants by raising an equitable defense *against the very participants it is alleged to have cheated.*  Accord Bird v. Centennial Ins. Co., 11 F.3d 228, 234 (1st Cir. 1993) ("one must come into a court of equity with clean hands in order to secure relief") (citations and internal punctuation omitted); see also Williams v. Provident Investment Counsel, Inc., 279 F.Supp.2d 894, 906-07 (N.D.Ohio 2003) (striking affirmative defenses of ratification, waiver and estoppel because ERISA does not permit oral modifications of employee benefit plans).  Certainly where the lawsuit alleges that the Defendants intentionally underpaid Plan participants in order to benefit company insiders such as Mr. Pappalardo, it is difficult to imagine the theory upon which equity would bar Mr. Hubert's claim – or anyone else's – in favor of the breaching fiduciaries.

The Defendants' final attempt to show relevance through Shroder v. Suburban Coastal Corp., 729 F.2d 1371 (11th Cir. 1984) is misplaced.  Shroder involved a Truth in Lending Act claim where plaintiffs' counsel had accompanied one of the plaintiffs to the very closing at which the statutory violation allegedly occurred.  See id. at 1373.  There was no question that what occurred at the closing was central to the plaintiffs' claim.  The Plaintiffs concede that if Mr. Collora had attended the Board meetings at which Meditech stock was valued, he would likely be a witness, but that is as far as Shroder goes on these facts.[5]

Because Mr. Hubert's alleged misconduct is not legally relevant to any of the issues in this case, the Defendants cannot meet the threshold relevancy requirement of

---

[5] Notably, Shroder's comments on the need for counsel's testimony were pure dicta.  Shroder expressly limited its denial of class certification to the fact that of the three named plaintiffs, one was employed by class counsel and the other two had not been concerned by the inherent conflicts that the employment relationship presented: "The fact that one of three named representatives is clearly an inadequate representative, supports the conclusion of the district court that the Shroders are improper representatives of the class."  See id. at 1375-76 & n. 4 (discussing danger of permitting counsel's employee to represent class and stating "[w]e have chosen to limit our analysis of inadequate representation to the case of [the employee/class representative]").

7

Rule 26(b)(1) and their motion to compel Mr. Collora's testimony on the subject should be denied.

**B.      The Sought-After Information Is Not Otherwise Appropriately Obtained Through the Deposition of Lead Counsel.**

Even if the information about Mr. Hubert's relationship with Dr. Grossman were relevant to this litigation, the Defendants are not entitled to compel Mr. Collora to provide it. The Defendants have already obtained every bit of detail about Mr. Hubert's communications with Dr. Grossman through two separate depositions of Mr. Hubert, during which they inquired extensively into what, when, why, and how Mr. Hubert communicated to and/or with Dr. Grossman. See Tab B, generally; Tab C, generally. The Defendants have also presumably covered similar ground with Dr. Grossman, although they have not provided a copy of Dr. Grossman's deposition transcript to the Plaintiffs. But see Tab E at 9-10. Any testimony that Mr. Collora could possibly provide would therefore be unreasonably cumulative or duplicative of the extensive testimony on the subject that the Defendants have already obtained. See Fed. R. Civ. P. 26(b)(2)(i) (discovery "shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . .").

Also assuming for a moment that Mr. Collora's and Mr. Gilmore's conversations would be relevant to the claims and defenses in this lawsuit, the Defendants had a much less burdensome means to obtain that information than moving to compel trial counsel's testimony: they could simply have deposed Mr. Gilmore. Such an approach would have been far more appropriate given the significant concerns raised whenever a lawyer is called to testify against his or her client, particularly a long-time client such as Mr. Hubert. Yet the Defendants did not pursue Mr. Gilmore's testimony before allowing

8

discovery to close, even though neither the Plaintiffs nor Mr. Gilmore objected to it. The Defendants' failure to obtain the information from Mr. Gilmore, whose testimony would have been less burdensome to the efficient progress of this litigation than Mr. Collora's would be, belies their contention that the information is "necessary" or "relevant" to any issue in this case and demonstrates the inappropriateness of the instant motion. See Fed. R. Civ. P. 26(b)(2)(i)-(ii) (court should limit discovery where the information "is obtainable from some other source that is more convenient, less burdensome, or less expensive" or where requesting party "had ample opportunity . . . to obtain the information sought"). Given that the Defendants already have (or could have obtained) all of the information they seek from Mr. Collora, and given the information's lack of relevance to this lawsuit, whatever benefit the Defendants hope to achieve by compelling Mr. Collora to testify about his client are vastly outweighed by the burden of drawing out the class certification schedule and further delaying merits discovery in (and an eventual resolution of) this case. See Fed. R. Civ. P. 26(b)(2)(iii).

To the extent that the Defendants hope to go beyond this information and inquire about confidential attorney-client communications regarding when Mr. Hubert came to believe that the Defendants were intentionally undervaluing Meditech's stock, see, e.g., Def. Memo, pp. 6-7 ("it is likely that, in the course of his dealings with Grossman, and in speaking to Mr. Collora, Hubert revealed when he came to believe that Meditech stock was being undervalued . . . ."), the Court should deny the request for two equally important reasons. First, the Defendants have not cited to a single instance in which Mr. Hubert waived the attorney-client privilege with respect to the time in which he came to believe that the Defendants were willfully denying Plan participants the fair value of their

stock.  See In re Grand Jury Subpoena, 348 F.3d 16, 24 (1st Cir. 2003) (holding that "the extrajudicial disclosure of attorney-client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, cannot work an implied waiver on all confidential communications on the same subject matter").  Second, the Defendants have already repeatedly asked Mr. Hubert precisely this question, both in written Interrogatories and during his deposition.  See, e.g., Tab H (Plaintiffs' Responses to Defendants' First Set of Interrogatories) at 10-11, Tab C at 35-36, 210-15.  The Defendants are not permitted to invade the attorney-client privilege and depose Mr. Collora as a fishing expedition in the hopes that he will impeach his client.  For all of the foregoing reasons, the Defendants' motion to compel Mr. Collora to testify in this matter should be denied.

        Respectfully submitted,
**Michael P. Hubert,**
**William Trainor, and**
**David Hinchliffe,**
By their attorneys,


   /s/ Sara Noonan
Michael A. Collora (BBO #092940)
David A. Bunis (BBO #550570)
Sara Noonan (BBO #645293)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA  02210
671-371-1000
671-371-1037

Dated: August 23, 2006

**CERTIFICATE OF SERVICE**

      I, Sara E. Noonan, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on this 23rd day of August, 2006.

                                                         /s/ Sara Noonan
                                                       Sara E. Noonan