UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL P. HUBERT, WILLIAM TRAINOR, and DAVID HINCHLIFFE, Individually And On Behalf Of All Persons Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL INFORMATION TECHNOLOGY, INC. PROFIT SHARING PLAN, MEDICAL INFORMATION TECHNOLOGY, INC., and A. NEIL PAPPALARDO,<br><br>Defendants. | Civil Action No. 05-10269RWZ |

## AFFIDAVIT OF A. NEIL PAPPALARDO

I, A. Neil Pappalardo, do hereby depose and state:

1. I am the founder, Chairman and Chief Executive Officer ("CEO") of Medical Information Technology, Inc. ("Meditech" or the "Company").

2. I also serve as the trustee (the "Trustee") of the Medical Information Technology, Inc. Profit Sharing Trust (the "Trust"), which was established pursuant to the Medical Information Technology, Inc. Profit Sharing Plan (the "Plan," and together with myself and Meditech, the "Defendants"). I have served as Trustee since the Trust's inception in 1973.

3. I submit this affidavit, which is based on my personal knowledge and review of Company files, in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification.

1

**MEDITECH**

4.      I founded Meditech in 1969, together with four other individuals, to develop and market information system software for the hospital industry.  The Company today is a leading provider of software used in hospitals around the globe.  Meditech currently has more than 2400 employees, spread across 6 facilities, all in Massachusetts.

5.      It is important to myself and the other members of the Board of Directors of Meditech that the Company's employees have a stake in its growth and in its future.  To this end, we have for decades voted to have the Company sell shares of Meditech stock to the Company's employees at the fair value for the stock determined by the Board.  We do not wish to take advantage of our employees, so in determining the fair value for purposes of these sales we seek to arrive at a reasonable value that is neither aggressively high, nor aggressively low.

6.      We also indirectly provide for employee share ownership through the Plan, to which (as described below) the Company has been contributing Meditech stock and cash for over 30 years.  In valuing our contribution of stock to the Trust, we use the same fair value per share that we use in selling shares to employees.  This valuation of the contribution is the basis for a tax deduction by the Company, another reason why the Board of Directors seeks to determine a reasonable, not aggressively high fair value for the stock.

7.      Through contributions of stock to the Trust and sales of shares to employees, the percentage of shares held directly or indirectly by Meditech's current and former employees (excluding myself, although as CEO I am an employee) has increased dramatically over time.  By 1985 year end, the Trust and current and former employees owned 18.6% of the Company.  By 1995 year end, this figure had grown to 25.6%, and by 2005 year end, the Trust and current and former employees owned 32.2% of the Company.  While this has diluted myself and the

other founders of the Company (despite my having purchased shares from the Company like other employees, my percentage ownership of the Company has declined from 26.8% at 1996 year end to 25.7% at 2005 year end), we believe that continued growth in employee ownership of the Company is essential to the Company's long-term well being, and it is an important part of our employment and retention strategy.

## THE PLAN

8.   The Plan was established by the Board of Directors of Meditech in 1973. The stated purpose of the Plan is to provide "retirement and other benefits to the employees of the Company," and the Plan explicitly states that it was "designed to invest substantially in shares of the Common Stock of the Company so as to permit the participating employees to share in any growth of the Company."

9.   Under the Plan, the Trust was formed to hold contributions made by the Company for the sole benefit of the Plan's employee participants. The Plan was specifically drafted so that, although as CEO I am an employee of Meditech, I am not a participant in the Plan and do not derive any direct financial benefit from it in any way.

10.   The Plan is entirely voluntary: it was not established pursuant to any collective bargaining agreement or employment contract, and the Plan provides that the Company may terminate the Plan at any time. Moreover, the Plan provides that all contributions by the Company to the Trust are voluntary; in any given year, the Board of Directors could vote not to contribute anything to the Trust.

11.   Although the Plan explicitly provides that the Trust may hold up to 100% Meditech stock, contributions by the Company to the Trust have historically been made in the form of cash and Meditech stock.

