# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

---

|  |  |
|---|---|
| MICHAEL P. HUBERT, WILLIAM TRAINOR, and DAVID HINCHLIFFE, Individually and On Behalf Of All Persons Similarly Situated )<br><br>Plaintiffs, )<br><br>v. )<br><br>MEDICAL INFORMATION TECHNOLOGY PROFIT SHARING PLAN, et al. )<br><br>Defendants. ) | Civil Case No. 05-10269-RWZ |

---

## AFFIDAVIT OF MICHAEL A. COLLORA, ESQ.

I, Michael A. Collora, make the following affidavit under oath based on my personal knowledge.

1.      I am a founding partner of the law firm of Dwyer & Collora LLP, 600 Atlantic Avenue, Boston Massachusetts ("Dwyer & Collora").  David A. Bunis, who has an appearance in this case, is a partner at Dwyer and Collora.  Sara E. Noonan, who also has an appearance in this case, is an associate at Dwyer & Collora.  Mr. Bunis, Ms. Noonan and I are each members of the Massachusetts bar in good standing and are each admitted to practice law in the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts.

2.      Mr. Bunis, Ms. Noonan and I represent named plaintiffs Michael Hubert, William Trainor, and David Hinchliffe, all of whom were employees of defendants Medical Information Technology, Inc. ("Meditech") and former participants in defendant Meditech Profit Sharing Plan ("the Plan") up until the termination of their employment.  Messers Hubert, Trainor and

Hinchliffe each received what was purported to be a final distribution of the fair value of their vested interest in the Plan when they terminated their employment with Meditech. The Amended Complaint alleges that these payments actually represented less than the Plaintiffs' fair share in the Plan because the Plan's main asset – Meditech stock – had been intentionally undervalued by the Plan's Trustee, defendant A. Neil Pappalardo,  By knowingly using that diminished value when paying benefits due to Plan participants, the Defendants allegedly violated the Employee Retirement and Insurance Security Act ("ERISA"), 29 U.S.C. § 1, *et .seq*.

3.     Mr. Bunis, Ms. Noonan and I are well qualified to serve as counsel in these class actions. I received my law degree from Harvard Law School in 1968. After law school, I served as an Assistant United States Attorney in the District of Massachusetts from 1973 to 1981. From 1979 to 1981, I served as Chief of the Special Investigations Unit and Chief of the Major Crimes Unit in the United States Attorneys Office. As an Assistant United States Attorney, I had extensive experience prosecuting complex criminal matters including securities fraud and political corruption cases.

4.     I have considerable experience in the area of commercial and complex litigation. In 1997, Dwyer & Collora and myself acted as lead counsel for a large group of investors. On behalf of the investors, we secured summary judgment against the Bank of Boston resulting in a settlement for the investors exceeding $10 million. See <u>Grabowski et al. v. Bank of Boston</u>, Case No. 94-11461 (Saris, J.). In another case, upon motion of the Commodities Future Trading Commission, I was appointed by the United States District Court for the District of Massachusetts as a receiver of two commodity pools and in that capacity recovered $1.5 million for investors.

2

5.    I am very familiar with federal class action litigation.  I have represented a number of  defendants in class action cases, including a defendant in the Centennial Technologies litigation (In re Centennial Technologies, Case No. 97-10304), and the lead defendant in the Homeowners Bank securities fraud litigation (Winsor v. Holgerson, Case No. 89-02527).  I have also served as counsel to a defendant brokerage house in In re Transkaryotic Therapies, Inc. Sec. Lit., Case No. 03-10165, a case presided over by this Court.  Most recently, I have served as lead counsel in three of several class actions pending before Judge Keeton as part of a multi district litigation assignment involving wage and hour claims against Citigroup Inc. and its subsidiaries, Peckler et al v Travelers Insurance Company, Case Nos. 00-10055, 00-11912, 03-11400.

6.    Mr. Bunis graduated *cum laude* from Boston University School of Law in 1987. He practiced in the litigation department at Nutter, McClennan & Fish LLP from 1987 until 1991 when he joined Dwyer, Collora & Gertner.  He became a partner of Dwyer & Collora in 1996. Much of Mr. Bunis's practice concentrates on employment law, involving claims for discrimination, wrongful discharge, ERISA violations, and state and federal wage and hour law. Mr. Bunis also has experience in class action litigation, having represented the lead defendant in the Homeowners Bank, the plaintiffs in the Peckler multi-district litigation, and the lead plaintiffs in John Hancock Life Ins. Co. et al v. Goldman, Sachs & Co., et al, Case No. 01-10729, which is currently pending before this Court.

7.    Ms. Noonan is a 1999 *cum laude* graduate of Boston University School of Law. From 2000 to 2001, she served as a law clerk to the Honorable Boyce F. Martin, Jr. of the United States Court of Appeals for the Sixth Circuit.  After her clerkship, Ms. Noonan joined Dwyer & Collora where she represents clients in both criminal and civil matters and in administrative

hearings before the Board of Bar Overseers.  Ms. Noonan has also appeared along with Mr.

Bunis as counsel for the lead plaintiffs in the <u>John Hancock</u> class action currently pending before

the Court.

      8.    Dwyer & Collora has extensive experience in complex litigation and has ample

resources to aggressively and effectively represent the Plaintiffs and the classes named in this

case.  Dwyer & Collora's litigation experience includes successfully defending against an ERISA

action brought by the Secretary of Labor.  <u>See</u> <u>Reich v. Rowe</u>, 20 F.3d 25 (1st Cir. 1994).

      9.    Mr. Bunis, Ms. Noonan and I are familiar with and prepare to perform our

professional obligations to the class, including our obligation to notify this Court should any

conflicts arise between any of the named plaintiffs and the class members.  We are also prepared

to litigate the class' claims in a vigorous and efficient manner.

      10.    Attached hereto are true and correct copies of the following documents:

| | |
|---|---|
| TAB A: | Defendants' Response to Plaintiffs' Initial set of Interrogatories, dated June 5, 2006; |
| TAB B: | Defendants' Responses to Plaintiffs' First Request for Production of Documents, dated June 5, 2006; |
| TAB C: | Selected portions of deposition of A. Neil Pappalardo, dated July 21, 2006; |
| TAB D: | Relevant portions of deposition of David Hinchliffe, dated July 27, 2006; |
| TAB E: | Relevant portions of deposition of William Trainor, dated July 24, 2006 |
| TAB F: | Relevant portions of deposition of Michael Hubert, dated July 26, 2005; |
| TAB G: | (1) Meditech Profit Sharing Plan, Amended and Restated Trust Agreement as of January 1, 1989; |
| | (2) Meditech Profit Sharing Plan, Amended and Restated Trust Agreement as of Janaury 1, 1998 |

(3) Amendment No. 2 to Meditech Profit Sharing Plan, Amended and Restated Trust Agreement as of January 1, 1998;

TAB H:    (1) Summary Plan Description of Meditech as amended through August 1, 1983;

(2) Summary Plan Description of the Meditech Profit Sharing Plan, Amended and Restated as of January 1, 1989;

(3) Summary Plan Description of the Meditech Profit Sharing Plan, Amended and Restated, dated January 1, 1998;

TAB I:    Form 13-D, filed by Dr. Jerome Grossman, dated February 27, 2002;

TAB J:    Message from the Chairman, dated September 3, 2002;

TAB K:    (1) Documents relating to David Hinchliffe's termination in the Meditech Profit Sharing Plan;

(2) Documents relating to William Trainor's termination in the Meditech Profit Sharing Plan;

(3) Documents relating to Michael Hubert's termination in the Meditech Profit Sharing Plan;

TAB L:    Annual Valuation of Trust Assets, 1996- 2005;

TAB M:    (1) Chairman's Comments from Reports to Board of Directors, dated January 22, 2001;

(2) Chairman's Comments from Reports to Board of Directors, dated January 27, 2003.

**SIGNED UNDER THE PENALTIES OF PERJURY** this 15th day of August 2006.

\_\_/s/ Michael Collora_____

Michael A. Collora

## **CERTIFICATE OF SERVICE**

I, Sara E. Noonan, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on this 15th day of August, 2006.

/s/ Sara Noonan
Sara E. Noonan

# MOTION TO SEAL DOCUMENT PENDING

David W. Hinchliffe
Volume 1 - July 27, 2006

Page 1

Volume 1, Pages 1-62, Exhibits: 1-12

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL P. HUBERT, WILLIAM

TRAINOR, and DAVID HINCHLIFFE,

individually and on behalf of all

persons similarly situated, et

al.,

Plaintiffs

vs.                    Docket No. 05-10269-RWZ

MEDICAL INFORMATION TECHNOLOGY

PROFIT SHARING PLAN, MEDICAL

INFORMATION TECHNOLOGY, INC., and

A. NEIL PAPPALARDO,

Defendants

VIDEOTAPED DEPOSITION OF DAVID W. HINCHLIFFE

Thursday, July 27, 2006, 10:06 a.m.

Goodwin Procter LLP

53 State Street - 17th Floor

Boston, Massachusetts

-------Reporter:  Alan H. Brock, RDR, CRR-------

Farmer Arsenault Brock LLC, 50 Congress Street,

Suite 415, Boston, Massachusetts 02109

617.728.4404  fax 617.728.4403

1b26d29c-0cab-4497-be2e-da09d34beb70

David W. Hinchliffe
Volume 1 - July 27, 2006

Page 2

1    APPEARANCES:

2         Dwyer & Collora, LLP

3         Sara E. Noonan, Esq.

4         600 Atlantic Avenue

5         Boston, Massachusetts 02210-2211

6         617.371.1000  fax: 617.371.1037

7         senoonan@dwyercollora.com

8         for Plaintiffs

9

10        Goodwin Procter LLP

11        Stephen D. Poss, Esq.

12        Michael P. Sugrue, Esq.

13        53 State Street, Exchange Place

14        Boston, Massachusetts 02109

15        617.750.1000  fax: 617.523.1231

16        sposs@goodwinprocter.com

17        msugrue@goodwinprocter.com

18        for Defendants

19

20    ALSO PRESENT:

21        Adam Cook, Videographer, National Video

22             Reporters

23

24

1b26d29c-0cab-4497-be2e-da09d34beb70

David W. Hinchliffe
Volume 1 - July 27, 2006

Page 25

1    was employed by MEDITECH he secretly offered to sell

2    MEDITECH information to Dr. Jerry Grossman, who was

3    then suing the company?

4            MS. NOONAN:  Objection.

5        A.  No.

6        Q.  What do you think will happen to people

7    currently participating as members of the MEDITECH

8    profit sharing plan if you win this lawsuit and the

9    plan pays out the kind of money that you are talking

10   about to you and to others who left earlier?

11           MS. NOONAN:  Objection.

12       A.  Can you repeat or rephrase?  Are you

13   talking about people that are currently in the plan

14   or people that have left the company that were in

15   the plan?

16       Q.  People who are currently in the plan today.

17   What do you think would happen to them if you win

18   this lawsuit and the plan needs to pay out money to

19   you and other former plan participants?

20           MS. NOONAN:  Objection.

21       A.  I'm not sure.

22       Q.  Have you thought about that?

23       A.  I've thought about it.

24       Q.  And what have your thoughts been?

1b26d29c-0cab-4497-be2e-da09d34beb70

David W. Hinchliffe
Volume 1 - July 27, 2006

1       MS. NOONAN:  Objection.

2       A.  Quite frankly, I'm just concerned about

3    this case.

4       Q.  What have your thoughts been about people

5    who are currently participating in the plan and what

6    effect this case might have on them?

7       MS. NOONAN:  Objection.

8       A.  The company has plenty of money.  I'm sure

9    it will all work out just fine.  In other words, I'm

10   not worried about it.

11      Q.  What do you think would happen to people

12   who left the company and took distributions from the

13   plan in years subsequent to your leaving the

14   company, in 1998, but before now?  What impact would

15   your suit have on those people?

16      A.  My understanding, it's a class action, and

17   that they would also be rewarded a settlement.

18      Q.  Have you analyzed or considered, for

19   example, whether if this case proceeded and the plan

20   paid out money to people who left in '98 and '99,

21   based on the range of values that you've told me

22   might be possible, whether there would be anything

23   left to pay anyone who left the company in 2001 or

24   2002 or 2003?

1b26d29c-0cab-4497-be2e-da09d34beb70

David W. Hinchliffe
Volume 1 - July 27, 2006

Page 35

1      A.   I don't recall that.

2      Q.   Do you think it would be fair for someone

3  who left MEDITECH in 2001 or 2002 and took a

4  distribution at that time to receive a smaller

5  distribution from the trust based on a per-share

6  value lower than someone who left in 1998, the year

7  you left?

8           MS. NOONAN:   Objection.

9      A.   I mean, I'm not concerned, really, with

10 people that left in 2000.  I'm concerned with me.

