UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL P. HUBERT, WILLIAM TRAINOR, and DAVID HINCHLIFFE, Individually And On Behalf Of All Persons Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> MEDICAL INFORMATION TECHNOLOGY PROFIT SHARING PLAN, MEDICAL INFORMATION TECHNOLOGY, INC., and A. NEIL PAPPALARDO, <br><br> Defendants. | Civil Action No. 05-10269RWZ |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AFFIDAVITS OF A. NEIL PAPPALARDO AND BARBARA A. MANZOLILLO**

Defendants hereby oppose Plaintiffs' frivolous Motion to Strike Affidavits of A. Neil Pappalardo and Barbara A. Manzolillo. Plaintiffs' motion to strike should be denied for three independently sufficient reasons. First, Plaintiffs grossly misrepresent the record in this case, predicating their motion on blatant and easily demonstrable falsehoods concerning what has occurred thus far during discovery in this action. Second, Plaintiffs' motion is premised on their mischaracterization of the content of the two affidavits they seek to strike. And third, denial of the motion to strike would cause no prejudice to Plaintiffs because the affidavits they object to contain only information previously provided to Plaintiffs during discovery, but granting the motion to strike would prejudice Defendants, who have relied on the affidavits in presenting their arguments in opposition to Plaintiffs' Motion for Class Certification.

## BACKGROUND

By way of background, Plaintiffs filed a class action complaint purporting to bring a benefits claim under the Employee Retirement Income Security Act ("ERISA"). The fundamental allegation in Plaintiffs' Amended Complaint is that the Defendants have been undervaluing the non-publicly traded stock of defendant Medical Information Technology, Inc. ("Meditech" or the "Company"), held by a trust (the "Trust") set up under the Medical Information Technology, Inc. Profit Sharing Plan (the "Plan"). The Amended Complaint contains numerous, specific allegations as to the value of Meditech stock that Plaintiffs allege the Defendants should have determined in specific years, according to a valuation methodology that Plaintiffs allege Defendants should have used.

Plaintiffs' Motion for Class Certification is currently pending. In their Memorandum in Support of that motion, Plaintiffs make repeated references to the manner in which Meditech stock is valued, arguing, *inter alia*, that "[t]he factual questions involved in answering whether the Proposed Class members received the fair value of their vested interest in the Plan are identical for all Proposed Class members," and that all class members "have been injured in the same way (e.g., received less than the amount they were due under the Plan), and have claims based on the same legal theories (e.g., the Defendants intentionally undervalued the stock held by the Plan …)." Plaintiffs' Memorandum in Support at 10-12 (Docket No. 57-2).

In opposing Plaintiffs' motion for class certification, Defendants challenged Plaintiffs' adequacy to represent the putative class, arguing, among other things, that actual conflicts exist between the named Plaintiffs (who received distributions from the Trust in 1998 and 2004) and putative class members who either received distributions in intervening or subsequent years, or who are current participants in the Plan. These conflicts are based, in part, on Plaintiffs'

allegation that the value of Meditech stock should have plummeted between year-end 1997 and year-end 2000, and that if Plaintiffs' valuation methodology had been used, the Trust would run out of cash to pay distributions to the remaining Plan participants. *See* Defendants' Opposition to Plaintiffs' Motion for Class Certification at 18-20 (Docket No. 65). Defendants also made reference to the millions of dollars received by the named Plaintiffs from the Trust and from their own purchases of Meditech stock, in arguing that Plaintiffs' claims for additional millions are not what Fed. R. Civ. P. 23 was meant to address, and that the Plaintiffs and potentially certain other class members could be subject to defenses such as laches, waiver, and estoppel.

In support of these and other arguments, Defendants submitted affidavits from Barbara A. Manzolillo, Meditech's CFO and the administrator of the Trust and Plan on behalf of Meditech (the "Manzolillo Affidavit," Docket No. 67), and A. Neil Pappalardo, Meditech's Chairman and CEO and the trustee of the Trust (the "Pappalardo Affidavit," Docket No. 68). These Affidavits provided supporting information including, *inter alia*, information concerning the benefits received by the named Plaintiffs from the Trust and through their ownership of Meditech stock; the earnings and dividends per share of Meditech compared to the values determined by the Trustee and the values that Plaintiffs allege should have been determined; how the Plan operates including how contributions are made by the Company to the Plan; and the consequences for the remaining Plan participants and Meditech shareholders (many of whom are members of the putative class) should the Plan run out of cash, as Plaintiffs apparently desire. The affidavits also contain some scattered references to factors considered by the Trustee in determining the value for Meditech stock. Nowhere, however, either in the Affidavits or in Defendants' Opposition to Plaintiffs' Motion for Class Certification, do Defendants ever address the question whether the Trustee's valuation methodology is legally appropriate under ERISA.