12.     Pursuant to the terms of the Plan, the Trust pays out the value of a participant's account in a lump sum payment upon termination of the participant's employment with Meditech, either directly to the participant or (more commonly) to another retirement account of the participant's choosing.  We also permit participants to withdraw some (or even all) of their account balance prior to termination of their employment if they establish that they are facing a hardship, or if the employee has more than 20 years of service with the Company.  Each of these "in-service withdrawal" mechanisms is entirely voluntary on the part of participants.  With respect to those participants with more than 20 years service, I encourage them to withdraw their Trust balance in excess of $1 million each year and to invest it themselves, in preparation for the day when they leave Meditech and must become responsible for investing their entire distribution from the Trust, but make very clear that no one is required to make such an in-service withdrawal.

## VALUATION OF MEDITECH STOCK

13.     Because Meditech stock is not publicly traded, the Meditech Board of Directors, in deciding what to contribute to the Trust each year end, must determine a per share value for the stock.  Under the explicit terms of the Plan, the Board first sets an overall contribution amount, and then decides how much of that overall contribution will be in stock, and how much in cash.  The number of shares contributed to the Plan is therefore dependent upon the value determined for those shares by the Board.  For example, if the Board voted to make an overall contribution to the Trust of $4 million, it could not then vote to donate 80,000 shares at $75 per share (*i.e.*, $6 million worth of stock).

14.     As the Trustee, I must also determine a fair value per share for the stock as of December 31 of each year for purposes of establishing the overall value of the Trust; this overall

4

value is then used in determining the value of the accounts of individual Plan participants. In determining the fair value of the stock for purposes of the Trust, I consider many of the same factors considered by the Board of Directors of the Company when it makes its determination, but am not bound by the Board's determination.

15. In valuing Meditech stock in my capacity as Trustee and as a member of the Board, I consider many factors, including Meditech's total revenue, net income, total equity, dividends paid and the growth rate of each. I also compare Meditech's market capitalization to that of Meditech's competitors. Typically however, the year-end share value determined by the Board and myself as Trustee is determined primarily in concert with the dividend that Meditech will pay the following year. The current dividend yield on Meditech stock is 6.75%, based on the fair value determined as of December 31, 2005 ($32), and the current dividend rate for 2006 ($2.16). This dividend yield compares favorably with the approximately 5% yield paid by the U.S. government on long-term Treasury notes, and is justified based on Meditech's illiquid stock and the higher risk inherent in an investment in Meditech compared to an investment in the Federal government.

16. As demonstrated in the affidavit of Barbara A. Manzolillo, Meditech's CFO and the Plan's administrator, which is also being submitted in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification, the year-end values I have determined for Meditech stock have been steadily increasing over time. The values I have determined reflect an appreciation in Meditech's stock value greater than the growth in Meditech's earnings per share during the period in which Plaintiffs claim I have been intentionally undervaluing the stock, and are consistent with the growth in dividends paid per share. My valuation methodology has made many millionaires of Meditech's employees, including each of the named Plaintiffs.

17.     It is my understanding Plaintiffs assert that if their method of valuing Meditech stock had been used, the Trust would quickly run out of cash. Such a result would be undesirable from the perspective of the Plan's participants, as well as Meditech's shareholders (most of whom are or were Plan participants). If the Trust lacked any cash, it could not make a cash distribution to terminating employees, nor would it be able to fund in-service withdrawals or make loans to Plan participants. Under the terms of the Plan, when the Trust lacks sufficient cash to make distributions, it may defer distributions to participants by up to three years and distribute stock instead of cash. A three-year delay in receiving Trust distributions would no doubt be undesirable to most if not all Plan participants. Moreover, although Meditech stock has been an excellent investment, a distribution of stock would be problematic because the most significant market for small amounts of non-publicly traded Meditech stock is the Trust itself – it has typically purchased stock from shareholders (including each of the Plaintiffs) who wish to liquidate some or all of their holdings. If the Trust were to distribute stock because it lacked any cash, the same lack of cash would prevent it from purchasing any stock from Meditech's shareholders. Plan participants would thus receive a distribution of stock that they may not be able to sell, and existing shareholders might be unable to find a buyer should they wish to liquidate some or all of their holdings. For Plan participants and existing shareholders who need to raise cash to pay expenses (such as college tuition, a down payment for a residence, or medical bills), an inability to sell their Meditech stock to the Trust could cause hardship.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 15, 2006.

    /s/ A. Neil Pappalardo
A. Neil Pappalardo