11     Q.   While you were employed at MEDITECH, you

12 received a copy of a summary plan description of the

13 MEDITECH profit sharing plan; is that true?

14     A.   That is correct.

15     Q.   Did you read that summary plan description?

16     A.   Yes, sir.

17     Q.   How many different summary plan

18 descriptions did you receive when you were employed?

19     A.   I couldn't tell you.  I don't know.

20     Q.   More than one, I take it?

21     A.   I can't -- I don't know.  It could have

22 been; I don't know.

23          MR. POSS:   I ask the reporter to mark as

24 the next exhibit, which I believe is No. 4, a copy

FARMER ARSENAULT BROCK LLC

1b26d29c-0cab-4497-be2e-da09d34beb70

# William Trainor
## Volume 1 - July 24, 2006

Volume 1, Pages 1-112, Exhibits: 1-8

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

----------------------------

MICHAEL P. HUBERT, WILLIAM

TRAINOR, and DAVID HINCHLIFFE,

individually and on behalf of all

persons similarly situated et al.,

            Plaintiffs

vs.               Docket No. 05-10269-RWZ

MEDICAL INFORMATION TECHNOLOGY

PROFIT SHARING PLAN, MEDICAL

INFORMATION TECHNOLOGY, INC., and

A. NEIL PAPPALARDO

            Defendants

VIDEOTAPED DEPOSITION OF WILLIAM TRAINOR

Monday, July 24, 2006, 10:08 a.m.

Goodwin Procter LLP

53 State Street - 17th Floor

Boston, Massachusetts

-------Reporter:  Alan H. Brock -- RDR, CRR-------

Farmer Arsenault Brock LLC, 50 Congress Street,

Suite 415, Boston, Massachusetts 02109

617.728.4404  fax 617.728.4403

af080ac9-9366-43c8-aeef-0542d2c15804

William Trainor
Volume 1 - July 24, 2006

Page 2

1    APPEARANCES:

2        Dwyer & Collora, LLP

3        Sara E. Noonan, Esq.

4        600 Atlantic Avenue

5        Boston, Massachusetts 02210-2211

6        617.371.1000    fax: 617.371.1037

7        senoonan@dwyercollora.com

8        for Plaintiffs

9

10       Goodwin Procter LLP

11       Stephen D. Poss, Esq.

12       Kevin P. Martin, Esq.

13       Exchange Place

14       53 State Street

15       Boston, Massachusetts 02109

16       617.750.1000    fax: 617.523.1231

17       sposs@goodwinprocter.com

18       kmartin@goodwinprocter.com

19       for Defendants

20

21   ALSO PRESENT:

22       Adam Cook, Videograph, National Video Reporters

23

24

af080ac9-9366-43c8-aeef-0542d2c15804

William Trainor
Volume 1 - July 24, 2006

Page 6

1    we proceed?

2        A.   No.

3        Q.   Mr. Trainor, how did you come to be a named

4    plaintiff in this lawsuit?

5        A.   I heard that Mike Hubert was suing the

6    company, something regarding the valuation of the

7    stock.  I called Mike, and he explained the suit to

8    me and asked if I wanted to be a member of it, and I

9    said yes.

10       Q.   When did you first hear that Mr. Hubert was

11   suing the company?

12       A.   I don't know.  About a year and a half ago,

13   two years ago.  Whenever he was starting to sue the

14   company, whenever that was.

15       Q.   How did you hear that Mr. Hubert was suing

16   the company?

17       A.   I think I just heard from people that used

18   to work there that were aware of it.

19       Q.   Would you identify those people, please.

20       A.   I don't really know.

21       Q.   Did you hear from Mr. Hubert that he was

22   suing the company?

23       A.   Only when I called him.

24       Q.   Do you recall speaking to anyone about the

FARMER ARSENAULT BROCK LLC

William Trainor
Volume 1 - July 24, 2006

Page 11

1  wasn't a lot -- it was not a long conversation.

2      Q.  How long was the conversation,

3  approximately?

4      A.  I don't remember, but it was very short.

5      Q.  Did you ask Mr. Hubert any questions in

6  that conversation?

7      A.  No.  I didn't know what to ask him.

8      Q.  Aside from Mr. Hubert telling you he

9  thought that MEDITECH stock was undervalued, did he

10  tell you anything else about his lawsuit?

11      A.  The only thing he may have told me was

12  about Jerry Grossman, who was a director, having a

13  similar lawsuit.

14      Q.  Is there anything else you can recall from

15  that first conversation in which you called

16  Mr. Hubert to inquire about his lawsuit?

17      A.  No.

18      Q.  Did Mr. Hubert ask you in that conversation

19  to consider joining him in the lawsuit?

20      A.  Yes.

21      Q.  And what did you say in response?

22      A.  I told him I would.

23      Q.  So in the very first conversation you had

24  with Mr. Hubert after this lawsuit was filed, when

af080ac9-9366-43c8-aeef-0542d2c15804

William Trainor
Volume 1 - July 24, 2006

Page 12

1   you called to inquire about the lawsuit, he told you

2   the stock was undervalued, in his view.

3       A.  Uh-huh.

4       Q.  He asked you to join the lawsuit; and you

5   in that conversation said that you would.  Is that

6   correct?

7       A.  Yes.

8       Q.  Is there anything else you can recall you

9   said to Mr. Hubert or he said to you in that

10  conversation?

11      A.  No.  I've only talked to Mike probably

12  twice since this started.

13      Q.  Well, sticking with that first

14  conversation, have you now told me everything you

15  recall Mr. Hubert saying to you and you saying to

16  Mr. Hubert in that first conversation?

17      A.  Yes.

18      Q.  Why did you tell Mr. Hubert you would join

19  in his lawsuit in that first conversation?

20      A.  Because I wondered if the stock was

21  undervalued and maybe I had something coming to me.

22      Q.  Did you believe at the time you first spoke

23  to Mr. Hubert about the lawsuit that MEDITECH stock

24  was undervalued?

af080ac9-9366-43c8-aeef-0542d2c15804

William Trainor
Volume 1 - July 24, 2006

Page 38

1      A.   No.

2      Q.   The $125 you paid, do you know if anyone

3   else paid $125 in connection with this lawsuit?

4      A.   I don't know.

5      Q.   Now, the next sentence of Paragraph 3.1

6   says, quote, "The client agrees to pay $2,500 when

7   he is financially able to do so in payment towards

8   expenses in the lawsuit," period, close quote.  Do

9   you see that sentence?

10     A.   Yes.

11     Q.   Do you understand that you have agreed to

12   pay $2,500?

13     A.   I do now.

14     Q.   Have you made any payments toward that

15   $2,500 other than the $125?

16     A.   No.

17     Q.   When, if ever, do you expect to make any

18   additional payments?

19     A.   It hasn't been discussed.

20     Q.   What happens if the expenses are more than

21   $2500?  Do you understand that you have to pay more

22   than the $2500 if the expenses ultimately are more

23   than that?

24          MS. NOONAN:  Objection.

William Trainor
Volume 1 - July 24, 2006

Page 39

1      A.   No.

2      Q.   So do you believe that your total

3  obligation to pay expenses in this case is limited

4  to $2500?

5      A.   Yes.

6      Q.   That's your understanding?  Yes?

7      A.   Yes.

8      Q.   Why did you think you had agreed to pay

9  $1,000?

10     A.   It was just a number that stuck in my mind.

11     Q.   When do you expect to be -- strike that.

12          Are you now financially able to pay the

13  remainder of the $2500 set forth in Paragraph 3.1 of

14  Exhibit 2?

15     A.   If I had to, yes.

16     Q.   If you look at Paragraph 4 of Exhibit 2.

17  It says, quote, "Reasonable compensation on the

18  foregoing contingency shall be paid by the class

19  from a common fund established for, or on behalf of

20  the class, or by the Court, or by the defendants

21  with the approval of the Court after notice to the

22  class," period, close quote.  Do you see that?

23     A.   Uh-huh.

24     Q.   What do you understand that to provide for?

William Trainor
Volume 1 - July 24, 2006

Page 62

1      Q.  Any other reasons?

2      A.  They paid dividends.

3      Q.  Anything else?

4      A.  Not really.

5      Q.  Did you think the MEDITECH stock you

6   bought -- strike that.  At the time you bought

7   MEDITECH stock, did you think you were paying a fair

8   price for it?

9              MS. NOONAN:  Objection.  You can answer.

10     A.  We paid what it was valued at.

11     Q.  Did you think you were paying a fair price

12  for the stock when you bought it?

13     A.  I never really thought about whether it was

14  fair or unfair.  I was offered so many shares, and I

15  paid for it and bought it.

16     Q.  Did you invest in other stocks, other than

17  MEDITECH, during the period when you were buying

18  MEDITECH stock?

19     A.  No.

20     Q.  Why not?

21     A.  Mainly because I didn't have the money, and

22  I was not a stock person.  It wasn't something I was

23  pursuing.

24     Q.  Well, when you had a choice to spend your

FARMER ARSENAULT BROCK LLC

af080ac9-9366-43c8-aeef-0542d2c15804

William Trainor
Volume 1 - July 24, 2006

Page 102

1      Q.  Do you care what the proper value of

2    MEDITECH's stock was in 2001?

3      A.  No.

4      Q.  Would that affect you in any way?

5      A.  No.

6      Q.  What about 2000?

7      A.  No.

8      Q.  So I take it for any years after the last

9    year at which you worked at the company, the fair

10   value of MEDITECH's stock as set by the trustee is

11   not something that concerns you.

12     A.  It didn't until I heard that Jerry

13   Grossman, who was a member of the board of

14   directors, was suing the company for what I

15   understand is he felt the stock was undervalued, and

16   I think that was the first time that I even thought

17   about it.

18     Q.  Maybe my question wasn't clear.  Let me try

19   and ask it again, because that wasn't what I was

20   asking.

21     A.  Okay.

22     Q.  You left MEDITECH in 1998, and you received

23   a payout from the trust in 1998 --

24     A.  Yes.

FARMER ARSENAULT BROCK LLC

William Trainor
Volume 1 - July 24, 2006

Page 103

1      Q.  -- based on the fair value as determined by

2  the trustee at the end of 1997; is that correct?

3      A.  Yes.

4      Q.  And that's what you're suing about, is it

5  not, that value?

6      A.  Yes.

7      Q.  Now does it matter to you what value the

8  trustee of the MEDITECH profit sharing plan assigned

9  to MEDITECH stock in years after you left the

10  company -- in other words, 2000, 2001, 2002, 2003?

11  Does that affect you in any way?

12      A.  No, not those years.

13      Q.  And that's because you had already been

14  paid out based on the '97 number; correct?

15      A.  Yes.

16      Q.  So do you care what the trustee did in

17  years after you left?

18      A.  I do once I had heard about the Jerry

19  Grossman case.

20      Q.  Again, is there any impact to you, based on

21  what number the trustee assigned for the value of

22  the MEDITECH stock in the trust in years after you

23  left the company?  Does it matter to you?

24      A.  Only in the last two years.

af080ac9-9366-43c8-aeef-0542d2c15804

William Trainor
Volume 1 - July 24, 2006

Page 104

1      Q.   How would it matter to you what value the

2   trustee assigned to the stock in 2001?

3      A.   In 2001?  It wouldn't, no.

4      Q.   And the same with 2002, 2003, et cetera?

5      A.   Yes, up to February of 2005.

6      Q.   So if the trustee assigned a higher or a

7   lower number to the value of the trust in those

8   years, would that affect you financially?

9      A.   No.

10     Q.   In this lawsuit, if there was a method for

11  valuing MEDITECH stock that would result in a higher

12  payment to people who left the company in, let's

13  say, 2000, 2001, some year after you left, but a

14  lower payment to someone who left, as yourself, in

15  1998, would it be in your interest to support that

16  method?

17             MS. NOONAN:  Objection.

18     A.   I don't know exactly what you mean by that.

19  I mean, if the value of the stock has gone up since

20  I left and the payouts are based on whatever that

21  annual value is, that's what they get.  It would

22  have nothing to do with what I felt.

23     Q.   If someone --

24     A.   I wouldn't even think about it.  I hadn't

af080ac9-9366-43c8-aeef-0542d2c15804



MEDICAL INFORMATION TECHNOLOGY, INC.