## <u>ARGUMENT</u>

**I.    PLAINTIFFS HAVE MISREPRESENTED THE SCOPE OF DISCOVERY THAT HAS OCCURRED IN THIS ACTION**

Notwithstanding the clear relevance of the information provided in the Manzolillo and Pappalardo Affidavits to the class certification inquiry in this case, Plaintiffs now seek to strike the Affidavits and any argument made in opposition to class certification in reliance on the Affidavits, asserting that the Affidavits contain information outside the scope of discovery previously allowed in this case. In particular, Plaintiffs assert that, at Defendants' request, the Court "ordered that discovery commence only as to the issue of class certification," and that "Plaintiffs fully complied with the Court's order and did not inquire into the substance of the Defendants' valuation decisions." Motion to Strike at 2 (Docket No. 81).

Both of those statements are completely untrue, as Plaintiffs' counsel should well know. At the scheduling conference held in this case on April 18, 2006, Plaintiffs requested that Defendants provide all of the pleadings, deposition transcripts, and documents produced during discovery in an earlier state-court litigation between defendants Meditech and Mr. Pappalardo and a third party, Jerome Grossman (the "Grossman Litigation"). The Defendants objected to this unlimited scope of discovery prior to a determination of whether this case should proceed as a class action. In response, Plaintiffs requested, and Defendants specifically agreed to provide, the valuation-related materials from the Grossman Litigation. That agreement is reflected in the May 15, 2006 Scheduling Order of this Court, appended as Tab A to Plaintiffs' Motion to Strike, which states "Counsel agree to work out an appropriate protective order and to make available documents from the Grossman case."

Likewise, the falsity of Plaintiffs' assertion that they "fully complied with the Court's order and did not inquire into the substance of the Defendants' valuation decisions" is

unambiguously demonstrated by the second document appended by Plaintiffs to their Motion to Strike. As shown in Defendants' Response to Plaintiffs' First Request for Production of Documents (Tab B to the Motion to Strike), Plaintiffs requested from Defendants:

> All documents produced and/or exchanged between the parties in the matter of Grossman v. Medical Information Technology, Inc., et al. *concerning the valuation of Meditech stock*, including but not limited to documents produced during discovery by the defendants in that case, answers to requests for admission, answers to interrogatories, deposition transcripts and the exhibits thereto, expert reports and the material provided to experts, and pleadings whether or not the pleadings were ultimately filed by either party.

*Id*. at 9 (Request No. 11) (emphasis added).

In response to this request for materials "concerning the valuation of Meditech stock" from the Grossman Litigation, Defendants produced thousands of pages of documents. Attached as Exhibits 1 through 6 to the accompanying Attorney's Affidavit of Michael P. Sugrue are production letters from counsel for Defendants to counsel for Plaintiffs sent with the production of valuation related materials from the Grossman litigation. Valuation-related materials provided to Plaintiffs included, but were not limited to:

- The expert reports on valuation produced by each side in the Grossman Litigation;

- The documents relied upon by the experts on each side in the Grossman Litigation;

- Excerpts from the transcripts of the depositions of Mr. Pappalardo, Ms. Manzolillo, Mr. Grossman, and the Rule 30(b)(6) deposition of Meditech in the Grossman Litigation on valuation-related topics, together with the related deposition exhibits;

- Defendants' Responses to Plaintiff's First Set of Interrogatories in the Grossman Litigation concerning valuation-related topics;

- Plaintiff's Responses to Defendants' First Set of Interrogatories in the Grossman Litigation concerning valuation-related topics;

- Plaintiff's Responses to Defendants' First Set of Requests for Admission in the Grossman Litigation concerning valuation-related topics;

- Defendants' Responses to Plaintiff's Expert Interrogatories and Document Requests in the Grossman Litigation concerning valuation-related topics;

- Plaintiff's Responses to Defendants' Expert Interrogatories and Document Requests in the Grossman Litigation concerning valuation-related topics;