PROFIT SHARING PLAN

Amended and Restated Trust Agreement

(As of January 1, 1998)

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003580

DEF000084
Confidential-Subject
to Protective Order

TABLE OF CONTENTS

ARTICLE I
  The Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  1.01 Creation of Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  1.02 Interpretation of Trust Agreement . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE II
  Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  2.01 "Affiliated Company" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  2.02 "Agreement" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  2.03 "Anniversary Date" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  2.04 "Beneficiary" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  2.05 "Board of Directors" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  2.06 "Break in Service" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  2.07 "Common Stock" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  2.08 "Company" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  2.09 "Compensation" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  2.10 "Effective Date" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  2.11 "Employee" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  2.12 "Employment Commencement Date" . . . . . . . . . . . . . . . . . . . . . . 5
  2.13 "Hour of Service" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  2.14 "Member" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  2.15 "Plan" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
  2.16 "Plan Year" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
  2.17 "Reemployment Commencement Date" . . . . . . . . . . . . . . . . . . . . 6
  2.18 "Service" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
  2.19 "Trust" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
  2.20 "Trustee" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
  2.21 "Valuation Date" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARTICLE III
  Membership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  3.01 Eligibility for Membership . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  3.02 Determination of Eligibility by Trustee . . . . . . . . . . . . . . . . . . . . 7
  3.03 Duration of Active Membership . . . . . . . . . . . . . . . . . . . . . . . . . 7
  3.04 Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  3.05 Military Leaves of Absence . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  3.06 USERRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

i

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003581

DEF000085
Confidential-Subject
to Protective Order

ARTICLE IV

    Contributions under the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    4.01 Company Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    4.02 Determination of Contribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    4.03 Payment of Contribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    4.04 Reversion of Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    4.05 Members' Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE V

    Members' Accounts;
    Allocation of Assets and Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    5.01 Members' Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    5.02 Compensation Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    5.03 Allocation of Contributions and Forfeitures. . . . . . . . . . . . . . . . . . . . . . 12
    5.04 Valuation of Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    5.05 Allocation of Trust Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    5.06 Distributions and Forfeitures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    5.07 Limitations on Allocations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    5.08 Sources of Forfeiture Restorations . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARTICLE VI

    Payments to or for the Accounts of
    Members or Terminated Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    6.01 Retirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    6.02 Disability Retirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    6.03 Death Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    6.04 Termination of Employment Prior to Retirement, Disability, or Death . . . . . . 19
    6.05 Reemployment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    6.06 Manner and Timing of Distributions . . . . . . . . . . . . . . . . . . . . . . . . 22
    6.07 Additional Restrictions on Distributions . . . . . . . . . . . . . . . . . . . . . . 24
    6.08 Discharge of Trustee's Obligation to Make Payments . . . . . . . . . . . . . . . 26
    6.09 Investment of Segregated Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    6.10 Loans to Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    6.11 Direct Rollovers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    6.12 In-Service Withdrawals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

ARTICLE VII

    Amendment and Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    7.01 Right to Amend or Terminate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    7.02 Amendment for Tax Exemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    7.03 Liquidation of Trust in Event of Termination . . . . . . . . . . . . . . . . . . . . 33
    7.04 Termination of Plan and Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003582

DEF000086
Confidential-Subject
to Protective Order

**ARTICLE VIII**

Rights and Duties of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
8.01  Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
8.02  Powers of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
8.03  Investments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
8.04  Method of Purchasing, Holding and Selling Securities . . . . . . . . . . . . . . . . . 36
8.05  Exercise of Voting Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
8.06  Power to Borrow . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
8.07  Reliance on Trustee as Owner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
8.08  Liquidation of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
8.09  Evidence on which Trustee may Act . . . . . . . . . . . . . . . . . . . . . . . . . . 37
8.10  Action by Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
8.11  Discretionary Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
8.12  Employment of Agents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
8.13  Records and Accounting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
8.14  Payment of Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
8.15  Compensation and Expenses of Trustee . . . . . . . . . . . . . . . . . . . . . . . . 40
8.16  Resignation or Removal of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
8.17  Legal Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
8.18  Indemnification of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

**ARTICLE IX**

The Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
9.01  No Contract of Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
9.02  No Contract to Maintain Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
9.03  Liability of Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
9.04  Action by Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
9.05  Successor to Business of Company . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
9.06  Dissolution of the Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

**ARTICLE X**

Top-Heavy Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
10.01  Article Controls . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
10.02  Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
10.03  Top-Heavy Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
10.04  Minimum Contribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
10.05  Vesting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
10.06  Termination of Top-Heavy Status . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003583

**DEF000087**
Confidential-Subject
to Protective Order

ARTICLE XI

    Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
    11.01 Limitation of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
    11.02 Spendthrift Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
    11.03 Appointment of Person to Receive Payment . . . . . . . . . . . . . . . . . . . . . . 50
    11.04 Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
    11.05 Impossibility of Performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
    11.06 Adjustment for Fractional Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
    11.07 Definition of Words . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
    11.08 Titles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
    11.09 Merger or Consolidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
    11.10 Claims Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
    11.11 Allocation and Delegation of Responsibilities . . . . . . . . . . . . . . . . . . . . . 53
    11.12 Special Provisions for Certain Leased Employees . . . . . . . . . . . . . . . . . . 53
    11.13 Execution of Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003584

DEF000088
Confidential-Subject
to Protective Order

## MEDICAL INFORMATION TECHNOLOGY, INC.

## AMENDED AND RESTATED PROFIT SHARING PLAN
## AND TRUST

The Trust Agreement made the 31st day of December, 1973, by and between

MEDICAL INFORMATION TECHNOLOGY, INC., a Massachusetts corporation having its

principal place of business in Westwood, Massachusetts (the "Company") and A. NEIL

PAPPALARDO of Boston, Massachusetts, (the "Trustee"), which has been subsequently

restated and amended from time to time, is now amended and restated in its entirety as follows:

## W I T N E S S E T H   T H A T:

WHEREAS, the Company recognizes the continuing contribution being made to the

successful operation of its business by its employees and desires to reward such contribution by

continuing its maintenance of a profit sharing plan for its employees who are or shall hereafter

become eligible as Members under the Plan embodied herein;

WHEREAS the Company amended and restated said Plan to comply with the Tax

Reform Act of 1986 and to make certain other changes;

WHEREAS the Plan was subsequently amended by the First, Second and Third

Amendments thereto;

WHEREAS the Company now desires to amend and restate said Plan to comply with

recent legislation and to make certain other changes;

NOW, THEREFORE, the parties hereto each in consideration of the covenants,

agreements and declarations of the other, mutually covenant, agree and declare the Trust

Agreement dated December 31, 1973, as subsequently amended and restated, is hereby further

CONFIDENTIAL–SUBJECT TO
PROTECTIVE ORDER
M 0003585

DEF000089
Confidential-Subject
to Protective Order

amended and restated as provided herein effective January 1, 1998 except that the changes made to Sections 3.06, 6.07(b) and 11.12 shall be effective as of January 1, 1997. In determining a Member's rights and benefits under the Plan up to such effective date, the provisions of the Plan as previously in effect shall apply:

## ARTICLE I

### The Trust

1.01 Creation of Trust. There has been established hereunder a trust which shall be known as the "MEDICAL INFORMATION TECHNOLOGY, INC. PROFIT SHARING TRUST." The Trustee shall receive any contributions paid to the Trust, and all contributions so received, together with the income therefrom, shall be held, managed, and administered as a fund in trust pursuant to the terms of this Agreement. The Trustee hereby affirms his acceptance of the Trust created hereunder and agrees to perform the provisions of this Agreement on his part to be performed.

1.02 Interpretation of Trust Agreement. The Trust is established for the purpose of providing retirement and other benefits to the employees of the Company from the profits of the Company's business, and for the exclusive benefit of the eligible Employees and their beneficiaries, and is designed to invest substantially in shares of the Common Stock of the Company so as to permit the participating employees to share in any growth of the Company. So far as possible, this Agreement shall be interpreted in a manner consistent with this intent and with the intent of the Company that the Trust established hereunder shall satisfy the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), and those of

2

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003586

DEF000090
Confidential-Subject
to Protective Order

the Internal Revenue Code of 1986 (the "Code") relating to exempt employees' profit sharing trusts, as either of those statutes may from time to time be amended. Except as provided in Section 4.04, under no circumstances shall any property of the Trust, or any contributions made by the Company, ever revert to or be used or enjoyed by the Company or be used for any purpose other than for the exclusive benefit of the eligible employees or their beneficiaries.

## ARTICLE II

### Definitions

Whenever used in this Agreement, unless the context clearly indicates otherwise, the following words shall have the following meanings:

2.01 "Affiliated Company" means (a) a member of a controlled group of corporations of which Medical Information Technology, Inc. is a member, (b) an unincorporated trade or business which is under common control with Medical Information Technology, Inc. as determined in accordance with Section 414(c) of the Code and regulations issued thereunder, (c) a member of an "affiliated service group" (within the meaning of Section 414(m) of the Code) of which Medical Information Technology, Inc. is a member, or (d) an organization which is required to be aggregated with Medical Information Technology, Inc. pursuant to regulations promulgated under Section 414(o) of the Code. For purposes hereof, a "controlled group of corporations" shall mean a controlled group of corporations as defined in Section 1563(a) of the Code, determined without regard to Section 1563(a)(4) and (e)(3)(C) of the Code.

2.02 "Agreement" means this Agreement as the same may be amended from time to time.

2.03 "Anniversary Date" means December 31 in each year after the Effective Date.

3

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003587

DEF000091
Confidential-Subject
to Protective Order

2.04  "Beneficiary" means the person or persons designated by a Member, pursuant to the provisions of Section·6.03 of this Agreement, to receive distribution of such Member's share upon his death, and includes a co-beneficiary or a contingent beneficiary. The term "Beneficiary" shall also include a Member's surviving spouse if such spouse is deemed to be the Member's Beneficiary pursuant to Section 6.03(c).

2.05  "Board of Directors" means the board of directors of the Company in office from time to time.

2.06  "Break in Service" means any "twelve-consecutive month period" (as determined under this Section) during which an individual does not perform any Hours of Service for the Company or an Affiliated Company. The "twelve-consecutive month period" used to determine whether a Break in Service has occurred shall commence on the earlier of the following dates, and anniversaries thereof:  (i) the date the individual's employment with the Company or an Affiliated Company terminates by reason of quit, discharge, or retirement, or (ii) the first twelve-month anniversary of the date the individual was first absent from employment with the Company or an Affiliated Company by reason other than quit, discharge, or retirement; provided, however, that in the case of an individual who is absent from work for "maternity or paternity reasons", the twelve-consecutive month period beginning on the first anniversary of the first date of such absence shall not constitute a Break in Service. For purposes of this Section, an individual's absence is for "maternity or paternity reasons" if the individual is absent from work by reason of pregnancy, birth, or adoption of his child or for the purpose of caring for such child for a period beginning immediately following such birth or adoption.

2.07  "Common Stock" means the common stock of the Company.

4

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003588

DEF000092
Confidential-Subject
to Protective Order

2.08 "Company" means MEDICAL INFORMATION TECHNOLOGY, INC. and any successor to all or a major portion of its business which adopts this Plan and Trust pursuant to Section 9.05.

2.09 "Compensation" includes salaries, wages, bonuses, overtime, commissions and all other forms of direct remuneration paid to a Member by the Company but excludes (a) any amount paid to an Employee prior to his becoming a Member under the Plan and (b) any contributions by the Company to or benefits under the Plan. A Member's Compensation shall not be taken into account for any purpose of the Plan (other than Section 5.07 and Article X) to the extent such Compensation exceeds $100,000.

2.10 "Effective Date" means the effective date of the amendment and restatement of this Plan, which is January 1, 1998, unless otherwise specifically provided.

2.11 "Employee" means any person who is employed by the Company as a common law employee. An Employee shall become an Employee on his Employment Commencement Date.

2.12 "Employment Commencement Date" means the first date on which the individual performs an Hour of Service.

2.13 "Hour of Service" means each hour for which an Employee is directly or indirectly paid or entitled to payment by the Company or an Affiliated Company for the performance of duties.

2.14 "Member" means any Employee who is eligible to participate in the Plan as determined under Article III of this Agreement.

5

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003589

DEF000093
Confidential-Subject
to Protective Order

2.15 "Plan" means the "MEDICAL INFORMATION TECHNOLOGY, INC. PROFIT SHARING PLAN" as set forth herein, together with any and all amendments hereto.

2.16 "Plan Year" means the fiscal year of the Trust, and the Company, being the twelve (12) months ending on the Anniversary Date of each year.

2.17 "Reemployment Commencement Date" means the first date on which the individual performs an Hour of Service following a Break in Service which is not counted as Service.

2.18 "Service" of an Employee means the period of time determined in accordance with Article III.

2.19 "Trust" means the trust created by this Agreement.

2.20 "Trustee" means the trustee herein named and any duly appointed successor trustee or trustees.

2.21 "Valuation Date" means December 31 of each Plan Year, and any other date which the Trustee may select for the valuation of the Trust and adjustment of accounts determined in accordance with Section 5.04 and 5.05, respectively.

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003590

DEF000094
Confidential-Subject
to Protective Order

ARTICLE III

Membership

3.01  Eligibility for Membership. Each Employee who is a Member on January 1, 1998 shall continue to be a Member under the Plan.  Each other Employee, including each future Employee, shall become a Member under the Plan on the first day of the month coincident with or next following his completion of one year of Service.  In the event an individual has completed the foregoing eligibility requirements but is not an Employee on the applicable entry date, such individual shall not become a Member of the Plan at that time.  If such individual thereafter becomes an Employee, such individual shall become a Member on the date he subsequently becomes an Employee.