- Reports provided to the Meditech Board of Directors in connection with their annual determination of a year-end fair value for Meditech stock, for purposes of the Company selling stock to Meditech employees and contributing stock to the Trust;

- Minutes of meetings of the Board of Directors of Meditech in which the subject of share valuation is discussed;

- An annual memorandum from Mr. Pappalardo, in his capacity as Trustee, to Ms. Manzolillo, in her capacity as Plan Administrator, entitled "Annual Valuation of the Trust's Assets," for each year-end since 1996;

- Multiple communications from Mr. Pappalardo and Meditech's then Executive Vice-President, Howard Messing, to Meditech employees concerning the valuation of Meditech stock; and

- Presentations made by Mr. Pappalardo to Meditech employees explaining factors used in the valuation of Meditech stock.

Sugrue Affidavit, ¶¶ 4-9.

Indeed, Defendants not only produced all of these valuation-related documents from the Grossman Litigation in response to Plaintiffs' specific request for such materials, but they also responded to the following two interrogatories from Plaintiffs, which specifically sought information on the valuation methodology employed by the Meditech board of directors and by the Trustee, by identifying relevant documents produced during discovery:

> Interrogatory No. 2(c): With respect to the contribution of Meditech stock to the Plan, set forth in full every methodology employed or used by the Corporation or any other defendant to determine the value of Meditech stock at or about the time of contribution, including who was involved, the value determined, the dates upon which that methodology was employed, and identify all documents used to prepare the answer to this Interrogatory and produce same in response to Document Request Number One of even date.

> Interrogatory No. 2(d) Set forth the methodology employed to determine the value of each Participant's interest in the Plan, and the dates when that methodology was employed, and identify who was involved and produce and identify all documents used in preparing the answer to this Interrogatory.

*See* Defendants' Response to Plaintiffs' Initial Set of Interrogatories, Nos. 2(c), 2(d) (Sugrue Affidavit, Exhibit 7).

Moreover, counsel for Plaintiffs asked Mr. Pappalardo questions concerning the valuation of Meditech stock at his deposition. For example, Plaintiffs' counsel questioned Mr. Pappalardo extensively concerning a report provided to the Meditech Board of Directors in preparation for their vote to determine the value for Meditech stock. Such questions included whether "For purposes of this vote by the board, do they have any other financial information other than what you've just furnished them in this comment?," and "Was that [valuation] methodology as agreed to by the board of directors in writing; that is, was it set forth in writing anywhere?" *See generally* Transcript of the Testimony of A. Neil Pappalardo at 158-161 (A copy of relevant portions of Mr. Pappalardo's Rule 30(b)(6) deposition transcript is appended to the Sugrue Affidavit at Exhibit 8).

In summary, the entire basis for Plaintiffs' Motion to Strike – the supposed limits on discovery previously imposed in this case – is false. Plaintiffs asked for, and received, volumes of information concerning "Defendants' valuation decisions," including competing expert reports from another litigation. That Plaintiffs would so blatantly misrepresent the scope of discovery suggests not that there is anything wrong with the Affidavits they seek to strike, but that Plaintiffs know the Affidavits help demonstrate the substantial problems that Plaintiffs face in seeking certification of the putative class.

## II.   PLAINTIFFS HAVE MISREPRESENTED THE CONTENT OF THE PAPPALARDO AND MANZOLILLO AFFIDAVITS

Not only do Plaintiffs mischaracterize what has occurred during discovery in this matter, they also misrepresent the content of the Affidavits they seek to strike. Plaintiffs' entire motion to strike depends upon this misrepresentation. Neither affidavit consists wholly, or even primarily, of statements concerning "Defendants' valuation decisions," for which reason Plaintiffs' Motion to Strike is not only frivolous, but substantially overbroad.

The Manzolillo Affidavit (Docket No. 67) consists almost entirely of information about the three named Plaintiffs, the proposed class representatives in Plaintiffs' Motion for Class Certification, not "valuation" issues. Paragraphs 1-5 of the Manzolillo affidavit are introductory. Paragraphs 6-14 provide information concerning Plaintiff Michael Hubert's transactions in Meditech stock and his receipt of benefits from the Trust. Paragraphs 15-18 provide information concerning Plaintiff David Hinchliffe's transactions in Meditech stock and his receipt of benefits from the Trust. Paragraphs 19-22 provide information concerning Plaintiff William Trainor's transactions in Meditech stock and his receipt of benefits from the Trust. Paragraphs 23-27 simply provide factual data, readily available to Plaintiffs from Meditech's publicly-filed reports with the Securities & Exchange Commission and materials produced during discovery, concerning Meditech's earnings per share, the dividend per share paid on Meditech stock, the fair value per share determined by the Trustee, and the fair value per share that Plaintiffs allege should have been determined. Ms. Manzolillo also performs some simple calculations comparing the rate of growth of Meditech's earnings and dividends per share over time, to the rate of growth of the fair values per share actually determined by the Trustee and those values that Plaintiffs allege should have been determined.