3.02  Determination of Eligibility by Trustee. The determination of an Employee's eligibility for membership under the Plan shall be made by the Trustee from the Company's records; and the Trustee's determination shall be conclusive and binding on all persons.

3.03  Duration of Active Membership. An active Member shall continue as such until his employment with the Company is terminated, except as otherwise provided in Sections 5.02 and 5.03 in the case of a Member whose employment terminates on account of retirement, disability or death.  A former active Member shall once again become an active Member on his Reemployment Commencement Date.

3.04  Service. The "Service" of an Employee means, with respect to each Employee, the most recent period of time, determined in years and days, which commences on an Employee's Employment Commencement Date, or Reemployment Commencement Date, during which there occurs no Break in Service.  If an Employee with at least one year of Service

7

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003591

DEF000095
Confidential-Subject
to Protective Order

terminates his employment with the Company, incurs a Break in Service and is subsequently reemployed, then the "Service" of such Employee for all purposes of the Plan after his reemployment shall include Service accumulated both before and after such Break in Service. Except as provided in Section 6.05, Service accumulated after such Break in Service shall not be taken into account for the purpose of determining such Employee's severance benefit under Section 6.04 at the time of such Break in Service. An Employee shall receive credit for Service with an Affiliated Company for the purposes of determining (a) his eligibility to participate in the Plan pursuant to Section 3.01, (b) the amount of his vested benefit under Section 6.04 and (c) his Breaks in Service, but such Service shall not be taken into consideration for any other Plan purpose.

3.05 <u>Military Leaves of Absence</u>. Except as otherwise specifically provided, an Employee who leaves the Company to enter the armed services of the United States of America and who returns to its employ at or before the expiration of ninety (90) days after the date on which he is first entitled to be released from active duty in the armed services (or at such later date as the Company may approve or as may be required by law) shall be deemed to have been in the continuous employ of the Company throughout and the period of such military absence shall be included in his period of Service for all purposes of this Plan. If any Employee shall fail to return from a military leave of absence as required by the Company in accordance with the Plan, he shall be deemed to have quit the Company on the date such military leave of absence began; provided, however, that any resultant forfeitures from his account shall be deemed to occur on the Anniversary Date subsequent to the date of his failure to return from his military leave of absence as required by the Company.

8

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003592

DEF000096
Confidential-Subject
to Protective Order

3.06 <u>USERRA</u>.  Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credits with respect to qualified military service shall be provided in accordance with section 414(u) of the Code.

9

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003593

DEF000097
Confidential-Subject
to Protective Order

## ARTICLE IV

### Contributions under the Plan

4.01  Company Contributions.  For each Plan Year, the Company shall pay to the Trustee in trust hereunder from the net income of the Company for such Plan Year or its earnings and profits accumulated prior to such Plan Year such amount as may be voted by its Board of Directors with respect to that Plan Year.  The amount of the Company's contribution shall be paid to the Trustee in cash and/or that number of shares of Common Stock having a fair market value on the date of contribution equal to the contribution amount (or portion thereof to be contributed in shares of Common Stock) voted by the Board of Directors as provided herein. As used in this Section, "net income" and "accumulated earnings and profits" of the Company mean the net income and accumulated earnings and profits as shown by the Company's books before deducting Federal and State taxes measured in part or in whole by income.

4.02  Determination of Contribution.  The amount of the Company's contribution for each Plan Year shall be subject to final determination by the Company and verification by the Company's independent public accountants.  The amount of such contribution, as determined by the Company and verified by such accountants, shall be conclusive and binding on all persons.

4.03  Payment of Contribution.  The Company's contribution to the Trust for each Plan Year shall be paid within the time required by law in order to obtain a deduction of the amount of the Company's contribution to the Trust for Federal income tax purposes for such Plan Year.

4.04  Reversion of Contributions.  In the event that the Company shall make a contribution to the Trust on the basis of a mistake of fact, the Company may direct the Trustee to return such contribution to the Company at any time within the twelve-month period

10

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003594

DEF000098
Confidential-Subject
to Protective Order

commencing on the date of contribution.  All contributions under the Plan are conditioned upon the deductibility thereof by the Company under Section 404 of the Code.  To the extent that any such deduction is disallowed, the Company may direct the Trustee to return such contribution (to the extent disallowed) to the Company at any time within the twelve-month period commencing on the date of disallowance.

     4.05 _Members' Contributions_.  Contributions by Members shall not be permitted.

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003595

DEF000099
Confidential-Subject
to Protective Order

## ARTICLE V
### Members' Accounts;
### Allocation of Assets and Contributions

5.01 <u>Members' Accounts</u>. The Trustee shall maintain a book account for amounts credited from time to time to each Member under the Plan. Any contributions made by the Company for a Member pursuant to Section 4.01 shall be allocated to each Member's account pursuant to Section 5.03.

5.02 <u>Compensation Schedule</u>. As soon as practicable after the end of each Plan Year, the Company shall deliver to the Trustee a schedule showing the name of each Member who was either an Employee on the Anniversary Date of such Plan Year or an Employee who retired, became disabled or died within the meaning of Sections 6.01 to 6.03 during such Plan Year, and opposite the name of each such Member the amount of Compensation paid to him by the Company during such Plan Year. Notwithstanding anything to the contrary elsewhere herein, no Employee who owns (excluding any beneficial ownership under the Trust) ten percent (10%) or more of the outstanding Common Stock of the Company on an Anniversary Date shall be listed on the schedule required by this Section 5.02 with respect to such Anniversary Date. The schedule shall also include such other information as the Trustee may reasonably require for the proper administration of the Plan.

5.03 <u>Allocation of Contributions and Forfeitures</u>. Upon receiving such schedule and the total contribution made by the Company for the Plan Year, and after the account balances of the Members have been adjusted as provided in Section 5.05 and forfeitures determined under Section 6.04, the Trustee shall credit to the account of each Member listed on such schedule a portion of the Company's contribution and a portion of the total amount of forfeitures arising

12

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003596

DEF000100
Confidential-Subject
to Protective Order

from the accounts of terminated Members pursuant to Section 6.04 which bears the same ratio
to such total amounts as the Member's Compensation listed on such schedule bears to the
Compensation listed on said schedule for all such Members.

Notwithstanding the foregoing provisions of Section 5.02 and this Section 5.03, the
Company may, in its discretion and as necessary to cause the Plan to satisfy the requirements of
Section 410(b)(1)(B) of the Code for any Plan Year, expand the schedule provided pursuant to
Section 5.02 for such Plan Year to include the name of each Member (including each former
Member whose employment terminated during such Plan Year) who received any Compensation
during such Plan Year (but excluding any Employee who owns 10% or more of the outstanding
Common Stock of the Company), and direct the Trustee to allocate Company contributions
and/or forfeitures for such Plan Year to the accounts of all Members listed on such expanded
schedule in proportion to the Compensation of each such Member for such Plan Year as
reflected on such expanded schedule.

5.04 <u>Valuation of Trust</u>. As of each Valuation Date, the Trustee shall determine the
total net worth of the Trust by evaluating all of its assets and liabilities as of that date exclusive
of any amounts segregated into separate accounts for terminated Members pursuant to Section
6.06(b) and the contribution made by the Company with respect to its Plan Year current with or
ending on said Valuation Date. In determining the net worth of the Trust or any portion
thereof, the Trustee shall value the Trust assets at their fair market value. There shall be
included as of the Valuation Date, without implied limitation, income on hand, income accrued,
dividends payable but not paid, and uninvested cash, whether income or principal; and there
shall be deducted as of the Valuation Date, without implied limitation, liabilities accrued. A

13

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003597

DEF000101
Confidential-Subject
to Protective Order

determination by the Trustee of the fair market value of any of the Trust assets, or of the net

worth of the Trust or any component thereof shall be conclusive and binding upon all persons.

5.05  Allocation of Trust Assets.  The total net worth of the Trust as determined on each

Valuation Date shall be compared with the total of all amounts standing to the credit of the

accounts of all Members of the Plan, as of such Valuation Date, excluding from the accounts of

said Members, in the case of a December 31 Valuation Date, any amounts credited from the

contribution of the Company with respect to such Plan Year.  The excess or deficiency of the

total net worth of the Trust as so compared with the total account balances of all Members shall

be credited or charged to the accounts in the proportion that each such account balance bears to

the total of all such account balances.

5.06  Distributions and Forfeitures.  Whenever the Trustee shall make any distribution

to or in behalf of a Member in accordance with the provisions of Article VI, and whenever a

Member shall forfeit all or a portion of the amount standing to the credit of his account in

accordance with the provisions of Section 6.04, such Member's account shall be charged with

the amount of such distribution or forfeiture.  Whenever part or all of the amount standing to

the credit of a Member's account is to be segregated into a separate account for a terminated

Member pursuant to Section 6.06(b), such Member's account shall be charged with the amount

segregated.

5.07  Limitations on Allocations.  Notwithstanding anything hereinabove to the contrary,

the amount credited to the account of any Member for any Plan Year pursuant to Section 5.03

or pursuant to this Section 5.07 (excluding any Company contributions and forfeitures which are

credited to a Member's account pursuant to Section 6.05 in order to restore previously forfeited

14

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003598

DEF000102
Confidential-Subject
to Protective Order

amounts) shall be reduced to the extent that such amount would cause the Company

contributions and forfeitures credited to the account of such Member under this Plan for such

Plan Year and the employer contributions and forfeitures allocated to the account of such

Member under any defined contribution plan maintained by the Company or any Affiliated

Company to exceed the lesser of

      (A)    $30,000 (as adjusted pursuant to Section 415(d) of the Code), or

      (B)    twenty-five percent (25%) of such Member's compensation within the

    meaning of Section 415 of the Code and regulations thereunder for such Plan Year from

    the Company and any Affiliated Company.

Any reductions required pursuant to the foregoing sentence shall be made from the Company

contributions and forfeitures allocated to the Member's account pursuant to Section 5.03.  In the

event any reduction is required pursuant to the preceding sentence, the amount of such reduction

shall be allocated and credited pursuant to the procedures outlined in Section 5.03 above to the

accounts of remaining Members exclusive of any other Member for whom a reduction for such

Plan Year has been required pursuant to this Section 5.07. Any reductions which cannot be so

allocated shall be held unallocated by the Trustee and shall be treated as a forfeiture to be

allocated under Section 5.03 with respect to the succeeding Plan Year.

    5.08  Sources of Forfeiture Restorations.  Notwithstanding anything in this Article to the

contrary, whenever a previously forfeited amount is required to be restored to a reemployed

Member's account pursuant to Section 6.05, the Trustee shall effect such restoration as of the

last day of the Plan Year of such Member's reemployment.  In effecting such restoration, the

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003599

DEF000103
Confidential-Subject
to Protective Order

Trustee shall first utilize any amounts forfeited from the accounts of terminated Members

pursuant to Section 6.04 during such Plan Year and then, if necessary, Company contributions

made pursuant to Section 4.01 for such Plan Year.

16

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003690

DEF000104
Confidential-Subject
to Protective Order

## ARTICLE VI

Payments to or for the Accounts of
Members or Terminated Members

No shares of Common Stock or other property of the Trust shall be paid out or distributed by the Trustee except (a) for the purchase or other acquisition of Common Stock or other appropriate investments, (b) for defraying expenses, including taxes, if any, of administering the Trust as elsewhere herein provided, (c) for the repayment of any indebtedness incurred by the Trustee pursuant to Section 8.06, (d) as a return of Company contributions pursuant to Section 4.04, or (e) for the purpose of making distributions to or for the account of Members in accordance with the provisions of this Article VI.

6.01 <u>Retirement</u>. Upon retirement of a Member, which shall be deemed to mean any termination of his employment with the Company at or after his reaching age sixty (60), the Trustee shall distribute, in accordance with the provisions of Section 6.06, the full amount standing to the credit of such Member's account. A Member who remains in the active employ of the Company after attaining the age of sixty (60) shall continue as a Member for all purposes of the Plan until the date of his actual retirement.

6.02 <u>Disability Retirement</u>. If a Member incurs a permanent disability, the Trustee shall distribute, in accordance with the provisions of Sections 6.06 and 6.07, the full amount standing to the credit of such Member's account. For purposes of this Section 6.02, a Member shall incur a "permanent disability" if such Member is unable to engage in substantial gainful activity due to total and permanent physical or mental impairment that, in the opinion of a physician who is mutually acceptable to the Member and the Company, can be expected to

17

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003601

DEF000105
Confidential-Subject
to Protective Order

result in death, or can be expected to last or has lasted for at least twelve (12) consecutive months. The Trustee's determination as to whether a Member has incurred a permanent disability shall be conclusive and binding upon all persons.