The only statement in the entire Manzolillo Affidavit having anything to do with the Trustee's valuation decisions is the simple sentence "It is my understanding that in determining a year-end fair value for Meditech stock, the Trustee takes into consideration the per-share dividends to be paid by the Company in the following year." Manzolillo Affidavit, ¶ 25. This statement was made simply to provide context for the dividend data, and is not relied upon in Defendants' Opposition to Plaintiffs' Motion for Class Certification. And the sentence simply repeats information previously provided to Plaintiffs during discovery in this action, in response to their request for valuation materials from the Grossman Litigation.

Notably, the facts provided in the Manzolillo Affidavit contradict at least one egregious misrepresentation of fact found in Plaintiffs' Reply Memorandum in support of their Motion for Class Certification, which may be a reason why Plaintiffs sought to strike the Affidavit. In particular, Plaintiffs asserted in their Reply that they had only purchased a "few hundred shares of stock … over their twenty-plus years of service to the Company," suggesting that Plaintiffs somehow represent the tired, the poor, the huddled masses yearning to breathe free. Plaintiffs' Reply at 7 n. 5 (Docket No. 79). In fact, as demonstrated in the Manzolillo Affidavit, Mr. Hubert alone has purchased 24,300 split-adjusted shares, and the three named Plaintiffs have each earned hundreds of thousands of dollars from the appreciation of their Meditech stock and the dividends paid by the Company on that stock; Mr. Hubert alone has gained nearly $881,000, a number that continues to grow. If not for Ms. Manzolillo's affidavit, Plaintiffs' false statement that they purchased only a "few hundred shares" would have gone unanswered.

The Pappalardo affidavit (Docket No. 68) consists primarily of information concerning the policies underlying the Plan and the mechanics of the Plan, as relevant to Defendants' argument that the valuation methodology Plaintiffs allege should have been used would

prejudice absent class members. Paragraphs 1-4 of the Pappalardo Affidavit are introductory. Paragraphs 5-7 of the Pappalardo Affidavit explain why the Company established the Plan, and why the Company is required to determine a fair value for Meditech stock each year. Paragraphs 8-14 simply describe various provisions in the Plan. Paragraph 15 provides a brief explanation of factors Mr. Pappalardo considers in determining a fair value for Meditech stock in his capacity as Trustee, and in Paragraph 16 Mr. Pappalardo notes that his valuation policies have made millionaires of many of Meditech's employees, including each of the named Plaintiffs. Finally, in Paragraph 17 Mr. Pappalardo explains why it would be detrimental to most Plan participants if the Trust were to run out of cash, as Plaintiffs allege would happen if the are successful in this lawsuit. The only paragraph that discusses Mr. Pappalardo's valuation methodology is paragraph 15, which contains information previously provided to Plaintiffs in discovery, and contains no argument on the ultimate merits issues in this case.

## III.   PLAINTIFFS WOULD SUFFER NO PREJUDICE FROM DENIAL OF THE MOTION, BUT DEFENDANTS WOULD BE PREJUDICED SHOULD IT BE GRANTED

The final independently sufficient reason why Plaintiffs' Motion to Strike should be denied is the fact that Plaintiffs would suffer no prejudice from its denial, while Defendants would be prejudiced in their presentation of arguments in opposition to Plaintiffs' Motion for Class Certification should the Motion to Strike be granted.