6.03 Death Benefits.

(a)    Subject to paragraph (c) of this Section, each Member shall have the right to designate one or more Beneficiaries, including contingent Beneficiaries, to receive the amount payable in behalf of such Member under the provisions of this Plan in the event of death of such Member. Such designation shall be made in writing in such manner as the Trustee shall determine. Subject to the spousal consent requirement set forth in paragraph (c) below, a Member may change such designation from time to time, and may revoke such designation. If a Member dies without having designated a Beneficiary, or if none of the designated Beneficiaries survives the Member, or if the Trustee is in doubt as to the effective status of a Beneficiary designation, then, except as provided in paragraph (c) below, the duly appointed executor or administrator of the estate of such Member shall be deemed to be his Beneficiary.

(b)    Upon the death of any Member, the Trustee shall distribute, for the benefit of such Member's Beneficiary or Beneficiaries and in accordance with the provisions of Section 6.06, the full amount standing to the credit of the Member's account. If a Beneficiary entitled to receive any amount payable in behalf of a Member under the Plan dies prior to having received the entire amount, the undistributed balance shall be distributed to such Beneficiary's estate.

(c)    If a Member is married on the date of his death, the Member's surviving spouse shall be deemed to be his sole Beneficiary to receive the entirety of the death benefits

18

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003602

DEF000106
Confidential-Subject
to Protective Order

payable under this Section 6.03 in respect of such Member, unless (i) such Member has elected in writing to designate one or more other Beneficiaries other than his spouse, and (A) the Member's surviving spouse has consented to such election in a writing, (B) such election designates a Beneficiary which may not be changed without the consent of the spouse (or the consent of the spouse expressly permits changes in Beneficiary designation by the Member without any requirement of further consent by the spouse), and (C) the spouse's consent acknowledges the effect of such election and is witnessed by a Plan representative or notary public, or (ii) it is established to the satisfaction of the Trustee that the consent of the spouse cannot be obtained because there is no spouse, because the spouse cannot be located, or because of other circumstances prescribed by regulations under Section 417(a)(2) of the Code.

A former spouse shall be treated as a surviving spouse to the extent benefits must be paid to such former spouse upon the Member's death pursuant to a qualified domestic relations order (as defined in Section 414(p) of the Code), except that no consent shall be required from such former spouse with respect to the designation of a Beneficiary to receive benefits not subject to said order.

6.04  Termination of Employment Prior to Retirement, Disability, or Death.

(a)    If any Member's employment with the Company terminates under circumstances other than by reason of retirement, disability or death, as provided for under Sections 6.01 through 6.03, he shall be entitled to a vested benefit equal to the amount standing to the credit of his account based on his period of Service as follows:

19

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003603

DEF000107
Confidential-Subject
to Protective Order

| Years of Service | | Percentage |
|---|---|---|
| At Least | But Less Than | |
| | 2 | NONE |
| 2 | 3 | 10% |
| 3 | 4 | 30% |
| 4 | 5 | 60% |
| 5 | | 100% |

The vested benefit determined in accordance with the foregoing provision shall never be adjusted on account of any Service which a Member might complete upon reemployment with the Company or an Affiliated Company after a Break in Service, except as provided in Section 6.05.

(b)    The determination of the amount to which a terminated Member is entitled shall be made in accordance with the rules set forth in this Article, and the Trustee's determination shall be conclusive and binding on all persons.

(c)    The Trustee shall distribute the vested benefit to which any such Member is entitled, in accordance with Section 6.06, as soon as practicable after the Member's termination, subject to the requirements of Section 6.07.

(d)    Any amount which is not vested under this Section 6.04 at the time of a Member's termination of employment shall be forfeited by him upon the earlier of (i) the payment of the full amount to which such Member is entitled under the Plan, or (ii) the occurrence of five (5) consecutive Breaks in Service by the Member. For the purposes of the preceding sentence, a terminated Member who is not entitled to receive any amount under the Plan shall be deemed to have received the entire amount to which he is entitled on the date his employment terminates and shall forfeit his entire account as of that date. At the close of the

20

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003604

DEF000108
Confidential-Subject
to Protective Order

Plan Year in which such forfeiture occurs, all such forfeited amounts shall be reallocated as of the end of the Plan Year in which such forfeitures occur among the accounts of the other Members in accordance with the provisions of Section 5.03.

6.05 <u>Reemployment</u>. If a terminated Member is reemployed by the Company, he shall again become an active Member upon his Reemployment Commencement Date pursuant to Section 3.03, future Company contributions on his behalf shall be credited to his account, and subject to (a) and (b) below, his prior Service shall be restored for the purpose of calculating the vested portion of such account.

If such a reemployed Member was not 100% vested under Section 6.04(a) at the time of his prior termination, the following special provisions shall apply:

(a)    If such a terminated Member is reemployed before incurring five (5) consecutive Breaks in Service, the full amount which was forfeited from his account as a result of his prior termination shall be restored to his account as of the end of the Plan Year of his reemployment.

(b)    If a reemployed Member to whom paragraph (a) of this Section applies had received a distribution, prior to his reemployment, of all or any part of the vested portion of his account, the vested portion of his account shall thereafter be determined by (i) adding the amount previously distributed to his current account balance, (ii) multiplying the resulting sum by his current vesting percentage, and (iii) subtracting from the resulting product the amount previously distributed.

(c)    If such a terminated Member is reemployed after incurring five (5) consecutive Breaks in Service, he shall have no rights with respect to any amounts previously

21

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003605

DEF000109
Confidential-Subject
to Protective Order

forfeited from his account, and any portion of his account which has not been distributed shall

be held in a separate, fully vested account until such Member becomes 100% vested under

Section 6.04(a), whereupon it shall be merged with the account otherwise maintained for him.

6.06 Manner and Timing of Distributions.

(a)    Except as otherwise provided in Sections 6.06(b) and (d) below and subject

to the requirements of Section 6.07, whenever a Member's account balance becomes

distributable pursuant to Sections 6.01 through 6.04 hereof to such Member or his Beneficiary,

distribution of said account balance shall be made by the payment, in cash, of either one lump

sum, a direct Rollover (as described in Section 6.11), or a combination of both. Such

distribution shall be made within a reasonable time after the date of such retirement, disability,

death or termination of employment but not earlier than 30 days after the notice required under

Section 1.411(a)-11(c) of the Income Tax Regulations is given unless (i) the Trustee clearly

informs the Member that the Member has a right to a period of at least 30 days after receiving

the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a

particular distribution option), and (ii) the Member, after receiving the notice, affirmatively

elects a distribution. Any additional amount thereafter credited to his account shall be

distributed in accordance with this Section 6.06(a) after that amount is ascertained.

(b)    Notwithstanding anything to the contrary elsewhere herein, if the aggregate

benefit payable to a Member exceeds $5,000, such benefit shall not be distributed prior to such

Member's sixty-second (62nd) birthday or death, whichever is earlier, unless such Member

consents in writing to an earlier distribution. In the absence of such a consent, such Member's

22

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M.0003606

DEF000110
Confidential-Subject
to Protective Order

account shall be segregated into a separate account established pursuant to Section 6.09 at the time such account would otherwise have been distributable under Section 6.06(a) above.

(c)    Whenever a Member's account is to be distributed or segregated into a separate account established pursuant to Section 6.09, such Member's account shall first be credited with interest at the prevailing short-term rate as determined by the Trustee for the period from the next preceding Valuation Date to the last day of the month preceding such distribution or segregation.

(d)    Notwithstanding anything to the contrary elsewhere herein, if the Trustee determines that the assets of the Trust do not provide sufficient liquidity to permit the Member's account balance to be distributed in cash pursuant to this Section 6.06, distribution of such account balance shall be deferred until the Trustee determines there is sufficient liquidity or until the "deferred distribution date", whichever is earlier.  Any such account balance shall remain invested in the general assets of the Trust and shall continue to be evaluated and adjusted as of each Valuation Date pursuant to Sections 5.04 and 5.05.  For this purpose, the "deferred distribution date" shall be the earliest of (i) the third (3rd) anniversary of a Member's retirement, disability, death or termination of employment, (ii) the sixtieth (60th) day following the close of the first Plan Year in which such Member is both not an Employee and older than sixty (60), and (iii) the Member's Required Distribution Date as defined in Section 6.07(b).  If distribution of such a Member's account has not been made by such deferred distribution date, then distribution of such account shall be made on such deferred distribution date (subject to the notice and time limitations under Section 6.06(a)) in cash (to the extent available) and shares of

23

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003607

DEF000111
Confidential-Subject
to Protective Order

Common Stock (to the extent sufficient cash is not available) in a lump sum, direct rollover (as described in Section 6.11) or a combination of both.

    6.07  <u>Additional Restrictions on Distributions</u>.  Notwithstanding any provision elsewhere herein to the contrary and solely to comply with the applicable provisions of the Code and ERISA:

    (a)    In no event shall the distribution of a Member's account, unless such Member or Beneficiary otherwise consents, begin later than the sixtieth (60th) day after the close of the Plan Year in which the latest of the following events occurs:

    (i)    the Member's sixtieth (60th) birthday; or

    (ii)    the Member's termination of employment with the Company.

    (b)    In no event shall distribution of benefits to a Participant who attains age $70\frac{1}{2}$ after 1998 begin later than the April 1 next following the calendar year in which such Participant (A) attains age $70\frac{1}{2}$ or (B) terminates employment with the Company, whichever is later (the "Required Distribution Date").  Clause (B) shall not apply in the case of a Participant who is a "five percent owner" at any time during the Plan Year ending in the calendar year in which the Participant attains age $70\frac{1}{2}$.  If the Participant becomes a "five percent owner" during any subsequent Plan Year, the required distribution date shall be April 1 of the calendar year following such Plan Year.  For purposes of this subsection, a "five percent owner" is defined in Section 416(i)(1)(B)(i) of the Code.

Distribution of benefits to a Participant who attains or attained $70\frac{1}{2}$ before 1999 shall begin no later than the April 1 next following the calendar year in which such Participant attains age $70\frac{1}{2}$ (the "Required Distribution Date"); provided, a Participant who is not a five percent

24

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003608

DEF000112
Confidential-Subject
to Protective Order

owner may elect to defer distribution of benefits until after his termination of employment with the Company by filing written notice with the Trustee at least 60 days (or such shorter period as determined by the Trustee in accordance with the provisions of Section 8.11) prior to his Required Distribution Date.

(c)    If a Member dies before his Required Distribution Date, and his surviving spouse is not his designated Beneficiary, the distribution of benefits shall be paid to such Member's beneficiary in a lump sum no later than December 31 of the calendar year containing the fifth (5th) anniversary of such Member's death.  If the Member's designated Beneficiary is his surviving spouse, distribution of his benefits shall commence no later than the date the Member would have attained age seventy and one-half (70½).

(d)    If a Member dies on or after his Required Distribution Date, the Member's remaining interest in the Plan shall be distributed at least as rapidly as under the method of distribution being used as of the date of death.

(e)    If, and to the extent that, any portion of a Member's accounts are payable to a former spouse or dependent pursuant to a qualified domestic relations order within the meaning of Sections 401(a)(13)(B) and 414(p) of the Code, the provisions of said order shall govern the distribution thereof.  Such an order may provide for payments to a spouse or dependent from a Member's vested account balance even though the Member is still employed by the Employer or is otherwise not eligible for the distribution of benefits under the Plan.  In addition, the amount distributed shall be credited with interest at the prevailing short-term rate as determined by the Trustee for the period from the Valuation Date immediately preceding the

25

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003609

DEF000113
Confidential-Subject
to Protective Order

date of such distribution to the last day of the calendar month immediately preceding such distribution.

6.08  Discharge of Trustee's Obligation to Make Payments.  Whenever the Trustee is required to make any payment or payments to any person in accordance with the provisions of this Article VI or Article VII, the Company shall notify the Trustee in writing of such person's last known address as it appears in the Company's records; and the obligation of the Trustee to make such payment or payments shall be fully discharged by mailing the same to the address specified by the Company.

6.09  Investment of Segregated Funds.  Whenever any amount standing to the credit of a Member's account is to be segregated into a separate account for such Member, the Trustee shall keep the unpaid balance of such fund invested for the benefit of such Member in savings bank accounts and/or other investments specified as permissible investments for the Trust funds in Section 8.03; provided that the Trustee, with the consent of such Member, may retain the value of any such Member's account without segregation as an individual interest in the Trust fund, in which event such account shall participate in revaluations of the Trust pursuant to Sections 5.04 and 5.05.

6.10  Loans to Members.  Upon written application of a Member, the Trustee may lend to the Member such amount or amounts and upon such terms and conditions as the Trustee may determine proper, provided that the aggregate amount of all outstanding loans to such Member, including accrued interest thereon, shall not exceed the lesser of (a) $50,000, reduced by any loan repayment made during the one (1) year period ending on the day before the date such loan is made, or (b) fifty percent (50%) of the vested amount of said Member's account (determined

26

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003610

DEF000114
Confidential-Subject
to Protective Order

at the time the loan is made). Loans pursuant to this Section 6.10 shall be made available to all Members on a reasonably equivalent basis.