In particular, Plaintiffs cannot claim to be prejudiced by the presentation of any of the information provided in the Affidavits because, as described above, *see supra* at 8-10, the information contained in the two Affidavits is information concerning the named Plaintiffs, and the information concerning the value of Meditech stock was either previously provided by Defendants to Plaintiffs during discovery in this Action, or previously provided to Plaintiffs during their employment at Meditech. Specifically, paragraphs 6-22 of the Manzolillo Affidavit

provide information concerning the Plaintiffs' receipt of benefits from the Trust, their transactions in Meditech stock, and their receipt of dividends on their Meditech stock. This was obviously all information previously available to Plaintiffs even outside the context of this suit. The remainder of the Manzolillo Affidavit simply presents data on Meditech's earnings per share, dividends per share, the year-end share values determined by the Trustee, and the values that Plaintiffs allege should have been determined. All of this information, apart from Plaintiffs' own allegations, is available in Meditech's SEC filings and/or was provided to Meditech employees each year in packages distributed to employees. Defendants produced to Plaintiffs during discovery copies of SEC filings containing all of the information presented in the Manzolillo Affidavit, as well as examples of the packages provided to employees each year containing this information. *See* Sugrue Aff., ¶¶ 4, 5.

Plaintiffs likewise cannot claim to be prejudiced by the Pappalardo Affidavit because it too consists entirely of information previously provided to Plaintiffs during discovery. Most of the Pappalardo Affidavit provides a summary description of various aspects of the Plan; the Plan, of course, has been produced to Plaintiffs during discovery, and is cited repeatedly in Plaintiffs' Memorandum in Support of their Motion for Class Certification. Paragraph 17 consists of an explanation why many current and former Plan participants, whom Plaintiffs purport to represent, would be prejudiced if Plaintiffs had their way and the Trust ran out of cash; this is directly relevant to the class certification question currently pending before the Court, and is consistent with Plaintiff Mr. Hubert's own testimony that Plan participants would not want the Trust to run out of cash. *See* Defendants' Opposition to Plaintiffs' Motion for Class Certification at 20 (quoting Mr. Hubert's deposition testimony) (Docket No. 70). Finally, a few paragraphs of the Affidavit refer to some factors taken into account by Mr. Pappalardo in determining a fair

value for Meditech stock; all of this information can be found in the thousands of pages of valuation-related materials provided to Plaintiffs by Defendants during discovery, as described above. *See supra* at 5-6.

Defendants, on the other hand, would be severely prejudiced if this Court were to strike the Pappalardo and Manzolillo Affidavits. Rather than bombard the Court with hundreds of pages of primary materials evidencing stock transactions, the payment of dividends, Trust distributions, the Company's earnings per share and dividends paid per share, and year-end share valuations, etc., all information relied upon by Defendants in their Opposition to Plaintiffs' Motion for Class Certification, Defendants instead summarized this information in Ms. Manzolillo's sworn affidavit, based on her personal knowledge and review of Company files. Likewise, Mr. Pappalardo's explanation of why absent class members would be prejudiced should the Trust run out of cash (as Plaintiffs seek), and how the Company determines the number of shares to contribute to the Trust (as relevant to conflicts between Plaintiffs and absent class members who received Trust distributions in different years than Plaintiffs did), is directly relied upon by Defendants in presenting their arguments in opposition to class certification.

## CONCLUSION

Plaintiffs' motion to strike blatantly misrepresents what has occurred during discovery in this action, as well as the content of the Pappalardo and Manzolillo Affidavits. There is no basis for Plaintiffs' Motion to Strike, and the prejudice to Defendants from granting the motion far outweighs any supposed prejudice to Plaintiffs from denying it. Defendants therefore respectfully pray that Plaintiffs' Motion to Strike be denied, and request the Court provide Defendants with such other relief with respect to Plaintiffs' motion as the Court deems appropriate.

                              Respectfully submitted,

                              MEDICAL INFORMATION TECHNOLOGY,
                              INC. PROFIT SHARING PLAN, MEDICAL
                              INFORMATION TECHNOLOGY, INC. and A.
                              NEIL PAPPALARDO.

                              By their attorneys,

                              /s/ Stephen D. Poss, P.C.
                              Stephen D. Poss, P.C. (BBO # 551760)
                              Kevin P. Martin (BBO # 655222)
                              Michael P. Sugrue (BBO #655727)
                              GOODWIN PROCTER LLP
                              Exchange Place
                              Boston, Massachusetts 02109-2881
Dated: September 29, 2006     (617) 570-1000


## CERTIFICATE OF SERVICE

I, Stephen D. Poss, P.C., hereby certify that I caused a true copy of the above document to be served upon the counsel of record for each other party via this Court's ECF System on September 29, 2006.

                              /s/  Stephen D. Poss, P.C.
                              Stephen D. Poss, P.C.