Each such loan shall be made at such reasonable rate of interest as the Trustee may determine. Each such loan shall be subject to such other terms and conditions as the Trustee may determine. Each such loan shall be evidenced by the promissory note (the "Note") of the Member and shall be secured by fifty percent (50%) of such Member's vested interest in the Plan. Each such loan shall be repaid by payroll deduction or by such other means as may be authorized by the Trustee. Each such loan shall include the written consent of the Member to an immediate distribution in payment of the entire outstanding loan principal and any interest theretofore accrued, in the event such Member defaults pursuant to the terms of the note at any time subsequent to terminating employment with the Company. Each such loan shall be amortized over the term of the loan in level principal payments made not less frequently than quarterly, and shall be repaid within such time period as may be established by the Trustee but not longer than five (5) years unless such loan is used to acquire a dwelling unit which within a reasonable time is to be used (determined at the time the loan is made) as the principal residence of the Member.

All such loans shall be general investments of the Trust and the interest income thereon shall be included in the determination of the net worth of the Trust pursuant to Section 5.04.

If any part or all of the amount standing to the credit of a Member's account under the Plan shall become distributable to such Member or his Beneficiary while a loan to such Member under this Section 6.10 is outstanding, the Trustee shall apply the amount of such distribution in

27

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003611

DEF000115
Confidential-Subject
to Protective Order

payment of the outstanding loan principal, whether or not then due, and of any interest

theretofore accrued, before distributing the balance, if any, to the Member or his Beneficiary.

All expenses incurred by the Trustee, including reasonable attorneys' fees and court costs,

as a result of a default by a Member shall be charged against the Member's interest in the Plan.

6.11  Direct Rollovers.  Notwithstanding any provision of the Plan to the contrary that

would otherwise limit a distributee's election under this Section, a distributee may elect, at the

time and in the manner prescribed by the Plan Administrator, to have any portion of an Eligible

Rollover Distribution paid directly to an eligible retirement plan specified by the distributee in a

direct rollover.

Such distributions shall be subject to the notice and time limitations under Section 6.06(a).

Whenever used in this Section, the following words shall have the following meanings:

(1)     Eligible Rollover Distribution:  An Eligible Rollover Distribution is any

distribution of all or any portion of the balance to the credit of the distributee, except that an

Eligible Rollover Distribution does not include:  any distribution that is one of a series of

substantially equal periodic payments (not less frequently than annually) made for the life (or

life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee

and the distributee's designated beneficiary, or for a specified period of ten (10) years or more;

any distribution to the extent such distribution is required under section 401(a)(9) of the Code;

and the portion of any distribution that is not includable in gross income (determined without

regard to the exclusion for net unrealized appreciation with respect to employer securities).

(2)     Eligible Retirement Plan:  An Eligible Retirement Plan is an individual retirement

account described in section 408(a) of the Code, an individual retirement annuity described in

28

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003612

DEF000116
Confidential-Subject
to Protective Order

section 408(b) of the Code, an annuity plan described in section 403(a) of the Code, or a

qualified trust described in section 401(a) of the Code, that accepts the distributee's Eligible

Rollover Distribution. However, in the case of an Eligible Rollover Distribution to the

surviving spouse, an Eligible Retirement Plan is an individual retirement account or individual

retirement annuity.

    (3)    <u>Distributee</u>:  A Distributee includes an Employee or former Employee.  In

addition, the Employee's or former Employee's surviving spouse and the Employee's or former

Employee's spouse or former spouse who is the alternate payee under a qualified domestic

relations order, as defined in Section 414(p) of the Code, are Distributees with regard to the

interest of the spouse or former spouse.

    (4)    <u>Direct Rollover</u>:  A Direct Rollover is a payment by the Plan to an Eligible

Retirement Plan specified by the Distributee.

    6.12  <u>In-Service Withdrawals</u>.  An active Member who is currently employed with the

Company may make in-service withdrawals from the vested portion of his account under the

Plan in accordance with subparagraphs (a) and/or (b) below.  All withdrawal elections shall be

made in such form and pursuant to such procedures as may be required by the Trustee.  The

valuation of a Member's account balance shall be made as of the Valuation Date immediately

preceding the date of distribution.  In addition, the amount withdrawn shall be credited with

interest at the prevailing short-term rate as determined by the Trustee for the period from the

Valuation Date immediately preceding the date of such distribution to the last day of the

calendar month preceding such distribution.

29

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003613

DEF000117
Confidential-Subject
to Protective Order

(a)    An active Member who is currently employed by the Company and who has been credited with 20 or more years of Service may elect to withdraw all or any portion of his account under the Plan subject to the following conditions:

(1)    A Member may make only one withdrawal per Plan Year pursuant to this Section 6.12(a); and

(2)    If the Trustee determines that the assets of the Trust do not provide sufficient liquidity to permit the requested withdrawal amount to be fully paid in cash, distribution of such withdrawal amount shall be deferred until the Trustee determines that there is sufficient liquidity or until the third (3rd) anniversary of the date of the Trustee's receipt of the Member's withdrawal election (the "deferred distribution date"), whichever is earlier.  Any such deferred withdrawal amount shall remain invested in the general assets of the Trust and shall continue to be evaluated and adjusted as of each Valuation Date pursuant to Section 5.04 and 5.05.  If distribution of the Member's withdrawal amount has not been made by such deferred distribution date, then distribution of such amount shall be made on such deferred distribution date in cash (to the extent available) and shares of Common Stock (to the extent sufficient cash is not available).

(b)    An active Member who is currently employed with the Company may elect to withdraw all or a portion of his vested account balance under the Plan in order to meet a "Financial Hardship," subject to the following conditions:

(1)    Any such withdrawal shall be limited to the amount required to meet such Financial Hardship increased by (i) any amounts necessary to pay any federal, state

30

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003614

DEF000118
Confidential-Subject
to Protective Order

or local income taxes or penalties reasonably anticipated to result from the

distribution and (ii) interest (determined pursuant to the first paragraph of this

Section 6.12);

(2)     Any such withdrawal shall be made only to the extent the Trustee

determines there is sufficient liquidity in the Trust to pay such withdrawal amount

in cash.

For purposes of this Section 6.12(b), a "Financial Hardship" will be deemed to exist only

with respect to:  (i) expenses for medical care (as described in Section 213(d) of the Code)

of the Member, the Member's spouse or any dependent of the Member (as defined in

Section 152 of the Code) or expenses necessary for such persons to obtain such medical

care, (ii) the purchase of a principal residence of the Member, (iii) the need to prevent

eviction of the Member from his principal residence or foreclosure on the mortgage of the

Member's principal residence, (iv) payment of expenses related to the renovation of the

Member's principal residence, (v) payment of educational expenses for the Member, the

Member's spouse or any dependent of the Member (as defined in Section 152 of the

Code), (vi) the need to pay the funeral expenses (including burial expenses) of a family

member of the Member, or (vii) payment of significant amounts of current debt incurred

as a result of any one or more of the foregoing.  The determination that the Member is

faced with a Financial Hardship and the amount required to meet such Financial Hardship

shall be made by the Trustee in accordance with uniform and nondiscriminatory standards

or policies which shall be adopted by the Trustee and consistently applied to each

application for a withdrawal pursuant to this Section 6.12(b), and the Trustee may

31

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003615

DEF000119
Confidential-Subject
to Protective Order

reasonably rely upon the validity of any and all documentation submitted by the Member in accordance with such standards or policies.

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003616

DEF000120
Confidential-Subject
to Protective Order

## ARTICLE VII

### Amendment and Termination

7.01 <u>Right to Amend or Terminate</u>. The Company reserves the right at any time and from time to time to amend this Agreement, or discontinue or terminate the Plan and Trust by delivering to the Trustee a copy of an amendment or appropriate Board of Directors' resolution of discontinuance or termination certified by an officer of the Company; <u>provided</u>, however, that except as provided in Section 7.02, the Company shall have no power to amend or terminate this Agreement in such manner as would cause or permit (a) any of the Trust assets to be diverted to purposes other than for the exclusive benefit of the Employees of the Company or their Beneficiaries or estates; (b) any reduction in the amount theretofore credited to any Member or former Member; (c) any portion of the Trust assets to revert to or become the property of the Company; (d) the duties or liabilities of the Trustee to be changed without his written consent; and (e) the elimination of an optional form of benefit with respect to amounts credited to a Member's accounts prior to the amendment.

7.02 <u>Amendment for Tax Exemption</u>. The Company reserves the right to amend this Agreement and the Plan and Trust hereunder in such manner as may be necessary or advisable so that said Trust may qualify and continue to qualify as an exempt employees' trust under the provisions of the Internal Revenue Code as now in force or as it may hereafter be changed or amended; and any such amendment may be made retroactively.

7.03 <u>Liquidation of Trust in Event of Termination</u>. In the event of termination or partial termination (as determined by an Internal Revenue Service ruling or by a court of proper jurisdiction, as to which all rights of appeal have expired) of this Plan and Trust, or complete

33

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003617

DEF000121
Confidential-Subject
to Protective Order

discontinuance of contributions thereto by the Company, the rights of all Members (or in the case of a partial termination, the Members affected thereby) to amounts theretofore credited to their accounts shall be fully vested and nonforfeitable.  In the event of termination, the Trustee shall (a) reduce to cash such part of the Trust fund as he may deem appropriate; (b) pay the liabilities, if any, of the Trust; (c) value the remaining assets of the Trust as of the date of termination and adjust Members' account balances in the same manner as provided in Section 5.05; (d) distribute such assets in cash or partly in shares of Common Stock and partly in cash to or in behalf of the Members in liquidation in proportion to the amounts standing to the credit of their respective accounts as of the termination date.

7.04  Termination of Plan and Trust.  This Agreement and the Plan and Trust hereunder shall in any event terminate whenever all property held by the Trustee shall have been distributed in accordance with the terms hereof.  Until such time as the Trust is fully distributed, the Trustee shall continue to have the powers, immunities and exemptions which he had during the existence of the Trust, to the extent permitted by law.

34

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003618

DEF000122
Confidential-Subject
to Protective Order

## ARTICLE VIII

### Rights and Duties of Trustee

8.01  Trustees.  There shall be such number of Trustees of this Trust as the Company may determine, any or all of whom may be officers or employees of the Company or any other individuals or entities.

8.02  Powers of Trustee.  It shall be the duty of the Trustee to hold the Common Stock of the Company or other property contributed to and acquired by the Trust, and to make distributions therefrom in accordance with the Plan.  The Trustee is hereby vested with all powers and authority necessary in order to carry out his duties and responsibilities in connection with the administration of the Plan and Trust as herein provided, and is authorized to make such rules and regulations as he may deem necessary to carry out the provisions of the Plan and Trust.  The Trustee shall determine any question arising in the administration, interpretation and application of the Plan and Trust, and the decision of the Trustee shall be conclusive and binding on all persons.

8.03  Investments.  The Trustee shall invest and reinvest the funds of the Trust and keep the same invested, without distinction between principal and income, in such stocks, bonds or other securities or certificates of participation or shares of any mutual investment company, trust or fund, or any other property of any kind, real or personal, tangible or intangible, as he may deem advisable, provided that the Trustee may hold funds of the Trust uninvested if and to the extent that he may deem advisable from time to time.  Notwithstanding the foregoing, and in accordance with the purposes of the Plan, the Trustee is specifically authorized to invest all or any portion of the Trust assets in shares of Common Stock.  It is intended that a substantial

35

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003619

DEF000123
Confidential-Subject
to Protective Order

portion of the assets of the Trust (up to 100%) shall be invested in shares of Common Stock, to the extent that such Common Stock is reasonably available.

8.04 <u>Method of Purchasing, Holding and Selling Securities</u>. The Trustee may purchase Common Stock from the Company or from any stockholder of the Company at a price equal to the fair market value of the Common Stock at the time of purchase. The Trustee may keep the Common Stock and any other securities or other property of the Trust in the name of some other person, firm or corporation or his own name without disclosing fiduciary capacity. The Trustee may purchase or sell at public auction or by private contract, redeem, or otherwise realize upon such Common Stock, securities, or other property and for such purposes may execute such instruments and writings and do such things as he shall deem proper.

8.05 <u>Exercise of Voting Rights</u>. The Trustee is hereby authorized to vote the Common Stock and any other securities comprising the Trust fund or otherwise consent to or request any action on the part of the Company or the issuer of such other securities, and to give general or special proxies or powers of attorney, with or without power of substitution, and to participate in reorganizations, recapitalizations, consolidations, mergers and similar transactions with respect to such securities; to deposit such Common Stock or other securities in any voting trust, or with any protective or like committee, or with a trustee, or with depositaries designated thereby; and generally to exercise any of the powers of an owner with respect to the Common Stock, securities, and other assets which the Trustee deems to be for the best interests of the Trust to exercise.

8.06 <u>Power to Borrow</u>. The Trustee is hereby authorized to borrow money for the purpose of this Trust upon such terms and conditions as he may determine, and for any amount

36

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003620

DEF000124
Confidential-Subject
to Protective Order

so borrowed to issue the promissory note of the Trustee and to secure the repayment thereof by pledge, mortgage or hypothecation of all or any part of the property of the Trust, and no person loaning money to the Trustee shall be bound to see to the application of the money loaned or to inquire into the validity of any such borrowing.

8.07  <u>Reliance on Trustee as Owner</u>.  No person dealing with the Trustee shall be required to take any notice of this Agreement, but all persons so dealing shall be protected in treating the Trustee as the absolute owner with full power of disposition of all the monies, Common Stock and other property of the Trust, and all persons dealing with the Trustee are released from inquiry into the decision or authority of the Trustee and from seeing to the application of monies, Common Stock or other property paid or delivered to the Trustee.

8.08  <u>Liquidation of Assets</u>.  In the event that cash is required by the Trustee to effect any action or distribution under this Trust, or to pay any expenses of this Trust, or for any other reason deemed sufficient by the Trustee, the Trustee shall take such action as to the sale or other disposition of Common Stock or other property forming a part of the Trust as will provide the amount of cash necessary for such payments.

8.09  <u>Evidence on which Trustee may Act</u>.  In taking any action or determining any fact or question which may arise under this Trust, the Trustee may, with respect to the affairs of the Company or its Employees, rely upon any statement by the Company with respect thereto.  In the event that any dispute may arise regarding the payment of any sums or regarding any act to be performed by the Trustee, the Trustee may retain such payment or postpone the performance of such act until actual adjudication of such act shall have been made in a court of competent jurisdiction; or until he shall have been indemnified against loss to his satisfaction; <u>provided</u>,

37

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003621

DEF000125
Confidential-Subject
to Protective Order

however, that in the event of any such dispute, the Trustee may rely upon and act in accordance with any directions received from the Company.

8.10  Action by Trustees.  In the event there are two or more individual Trustees of this Trust, the Trustees shall act by a majority of their number at the time in office and such action may be taken either by vote at a meeting or in writing without a meeting.  The Trustees may by such majority action authorize any one or more of their number to execute any document or documents or to take any other action on behalf of the Trustees, and in such event any one of the Trustees may certify in writing to any person the taking of such action and the name or names of the Trustee or Trustees so authorized, including himself.  Any such person shall be protected in accepting and relying upon any such document or certificate and is released from inquiry into the authority of any of the Trustees.

8.11  Discretionary Action.  Wherever under the provisions of this Agreement the Trustee is given any discretionary power or powers, such power or powers shall not be exercised in such manner as to cause any discrimination in favor of or against any Employee or class of Employees.  Any discretionary action taken by the Trustee hereunder shall be consistent with any prior discretionary action taken by him under similar circumstances and to this end the Trustee shall keep a record of all discretionary action taken by him under any provision hereof.

8.12  Employment of Agents.  The Trustee may employ agents, including, but not limited to, custodians, accountants or attorneys, to perform such services and duties (including any fiduciary responsibilities other than trustee responsibilities) in connection with the administration of the Trust as he may direct.  The compensation of such agents shall be an expense chargeable in accordance with Section 8.15.  The Trustee shall be fully protected in

38

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003622

DEF000126
Confidential-Subject
to Protective Order

acting upon the advice of any such agent, in whole or in part, and, except as may be required by applicable Federal law, shall not be liable for any act or omission of any such agent, the Trustee's only duty being to use reasonable care in the selection of such agent.

8.13 <u>Records and Accounting</u>. The Trustee shall keep accurate and detailed records of his transactions hereunder and all his accounts, books and records relating thereto shall be open at all reasonable times to the inspection of the Company and its authorized representatives. The Trustee shall render in writing at least once each twelve (12) months, accounts of his transactions under this Agreement to the Company and the Company may approve such accounts of the Trustee by an instrument in writing delivered to the Trustee. In the absence of the filing in writing with the Trustee by the Company of exceptions or objections to any such account within sixty (60) days after the receipt by the Company of any such account the Company shall be deemed to have approved such account; and in such case, or upon the written approval of the Company of any such account, the Trustee shall be released, relieved and discharged with respect to all matters and things set forth in such account. Except as may otherwise be required by applicable Federal law, no person interested in the Trust or otherwise other than the Company may require an accounting or bring any action against the Trustee with respect to the Trust and his actions as Trustee. In any proceeding instituted by the Trustee and/or the Company with respect to these accounts, only the Company and the Trustee shall be the necessary parties. The Trustee shall from time to time make such other reports and furnish such other information concerning the Trust as the Company may in writing reasonably request or as may be required by applicable Federal law.

39

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003623

DEF000127
Confidential-Subject
to Protective Order

8.14 <u>Payment of Taxes</u>.  The Trustee shall upon direction of the Company pay out of the Trust fund any and all taxes of any and all kinds, including without limitation property taxes and income taxes levied or assessed under existing or future laws upon or in respect of the Trust or any monies, securities or other property forming a part thereof or the income therefrom subject to the terms of any agreements or contracts made with respect to trust investments which make other provision for such tax payments.  The Trustee may assume that any taxes assessed on or in respect of the Trust or its income are lawfully assessed unless the Company shall in writing advise the Trustee that in the opinion of counsel for the Company such taxes are or may be unlawfully assessed.  In the event that the Company shall so advise the Trustee, the Trustee will, if so requested in writing by the Company, contest the validity of such taxes in any manner deemed appropriate by the Company or its counsel but at the expense of the Trust; or the Company may itself contest the validity of any such taxes at the expense of the Trust and in the name of the Trustee; and the Trustee agrees to execute all documents, instruments, claims and petitions necessary or advisable in the opinion of the Company or its counsel for the refund, abatement, reduction or elimination of any such taxes.

8.15 <u>Compensation and Expenses of Trustee</u>.  The Trustee shall serve without compensation for his services as such, but all expenses of the Trust shall be paid from the assets of the Trust unless the Company, in its sole discretion, elects to pay such expenses.  Such expenses shall include any expenses incident to the functioning of the Plan, including, but not limited to attorneys fees and the compensation of other agents, accounting and clerical charges, the cost of obtaining any bonds required by ERISA and other costs of administering the Plan.

40

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003624

DEF000128
Confidential-Subject
to Protective Order

8.16 <u>Resignation or Removal of Trustee</u>. Any Trustee acting hereunder may resign at any time upon written notice to the Company and, if applicable, to the remaining Trustees and the Company may remove any Trustee at any time upon written notice to such Trustee and, if applicable, the remaining Trustees. If any Trustee shall die, resign, be removed or for any other reason cease to be Trustee, he shall be replaced by a successor to be selected by the Board of Directors and until he is so replaced, the remaining Trustees shall exercise all of the powers of the Trustees. The appointment of a successor Trustee shall be effective upon written notification to the Company and to the Trustees of his acceptance of such appointment.

8.17 <u>Legal Action</u>. The Trustee shall not be required to institute any legal action or to appear or participate in any legal action to which he may be a party, except to contest taxes, unless he shall have been first indemnified to his satisfaction by the Company for all loss, cost and liability.

8.18 <u>Indemnification of Trustee</u>. The Company either through insurance or otherwise shall indemnify and hold harmless the Trustee from any and all claims, loss, damages, expenses (including reasonable counsel fees approved by the Company), and liability (including any reasonable amounts paid in settlement with the Company's approval), arising from any act or omission of the Trustee, except when the same is judicially determined to be due to the willful misconduct of the Trustee.

41

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003625

DEF000129
Confidential-Subject
to Protective Order

### ARTICLE IX

### The Company

9.01  No Contract of Employment.  This Trust shall not be construed as creating any contract of employment between the Company and any Member, Employee or other person, and nothing herein contained shall give any person the right to be retained in the employ of the Company or otherwise restrain the Company's right to deal with its employees, including Members and Employees, and their hiring, discharge, layoff, compensation, and all other conditions of employment in all respects as though this Trust did not exist.

9.02  No Contract to Maintain Plan.  The Company by the creation of the Trust does not enter into any agreement to maintain the Trust or to make any further contributions thereto or reimbursement of expenses incurred hereunder.  Each contribution by the Company shall be voluntary, and the Company reserves the right to suspend payment of its contributions hereunder, and no party hereto or Member or any other person shall have any cause or right of action against the Company by reason of failure by the Company to make contributions to the Trust, or by reason of any action by the Company in terminating the Plan and Trust.

9.03  Liability of Company.  Subject to its agreement to indemnify the Trustee as provided in Section 8.18 and except as otherwise provided by applicable Federal law, neither the Company nor any person acting in behalf of the Company shall be liable for any act or omission on the part of the Trustee, or for any act performed or the failure to perform any act by any person with respect to this Agreement, the Plan or Trust, the Company's only duty being to use reasonable care in the selection of the Trustee.

42

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003626

DEF000130
Confidential-Subject
to Protective Order

9.04  <u>Action by Company</u>.  Whenever under the terms of this Agreement, the Company is permitted or required to take any action, such action shall be taken by the Board of Directors or by any officer of the Company thereunto duly authorized by the Board of Directors or otherwise.  In such event, any such officer may certify to the Trustee or any person the taking of such action and the name or names of the officers so authorized, including himself.  The execution of any direction, document or certificate in behalf of the Company by any of its officers shall constitute his certification of his authority with respect thereto, and the Trustee or other person shall be protected in accepting and relying upon any such direction, document or certificate and are released from inquiry into the authority of any officer of the Company.

9.05  <u>Successor to Business of Company</u>.  Unless this Plan and Trust be sooner terminated, a successor to the business of the Company, by whatever form or manner resulting, may continue the Plan and Trust by executing an appropriate supplementary agreement and such successor shall <u>ipso facto</u> succeed to all the rights, powers and duties of the Company hereunder.  The employment of any Employee who has continued in the employ of such successor shall not be deemed to have been terminated or severed for any purposes hereunder if such supplemental agreement so provides.

9.06  <u>Dissolution of the Company</u>.  In the event that the Company is dissolved by reason of bankruptcy or insolvency or otherwise, without any provision being made for the continuation of this Plan and Trust by a successor to the business of the Company, the Plan and Trust hereunder shall terminate, and the Trustee shall proceed in the same manner as though the Plan and Trust were being terminated by the Company as provided in Section 7.03.

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003627

DEF000131
Confidential-Subject
to Protective Order

## ARTICLE X

### Top-Heavy Provisions

10.01 <u>Article Controls</u>. Any provisions of any Plan to the contrary notwithstanding, the provisions of this Article X shall control the Plan to the extent required to cause the Plan to comply with the requirements imposed by Section 416 of the Code.

10.02 <u>Definitions</u>. Where the following words and phrases appear in this Article X, they shall have the respective meanings set forth below, unless their context clearly indicates to the contrary:

(a)    <u>Account Balance</u>. As of any Valuation Date, the aggregate amount credited to an individual's account or accounts under a qualified defined contribution plan (excluding employee contributions which were deductible within the meaning of Section 219 of the Code and rollover or transfer contributions made by or on behalf of such individual to such plan from another qualified plan, sponsored by an entity other than the Company or an Affiliated Company) increased by (i) the aggregate distributions made to such individual from such plan during a five (5) year period ending on the Determination Date, and (ii) the amount of any contributions due as of the Determination Date immediately following such Valuation Date;

(b)    <u>Aggregation Group</u>. The group of qualified plans maintained by the Company and each Affiliated Company consisting of (i) each plan in which a Key Employee participates and each other plan which enables a plan in which a Key Employee participates to meet the requirements of Sections 401(a)(4) and 410 of the Code, or (ii) each plan in which a Key Employee participates, each other plan which enables a plan in which a Key Employee participates to meet the requirements of Sections 401(a)(4) and 410 of the Code, and any other

44

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003628

DEF000132
Confidential-Subject
to Protective Order

plan which the Company elects to include as a part of such group; provided, however, that the Company may not elect to include a plan in such a group if its inclusion would cause the group to fail to meet the requirements of Sections 401(a)(4) and 410 of the Code.

(c)    Compensation. For the purposes of this Article X, an individual's earned income, wages, salaries, and other amounts actually paid by the Company or an Affiliated Company to such individual during a Plan Year for personal services actually rendered in the course of employment with the Company or an Affiliated Company (subject to exclusion of amounts specified by regulations promulgated under Section 415 of the Code). In no event shall a Member's Compensation exceed $150,000 for any Plan Year (or such other amount as the Secretary of the Treasury or his delegate may determine for such Plan Year under Section 401(a)(17) of the Code).

(d)    Determination Date. For the first Plan Year of any plan, the last day of such Plan Year, and for each subsequent Plan Year of such plan, the last day of the preceding Plan Year.

(e)    Former Key Employee. With respect to any Plan Year, any individual who was a Key Employee in a previous Plan Year but who is not a Key Employee with respect to such Plan Year. For purposes of this definition, a beneficiary (who would not otherwise be a Key Employee) of a deceased former Key Employee shall be deemed to be a Former Key Employee in substitution for such deceased Former Key Employee.

(f)    Key Employee. With respect to any Plan Year, any individual who at any time during such Plan Year or during any of the four (4) Plan Years immediately preceding such Plan Year was (i) an officer (within the meaning of Section 416 of the Code) of the Company or

45

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003629

DEF000133
Confidential-Subject
to Protective Order

an Affiliated Company with Compensation greater than 150% of the amount in effect under

Section 415(c)(1)(A) for such Plan Year, (ii) one of the ten (10) employees with Compensation

greater than such amount and owning the largest interests in the Company or an Affiliated

Company, (iii) an owner of more than five percent (5%) of the outstanding stock of the

Company or an Affiliated Company or of stock possessing more than five percent (5%) of the

total combined voting power of all the stock of the Company or an Affiliated Company, or

(iv) an employee whose Compensation (during the calendar year including the Determination

Date) exceeded $150,000 and who was an owner of more than one percent (1%) of the

outstanding stock of the Company or an Affiliated Company or of stock possessing more than

one percent (1%) of the total combined voting power of all of the stock of the Company or an

Affiliated Company.  For purposes of this definition, (i) an individual shall be deemed to own

stock owned by others as provided in Section 318 of the Code, (ii) a beneficiary (who would not

otherwise be a Key Employee) of a deceased Key Employee shall be deemed to be a Key

Employee in substitution for such deceased Key Employee, and (iii) the total number of Key

Employees who are officers of the Company and the Affiliated Companies shall be limited to

the fifty (50) (or, if lesser, the greater of three (3) or ten percent (10%) of the employees)

officers with the highest Compensation.

       (g)     Plan Year.  With respect to any plan, the annual accounting period used by

such plan for annual reporting purposes.

       (h)     Valuation Date.  With respect to any Plan Year of any defined contribution

plan, the most recent date within the twelve (12) month period ending on a Determination Date

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003630

DEF000134
Confidential-Subject
to Protective Order

as of which the trust fund established under such plan was valued and the net income (or loss) thereof allocated to members' accounts.

10.03  Top-Heavy Status.  The Plan shall be deemed to be top-heavy if, as of any Determination Date, (i) the sum of the Account Balances of Members who are Key Employees exceeds sixty percent (60%) of the sum of the Account Balances of all Members (excluding in both cases the Account Balances of all Former Key Employees and of those former Employees who have not performed any services for the Company or any Affiliated Company at any time during the five-year period ending on the Determination Date) unless the Plan is part of an Aggregation Group or (ii) an Aggregation Group including the Plan is top-heavy.  An Aggregation Group shall be deemed to be top-heavy as of a Determination Date if the sum (computed in accordance with Section 416(g)(2)(B) of the Code and the regulations promulgated thereunder) of the Account Balances of Key Employees under all defined contribution plans included in the Aggregation Group exceeds sixty percent (60%) of the sum of the Account Balances of all individuals under such plans (excluding in both cases the Account Balances of all Former Key Employees and of those former Employees who have not performed any services for the Company or any Affiliated Company at any time during the five-year period ending on the Determination Date).

10.04  Minimum Contribution.  If the Plan is determined to be top-heavy for a Plan Year, the Company shall make an additional Company contribution to the Plan on behalf of each Employee who is a Member of the Plan, who is not a Key Employee, and who has not terminated his employment as of the last day of such Plan Year, equal to that amount which when added to the aggregate amount of Company contributions and forfeitures (excluding

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003631

DEF000135
Confidential-Subject
to Protective Order

amounts credited to the account of such Member pursuant to Sections 5.08 and 6.05) allocated to such Member's accounts for such Plan Year will cause the sum of all such contributions and forfeitures to equal the lesser of

(a)  three percent (3%) of such Member's Compensation for such Plan Year, or

(b)  a percent of such Member's Compensation for such Plan Year equal to the greatest percent obtained by dividing for each Key Employee the aggregate amount of Company contributions and forfeitures (excluding amounts credited to the account of any such Key Employee pursuant to Sections 5.08 and 6.05) allocated to such Key Employee's accounts for such Plan Year by such Key Employee's Compensation for such Plan Year.

10.05  Vesting.  If the Plan is determined to be top-heavy for a Plan Year, the vested benefit of any Member who terminates his employment with the Company during such Plan Year shall be determined in accordance with Section 6.04, but using the following vesting schedule in lieu of the schedule appearing in Section 6.04:

| Years of Service | | Percentage |
|---|---|---|
| At Least | But Less Than | |
| | 2 | NONE |
| 2 | 3 | 20% |
| 3 | 4 | 40% |
| 4 | 5 | 60% |
| 5 | | 100% |

In the event that the Plan ceases to be top-heavy in a subsequent Plan Year, the vested benefit of any Member who terminates his employment with the Company after the Plan has ceased to be top-heavy shall be determined in accordance with the vesting schedule in Section 6.04; except that (a) the vesting percentage of any such Member shall not be less than the

48

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003632

DEF000136
Confidential-Subject
to Protective Order

vesting percentage which such Member achieved under the schedule set forth in this Section

10.05 of the last day of the last Plan Year for which the Plan was top-heavy, and (b) the vesting

percentage of a Member who has been credited with three (3) or more years of Service as of the

last day of the last Plan Year for which the Plan was top-heavy shall continue to be determined

in accordance with the vesting schedule set forth in this Section 10.05.

    10.06  <u>Termination of Top-Heavy Status</u>.  Except as specifically provided in Section

10.05, if the Plan has been deemed to be top-heavy for one or more Plan Years and thereafter

ceases to be top-heavy, the provisions of this Article X shall cease to apply to the Plan effective

as of the day following the Determination Date on which it is determined to no longer be top-

heavy.

49

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003633

DEF000137
Confidential-Subject
to Protective Order

## ARTICLE XI

### Miscellaneous

11.01  Limitation of Rights.  The establishment of the Trust shall not be considered as giving any Member or Employee or any other person any legal or equitable rights as against the Company or the Trustee, nor shall any person be responsible for the sufficiency of the Trust to provide benefits under the Plan, but each person interested shall look solely to the assets of the Trust for benefits payable subject to the terms and conditions of the Plan.

11.02  Spendthrift Provision.  Beneficial interests of Members or their Beneficiaries in the Trust shall not be assignable or subject to attachment nor receivership, nor shall they pass to any trustee in bankruptcy or be reached or applied by any legal process for the payment of any obligations of any such person, except as provided by Section 6.10 in the case of a loan to a Member from the Trust.  Nothing in this Section 11.02 shall prevent or restrict the creation, assignment or recognition of a right to any benefit payable with respect to a Member pursuant to a "qualified domestic relations order" (within the meaning of Sections 401(a)(13) and 414(p) of the Code).

11.03  Appointment of Person to Receive Payment.  In the event any amount shall become payable hereunder to any person (or his Beneficiary or estate), and if after written notice from the Trustee mailed to such person's last known address as shown on the Company's records, such person or his personal representative shall not have presented himself to the Trustee or notified the Trustee in writing of his address within one (1) year after the mailing of such notice, then the Trustee shall in his discretion appoint one or more of the spouse and blood relatives of such person to receive such amount, including any amount thereafter becoming due

50

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003634

DEF000138
Confidential-Subject
to Protective Order

to such person (or his estate), in the proportions determined by him. Any action of the Trustee hereunder shall be binding and conclusive upon all persons.

11.04 Construction. In any question of interpretation or other matter of doubt, the Trustee and the Company may rely upon the opinion of counsel for the Company or any other attorney at law designated by the Company with the approval of the Trustee. The provisions of this Agreement shall be construed, administered and enforced according to the laws of the United States and, to the extent permitted by such laws, by the laws of the Commonwealth of Massachusetts. All contributions to the Trust shall be deemed to be made in the Commonwealth of Massachusetts.

11.05 Impossibility of Performance. In case it becomes impossible for the Company or the Trustee to perform any act under this Plan and Trust, that act shall be performed which in the judgment of the Trustee will most nearly carry out the intent and purpose of this Plan and Trust. All parties to this Agreement or in any way interested in this Plan and Trust shall be bound by any acts performed under such condition.

11.06 Adjustment for Fractional Interests. Notwithstanding any other provision of this Plan to the contrary, the amount of any contribution of Common Stock shall be adjusted by adding such part of a fractional share of the Common Stock thereto as is necessary to bring the total shares of Common Stock held by the Trustee to a whole number.

11.07 Definition of Words. Feminine or neuter pronouns shall be substituted for those of the masculine form, and the plural shall be substituted for the singular, in any place or places herein where the context may require such substitution or substitutions.

51

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003635

DEF000139
Confidential-Subject
to Protective Order

11.08 <u>Titles</u>. The titles of articles and sections are included only for convenience and shall not be construed as a part of this Agreement or in any respect affecting or modifying its provisions.

11.09 <u>Merger or Consolidation</u>. In the event that this Plan is merged with or consolidated with any other plan, or the assets or liabilities accrued under this Plan are transferred to any other plan, each Member's benefit under such other plan shall be at least as great immediately after such merger, consolidation or transfer (if such plan were then to terminate) as the benefit to which he would have been entitled under this Plan immediately before such merger, consolidation or transfer (if the Plan were then to terminate).

11.10 <u>Claims Procedure</u>. In accordance with Section 503 of the ERISA and the regulations of the Secretary of Labor prescribed thereunder,

(1)    All claims for benefits under this Plan shall be filed in writing with the Trustee in accordance with such regulations as the Trustee shall reasonably establish.

(2)    The Trustee shall, within sixty (60) days of submission of a claim, provide adequate notice in writing to any claimant whose claim for benefits under the Plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the claimant,

(3)    The Trustee shall, within a reasonable period of time and upon request by a claimant, afford a reasonable opportunity to any claimant, whose claim for benefits has been denied, for a full and fair review by the Trustee of the decision denying the claim, and

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003636

DEF000140
Confidential-Subject
to Protective Order

(4)     The Trustee shall, within 60 days of receipt of a request for a review, render a written decision on his review setting forth the specific reasons for such decision, written in a manner to be understood by the claimant.

11.11  Allocation and Delegation of Responsibilities. The named fiduciaries with respect to the Plan shall be the Company and the Trustee. The Company is the Plan Administrator for all purposes of ERISA. The responsibilities of the named fiduciaries shall be allocated as provided herein, and each such fiduciary shall have only those responsibilities and obligations that are specifically imposed upon him by this Trust Agreement. It is intended that each of the named fiduciaries shall be responsible for the proper exercise of his own powers, duties, responsibilities and obligations under the Plan and shall not be responsible for any act or omission of any other fiduciary. Each named fiduciary shall be entitled to delegate all or any part of his fiduciary responsibilities and obligations (except those related to the management of the assets held hereunder) to any other person or entity. In the event of any such delegation, (i) the named fiduciary shall not be liable for any act or omission of the person to whom the responsibility has been delegated as long as the selection and retention of such person is prudent and (ii) the person to whom the fiduciary powers and obligations are delegated shall be responsible only for the proper exercise of the powers, duties, responsibilities and obligations that have been specifically delegated to him.

11.12  Special Provisions for Certain Leased Employees. A "leased employee" shall receive credit for Service which shall be recognized in determining the Employee's credit for Service for the entire period during which he is a leased employee of the Company as if he were an Employee of the Company; provided, however, that a leased employee shall not be eligible

53

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003637

DEF000141
Confidential-Subject
to Protective Order

to participate in the Plan as long as he remains a leased employee. For purpose of this Section 11.12, the term "leased employee" means any person (a) who is not an Employee of the Company and (b) who pursuant to an agreement between the Company and any other person (a "leasing organization") has performed services for the Company on a substantially full-time basis for a period of at least one (1) year and such services are performed under the primary direction or control of the Company, and (c) who is not covered by a money purchase pension plan maintained by the leasing organization which provides a nonintegrated employer contribution rate of at least ten percent (10%) of compensation, immediate participation, and full and immediate vesting. If leased employees constitute more than twenty percent (20%) of the Company's nonhighly compensated workforce (as defined in Section 414(n)(5)(C)(ii) of the Code) without regard to clause (c) of the preceding sentence, then clause (c) shall not apply.

11.13 <u>Execution of Agreement</u>. This Agreement may be executed in any number of counterparts and each fully executed counterpart shall be deemed an original.

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003638

DEF000142
Confidential-Subject
to Protective Order

IN WITNESS WHEREOF these presents have been signed and sealed for and in behalf of

the parties hereto, in the case of the Company by its duly authorized officer, this 2̲7̲ᵗʰ day of

_J̲U̲L̲Y̲_____, 1998.

|  |  |
|---|---|
| COMPANY: | MEDICAL INFORMATION TECHNOLOGY INC. |

By _Dabant Mandill_,
Title: CHIEF FINANCIAL OFFICER + TREAS.

TRUSTEE:

A. Neil Pappalardo

DOCSB\520071.2

55

CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
M 0003639

DEF000143
Confidential-Subject
to Protective Order

# MOTION TO SEAL DOCUMENT PENDING

# MOTION TO SEAL DOCUMENT PENDING