GOODWIN | PROCTER

Stephen D. Poss
617-570-1886
sposs@goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

January 12, 2007

The Honorable Rya W. Zobel
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Suite 6110
Boston, MA 02210

**Re:**   **Michael P. Hubert v. Medical Information Technology Profit Sharing Plan, et al.,
        USDC, D. Mass., Civil Action No. 05-CV-10269 RWZ**

Dear Judge Zobel:

This firm represents the Defendants in the above-captioned matter. As the court is aware, we have opposed the Plaintiffs' pending motion for class certification. I am writing to send you a recent Memorandum and Order, issued on December 6, 2006, by Judge Young in *Evans v. Akers*, Civ. A. No. 04-11380-WGY, that directly addresses an issue discussed by yourself and counsel at the hearing on the class certification motion and that may assist you in the disposition of that motion. A copy of the *Evans* opinion is appended hereto as Exhibit A. This supplemental authority provides additional support for the Defendants' argument that the Plaintiffs' ERISA breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3) should not be certified as a class action due to the serious conflicts of interest between the named plaintiffs and the absent class members that Plaintiffs purport to represent.

The three Plaintiffs in our case are former participants in a profit sharing plan sponsored by defendant Medical Information Technology, Inc. ("Meditech"), a private company. Since the 1970s, Meditech has been contributing cash and shares of its non-publicly traded stock to the profit sharing plan. Each Plaintiff received a lump-sum distribution of his vested benefits from the Meditech plan upon the termination of his employment with the company. Plaintiffs now allege that the plan should have employed an arbitrary, highly-volatile different share valuation methodology that, in the years Plaintiffs left the company, would have assigned a higher value to the Meditech shares held by the plan, and consequently resulted in a greater distribution of benefits to Plaintiffs. Among other arguments in opposition to class certification, Defendants have explained that because the profit sharing plan assets are limited to the cash and illiquid company stock voluntarily contributed to it by Meditech, any windfall paid to the named Plaintiffs would deplete the assets remaining in the plan, creating a conflict between the named Plaintiffs and many absent class members, such as those who left the plan and received distributions subsequent to Plaintiffs (two of whom left in 1998, and one whom was fired in 2004). *See* Defendants' Opposition to Plaintiffs' Motion for Class Certification at 16-22 (Docket No. 70) ("Defendants' Opposition").

GOODWIN PROCTER

Judge Rya W. Zobel
January 12, 2007
Page 2

Your Honor, at the October 17, 2006, argument on the motion for class certification, pursued this issue, asking Plaintiffs' counsel, "assume for the moment that [Defendants] can prove that the plan suffers and subsequent participants suffer. Is that an issue I can take into account?" Oral Argument Transcript at 6.[1]  Plaintiffs' counsel denied that your Honor could, responding, in pertinent part, "if, for example, we were entitled to a judgment of $20 million, call it that for the moment, if you so find, we get $20 million from the defendants. I don't know where it comes from. Mr. Pappalardo, the plan, the company, they're all on the hook at the moment." *Id.* at 7. He argued, that is, that no conflict exists because, if the assets in the profit sharing plan are insufficient to pay the Plaintiffs the amounts they claim to be owed without prejudicing absent class members, then the company (and its Chairman and CEO, Mr. Pappalardo) could be required to make additional contributions to the plan. We explained to the Court that Plaintiffs' counsel was wrong, because Plaintiffs as a matter of law were limited to recovery from the Plan only, none of the other defendants could be forced to contribute to any award in this case, and the Company was not obligated to contribute any additional money or stock to the Plan. *See id.* at 23-24; *see also* Defendants' Opposition at 19-20 (citing *Brandon v. Aetna Servs., Inc.*, 156 F.Supp.2d 167, 171 (D. Conn. 2000) ("Section 1132(a)(1)(B) only permits a participant to recover benefits directly from the Plan as an entity")).

Judge Young's December decision in *Evans* fully supports our position, and negates Plaintiffs' argument that the conflict between the named Plaintiffs and the absent class members can be ignored because money will somehow appear from somewhere else. In *Evans*, Judge Young held that former plan participants lack standing to bring a claim for additional contributions to an ERISA plan. Plaintiffs in *Evans*, former plan participants like the plaintiffs in our case, alleged that the plan fiduciary's poor investment decisions had "directly affected the total of benefits the Plaintiffs received upon leaving the Plan," and that they were "entitled to 'higher benefits' than those they already received." Memorandum and Order at 9. Judge Young, consistent with decisions from numerous district courts in other jurisdictions, concluded that the plaintiffs lacked standing to bring such a claim for "damages" – that is, a claim that "the amount in the entire plan was too small" because of defendants' actions, and that "there should have been more benefits to go around." *Id.* at 10, quoting *Hargrave v. TXU Corp.*, 392 F.Supp.2d 785, 788-90 (N.D. Tex. 2005).

Under *Evans*, Plaintiffs' counsel cannot argue that, if the amount of cash and illiquid Meditech stock previously contributed to the Meditech plan is "too small" to support the distributions of benefits that Plaintiffs claim to have been due, then the extra amount can be obtained from Meditech or Mr. Pappalardo.  That would be a claim for "damages" which, under *Evans*, the named Plaintiffs lack standing to bring.  And because the named Plaintiffs cannot bring such a

---

[1]    A copy of the cited pages of the Oral Argument Transcript is appended hereto as Exhibit B.

GOODWIN PROCTER

Judge Rya W. Zobel
January 12, 2007
Page 3

claim, they cannot use the possibility of additional contributions as a *deux et machina* to escape the class conflicts created by their arbitrary and volatile share valuation methodology.

Respectfully yours,

/s/ Stephen D. Poss

Stephen D. Poss

Enclosure

cc:    Michael A. Collora, Esq.
       Kevin P. Martin, Esq.

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS and TIMOTHY WHIPPS, on behalf of themselves and a class of all others similarly situated<br><br>    Plaintiffs,<br><br>       v.<br><br>JOHN F. AKERS, RONALD C. CAMBRE MARYE ANNE FOX, JOHN J. MURPHY, PAUL J. NORRIS, THOMAS A. VANDERSLICE, H. FURLONG BALDWIN, INVESTMENTS AND BENEFITS COMMITTEE, ADMINISTRATIVE COMMITTEE, BRENDA GOTTLIEB, W. BRIAN MCGOWAN, MICHAEL PIERGROSSI, ROBERT M. TAROLA, EILEEN WALSH, DAVID NAKASHIGE, ELYSE NAPOLI, MARTIN HUNTER, REN LAPADARIO, and UNKNOWN FIDUCIARY DEFENDANTS 1-100<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION<br>)   NO. 04-11380-WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

YOUNG, J.                                    December 6, 2006

## I.   INTRODUCTION

The Court here considers the propriety of certifying a class consisting of all persons who were participants or beneficiaries of the W.R. Grace & Co. Savings and Investment Plan ("the Plan") at any time between July 1, 1999 and April 19, 2004.

## II.   BACKGROUND

### A.   Factual Allegations

W.R. Grace & Co. ("Grace") is a global supplier of catalysts and silica products, speciality construction chemicals and building materials, and container products. Am. Compl. [Doc. No. 53] ¶ 95. Grace has over 6,000 employees, operations in nearly 40 countries, and annual sales of approximately $2,000,000,000. Id.

Grace offered eligible employees the opportunity to participate in a Plan that permitted employees to save a certain percentage of their pay through regular payroll deductions and invest those savings in company stock through the Grace Stock Fund. Id. ¶¶ 42, 50. Matching company contributions were deposited in the employee stock plan and invested in Grace stock. Id. ¶ 56.

After January 1, 2001, however, employees were no longer permitted to invest matching company contributions in Grace stock but could otherwise direct investment of those funds. Id. ¶¶ 58, 61. These changes were made in light of "market uncertainty surrounding companies, like Grace, that have significant asbestos liability." Id. ¶ 62. Employees were still permitted to invest their own savings in Grace stock even as the stock price declined precipitously over the next two years. Id. ¶¶ 63, 65.

Finally, on April 17, 2003, the Grace Stock Fund ceased accepting contributions or allocations. Id. ¶ 67. From that point on, contributions were redirected to the Fixed Income Fund. Id. Nonetheless, past contributions were not redirected to other

2

funds unless the participant expressly decided to change his investment options.  See id. ¶ 69.

On February 27, 2004, Plan fiduciaries informed participants that investment in Grace Stock was "clearly imprudent."  Id. ¶ 70.  State Street Bank & Trust Company ("State Street"), the fund's investment manager, commenced a program to sell Grace stock.  Id.  State Street sold all Grace stock by April 16, 2004.  Id. ¶ 74.  On April 19, 2004, the Grace Stock Fund ceased to exist.  Id.

### B.    The Putative Class Action

Keri Evans and Timothy Whipps (the "Plaintiffs") are former employees of Grace who were participants of the Plan during the proposed class period.  Id. ¶ 3.  They allege that the defendants, as fiduciaries of the Plan, breached their duties to the Plan and Plan participants and beneficiaries in violation of ERISA, particularly with regard to the Plan's various and heavy holdings of Grace stock.  Id. ¶ 4.

Specifically, the Plaintiffs allege that the defendants, each having certain responsibilities regarding, or authority over, the management of the investment of Plan assets, breached their fiduciary duties by (1) continuing to offer Grace common stock as a Plan investment option for participant contributions; (2) utilizing Grace securities for employer contributions to the Plan; and (3) maintaining the Plan's pre-existing heavy

3

investment in Grace securities when the stock was no longer a prudent investment for the Plan.  Id. ¶ 5.

The Plaintiffs also allege that certain defendants charged with the selection and monitoring of other Plan fiduciaries failed to (1) provide the "monitored" fiduciaries with material information regarding the imprudence of investing Plan assets in Grace securities; and (2) remove certain such fiduciaries whose deficient performance damaged the Plan and its participants.  Id. ¶ 6.

The Plaintiffs further allege that certain defendants failed to communicate to the Plan participants complete and accurate information regarding the Plan's investment in Grace securities sufficient to advise participants of the true risks of investing their retirement savings in Grace stock.  Id. ¶ 7.

The Plaintiffs allege that the defendants breached their duty of loyalty to the Plan and its participants by failing to avoid or ameliorate inherent conflicts of interests which crippled their ability to function as independent, single-minded fiduciaries with only the Plan's and its participants' best interests in mind.  Id. ¶ 8.

Finally, the Plaintiffs allege that even if certain fiduciaries were not involved in the breach of fiduciary duty, these fiduciaries knew of and did nothing to stop, or even abate, the particular breach and were therefore liable for breach of their co-fiduciary duties in violation of 29 U.S.C. § 1105.  Id.

4

This action was brought on behalf of the Plan and seeks to recover alleged losses to the Plan under 29 U.S.C. §§ 1109, 1132. Id. ¶ 10.

## III. DISCUSSION

The Plaintiffs face a barrier to their standing to bring the instant action.  Although ERISA's remedial purposes are to be interpreted broadly,[1] only participants, beneficiaries, fiduciaries, and the Secretary of Labor may bring a civil action. See 29 U.S.C. § 1132(a).  In the present case, "[t]he requirement that a claimant be a 'participant' is a subject matter jurisdiction requirement as well as a standing issue under

---

[1] As the First Circuit explained in Vartanian v. Monsanto Co., 14 F.3d 697, 702 (1st Cir. 1994):
> The legislative history of ERISA indicates that Congress intended the federal courts to construe the Act's jurisdictional requirements broadly in order to facilitate enforcement of its remedial provisions:
>> The enforcement provisions have been designed specifically to provide both the Secretary [of Labor] and participants and beneficiaries with broad remedies for redressing or preventing violations of the [Act] . . . . The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants.  S.Rep. No. 127, 93d Cong., 2d Sess., 3 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4871 (emphasis added).

ERISA." <u>Katzoff</u> v. <u>Eastern Wire Products Co.</u>, 808 F.Supp. 96, 98 (D.R.I. 1992) (citations omitted).

ERISA defines a participant as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from [the] employee benefit plan." 29 U.S.C. § 1002(7). In <u>Firestone Tire & Rubber Co.</u> v. <u>Bruch</u>, 489 U.S. 101, 117-18 (1989), the Supreme Court interpreted the term "participant." Former employees, it held, may be considered participants if they have either "a reasonable expectation of returning to covered employment" or "a colorable claim to vested benefits." <u>Id.</u>

The Plaintiffs are no longer employees and they do not plan to return to work for Grace. <u>See</u> Grace Defs.' Opp'n to Mot. to Class Cert. [Doc. No. 99], Ex. A ¶ 5. Nevertheless, the Plaintiffs argue they ought not be denied standing in light of the First Circuit's "expansive" approach to standing and because they have a "colorable claim to benefits." Repl. Mem. in Further Support of Evans Pls.' Mot. for Class Cert. at 3.

The First Circuit's so-called "expansive" approach to standing was articulated in <u>Vartanian</u>. In that case, the court noted that <u>Firestone</u> was not a standing case, permitting continued broad interpretation of the jurisdictional parameters of ERISA in accordance with its remedial nature. 14 F.3d at 701-702. The court adopted a "zone of interest" analysis. <u>Id.</u> at 702 (citing <u>Astor</u> v. <u>Int'l Bus. Machines Corp.</u>, 7 F.3d 533, 538-

6

39 (6th Cir. 1993)).  As a consequence of that analysis, the
First Circuit held that the plaintiff had standing to sue even
though he was no longer an employee and had received the
distribution of benefits.  Id. at 702.  The First Circuit
explained that employers ought not be able to defeat standing
through their own wrongful acts.  Id. at 703.

The Plaintiffs in this case ask the Court to read Vartanian
broadly.  They argue that the breaches of fiduciary duty occurred
while they were plan participants.  See Corrected Repl. Mem. in
Further Supp. of Evans Pls.' Mot. for Class Cert. [Doc. No. 107]
at 8.  Thus, in their view, denying them standing would allow the
defendants to escape responsibility for the losses caused.

The defendants, on the other hand, read Vartanian narrowly.
They argue it creates a unique exception to the Firestone
definition of participant exclusively in cases where the employee
would still be part of the plan (and thus entitled to higher
benefit levels) but for the employer's malfeasance.  Grace Defs.'
Opp'n to Mot. for Class Cert. at 8-9.

The First Circuit's subsequent analysis of this issue is
instructive.  In Crawford v. Lamantia, 34 F.3d 28 (1st Cir.
1994), decided only seven months after Vartanian, the First
Circuit "cut back sharply on Vartanian's broad approach to ERISA
standing by emphasizing literal compliance with the Firestone
definition of participant in a standing context."  Nahigian v.
Leonard, 233 F. Supp. 2d 151, 166 (D. Mass. 2002).  In Crawford,

7

a former employee, after receiving his lump sum distribution of benefits, alleged breaches of fiduciary duties of its employer. 34 F.3d at 30-31. The First Circuit held that the plaintiff lacked standing because he had "failed to show that defendants' alleged breach of fiduciary duty had a direct and inevitable effect on [the employee's] benefits." Id. at 33.

With one exception,[2] district courts in the First Circuit have followed Crawford in holding that the Firestone exception applies only when the former employee would still be a participant but for the employer's alleged malfeasance. See, e.g., Lalonde v. Textron, Inc., 418 F. Supp. 2d 16, 19-20 (D.R.I. 2006). The Court follows this approach.

In this case, unlike in Vartanian, there is no evidence suggesting that the Plaintiffs' cessation of employment was casually connected to the defendant's alleged misconduct. Stripped of the Vartanian's "but for" exception, the Plaintiffs are subject to the general rule that former employees, who have received the full benefits to which plan documents entitled them, cannot be participants of a plan. See Lalonde, 418 F. Supp. 2d at 20.

---

[2] See Sotiropoulos v. Travelers Indem. Co. of Rhode Island, 971 F. Supp. 52, 54-55 (D. Mass. 1997) (Ponsor, J.); see also Gray v. Briggs, 1998 WL 386177, No. 97 Civ. 6252(DLC), at *5-6 (S.D.N.Y. July 7, 1998); contra Eggert v. Merrimac Paper Co., Inc. Leveraged Employee Stock Ownership Plan and Trust, 311 F.Supp.2d 245, 254 (D.Mass. 2004) (Collings, M.J.).

Consequently, the Plaintiffs have standing only if they can assert a colorable claim to vested benefits. Since allegedly all plan assets suffered losses due to the defendants' imprudent investment in Grace stock and those losses directly affected the total of benefits the Plaintiffs received upon leaving the Plan, the Plaintiffs essentially claim they are entitled to "higher benefits" than those they already received.

The defendants argue that the Plaintiffs have asserted a claim not for benefits but for damages to the Plan. Grace Defs.' Opp'n to Mot. for Class Cert. at 6-7. To this end, the defendants cite a number of cases holding that former plan participants who have taken their lump sum distribution lack standing to sue for breaches of fiduciary duties. In Re RCN Litigation, 2006 WL 753149, No. 04-5068 (SRC), at *13-*14 (D.N.J. Mar. 21, 2006); Lalonde, 418 F. Supp. 2d at 20-21; Hargrave v. TXU Corp., 392 F.Supp.2d 785, 788-90 (N.D. Tex. 2005); see also Graden v. Conexant Sys., Inc., 2006 WL 1098233, No. Civ. 05-0695, at *2-*5 (D.N.J. Mar. 31, 2006). The Court finds these cases persuasive.

The distinction between benefits and damages is not easy to articulate. In Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345, 350 (5th Cir. 1989), the Fifth Circuit tried to explain the difference as follows:

> Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. Payment of the sum sought by such a plaintiff will not

9

> increase payments due him.  On the other hand, a
> plaintiff who seeks the recovery for the trust of an
> unascertainable amount, with no demonstration that the
> recovery will directly effect payment to him, would
> state a claim for damages, not benefits.

In <u>Hargrave</u>, the district court relied on the <u>Sommers</u> analysis to

conclude that the breach of fiduciary duty claims, virtually

identical to those asserted here, constituted damages claims.  In

reaching its holding, the court conducted the following analysis:

> Plaintiffs' claims in this case are readily
> distinguishable from the claims made in <u>Sommers</u>.  In
> <u>Sommers</u>, the plaintiffs argued that the full market
> value of the plan assets was greater than the amount
> they received when the assets were distributed.
> <u>Sommers</u>, 883 F.2d at 350.  Stated another way, the
> total value of the plan assets was a certain amount
> that was calculable, and the plaintiffs argued that
> they did not receive that full calculable value because
> the defendants held back some of the proceeds for
> themselves.  The <u>Sommers</u> plaintiffs sued to recover the
> rest of the benefits that were wrongfully withheld.
> See [i]d.  Thus, the Fifth Circuit concluded that the
> plaintiffs' claims were in fact for vested benefits
> rather than for damages.  <u>Id.</u>
> The Plaintiffs in this case, by way of contrast,
> do not allege that the Defendants[] held back a portion
> of the benefits of the plan.  Rather, they argue that
> the amount in the entire plan was too small.
> Specifically, Plaintiffs allege that Defendants'
> investment in TXU stock resulted in an overall
> diminution of plan assets, which were then distributed
> to the Plaintiffs.  The allegation is not that benefits
> were withheld, but that there should have been more
> benefits to go around.  This argument states a claim
> for "a sum that possibly could have been earned" if
> Defendants had made prudent investment decisions with
> respect to plan assets.  See <u>Yancy</u> [v. <u>American
> Petrofina, Inc.</u>, 768 F.2d 707, 709 (5th Cir. 1985)].
> The Plaintiffs have already received all the benefits
> that accrued under their Thrift Plan accounts.  They
> are now seeking additional damages that <u>might have</u>
> accrued but for Defendants' alleged misconduct.  <u>See</u>
> [i]d.  These additional damages are speculative and
> cannot be considered as vested under ERISA.  <u>See</u> [i]d.

> Unlike <u>Sommers</u>, the Plaintiffs' argument does not
> resemble an allegation that benefits were simply
> miscalculated and cannot be construed as a claim for
> vested benefits.  On the contrary, Plaintiffs are
> demanding that Defendants make good to the Thrift Plan
> for the <u>losses sustained</u> as a result of the investments
> in TXU stock.  This argument most closely resembles a
> claim for damages to the plan.

392 F. Supp. 2d at 789-90 (emphases in original).  In this way,

the distinction between benefits and damages is a real one, and

"concepts must not be conflated in order to expand participant

standing."  <u>Lalonde</u>, 418 F. Supp. 2d at 21.

In the instant case, the Plaintiffs argue that if the

fiduciaries had carried out their duties carefully and

diligently, then the investment in Grace stock would either have

been reduced or limited, and more prudent investments made.  This

is hardly a claim for vested benefits.  Rather, the Plaintiffs

seek the "lost return" on the funds that would have resulted from

a more prudent and loyal investment of plan assets.  These claims

are best characterized as claims for damages, and speculative

claims at that.

The nature of the defined contribution plan at issue further

supports the Court's conclusion.  In these types of investment

plans, participants can direct their savings to one or more funds

available to them.  Thus, the Plaintiffs in this case could have

avoided their losses merely by moving their savings to other

funds.  Also, they were not obligated to take their lump sum

11

distributions when they did.  They could have taken their benefits before or after the proposed class period.

True, this matter is not without doubt.  Some courts have upheld standing on the rationale that denying former employees the opportunity to bring their claims would permit employers to evade responsibility simply by paying such employees their vested benefits.  See, e.g., Rankin v. Rots, 220 F.R.D. 511, 519-20 (E.D. Mich. 2004).  This reasoning, however, renders obsolete the term "participant" as defined by ERISA and interpreted by the Supreme Court in Firestone.  To allow the Plaintiffs to bring a suit for a speculative amount that might have been earned had these fiduciaries acted differently would be to ignore the fact that ERISA allows only former participants who have either a "reasonable expectation of returning to covered employment" or "a colorable claim to vested benefits" to bring suit.  Firestone, 489 U.S. at 118.  The Plaintiffs lack standing because they do not fall within either of these two categories of former participants permitted to bring suit.

**IV.  Conclusion**

Since the Plaintiffs lack standing, this Court lacks subject matter jurisdiction.  Katzoff, 808 F.Supp. at 98.  Since the Plaintiffs lack standing, they may not seek relief on the behalf of the class.  O'Shea v. Littleton, 414 U.S. 488, 494 (1974); Britt v. McKenney, 529 F.2d 44, 45 (1st Cir. 1976), cert. denied,

429 U.S. 854.  Accordingly, the Motion to Certify Class [Docket No. 89] is DENIED.  This case must be, and hereby is, DISMISSED.

SO ORDERED.

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE

13

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

MICHAEL P. HUBERT, WILLIAM            )
TRAINOR, and DAVID HINCHLIFFE,        )
Individually and on Behalf of All     )
Persons Similarly Situated,           )
      Plaintiffs,                   )
                                      )
vs.                                   )
                                      ) Civil Action No.
                                      ) 05-10269-RWZ
MEDICAL INFORMATION TECHNOLOGY        )
PROFIT SHARING PLAN, MEDICAL          )
INFORMATION TECHNOLOGY, INC., and A.  )
NEIL PAPPALARDO,                      )
      Defendants.                   )
                                      )

**CLASS CERTIFICATION HEARING**

BEFORE THE HONORABLE RYA W. ZOBEL
UNITED STATES DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
October 17, 2006
2:09 p.m.

\* \* \* \* \*

CATHERINE A. HANDEL, RPR-CM
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5205
Boston, MA 02210
(617) 261-0555

```
 1

 2    APPEARANCES:

 3

 4    For the Plaintiff:

 5    DWYER & COLLORA, LLP
      (by Michael A. Collora, Esq.,
 6    and Jennifer M. Ryan, Esq.)
      600 Atlantic Avenue
 7    Boston, MA 02210-2211

 8

 9

10

11    For the Defendant:

12    GOODWIN PROCTER LLP
      (by Stephen D. Poss, Esq.,
13    Kevin P. Martin, Esq., and
      Michael P. Sugrue, Esq.)
14    Exchange Place
      Boston, MA 02109
15

16

17

18

19

20

21

22

23

24

25
```

1  that kind of thing by the defendants.

2          The Court said with respect to the argument

3  that -- the defendants claim that if plaintiff, who is

4  among a retired prospective class, succeeds in this

5  case, the pension plan as a whole would suffer

6  financially, possibly resulting in a lack of increase or

7  even decrease in the accrual rate to some members of the

8  prospective class.  Thus, according to defendants,

9  because the additional liability imposed upon the plan

10  as a result of reformation will cause others to lose

11  money, not all class members will derive a benefit.

12          This argument fails.  Defendants cannot

13  give any concrete evidence such a reduction in future

14  benefits will occur or otherwise demonstrate anything

15  short of possible inferences.  That's one.  This case --

16          THE COURT:  But I'm not leaving that out.

17  I'm assuming -- you know, maybe they prove it, maybe

18  they don't.  But assume for the moment that they can

19  prove that the plan suffers and subsequent participants

20  suffer.  Is that an issue I can take into account?

21          MR. COLLORA:  You cannot, I think.  First,

22  of course, I don't agree with that argument.  We don't

23  say that in the complaint.  We don't even agree with

24  what they postulate the complaint says.

25          If the Court reads the complaint, we

1    suggest under certain methods of comparative valuation,

2    the values in previous years were undervalued.  That

3    would get us past Rule 11 and a motion to dismiss.  That

4    may not be the method of valuation we choose for a

5    trial.

6              Secondly, this is a contribution plan where

7    you get your percentage of the assets that exist at the

8    time you leave the plan.  So, if, for example, we were

9    entitled to a judgment of $20 million, call it that for

10   the moment, if you so find, we get $20 million from the

11   defendants.  I don't know where it will come from.

12   Mr. Pappalardo, the plan, the company, they're all on

13   the hook at the moment.

14              Let's assume it comes from the plan.  The

15   plan now has to pay out $20 million.  It's liable.  Its

16   stock, however, has increased in value.  You have so

17   found.  So, it now has substantial assets.  The plan

18   provides --

19              THE COURT:  I have found it?

20              MR. COLLORA:  Well, you would have made

21   such a finding in order for me to get a judgment.

22              THE COURT:  Oh.

23              MR. COLLORA:  So, now the plan is worth

24   considerably more, but it's now in stock.  The plan has

25   an escape clause.  It's in evidence before you.  If we

1    up, but certainly until recently.  We checked and it was

2    up.

3                   It is a fantasy to say that one can

4    magically create lead -- I'm sorry -- gold from lead in

5    this case.  It's alchemy.  And the fact --

6                   THE COURT:  They've already done it.

7                   MR. POSS:  And the fact is, your Honor,

8    that we have these three people, each of whom is

9    antagonistic to other members of their class.  They

10   say -- you know, the complaint alleges specific prices,

11   specific values for specific years, your Honor, and if

12   you look at those, the stock goes up and down, and some

13   people in some years would have lost money.  In other

14   words, employees who purchased stock who were members of

15   this class, who just didn't happen to be in the years

16   selected for high valuation under plaintiffs' theory by

17   the named plaintiffs, those people would have lost money

18   on this stock.

19                   Moreover, Mr. Collora is absolutely dead

20   wrong as a matter of law when he says the money is going

21   to come from somewhere, maybe the company, maybe

22   Mr. Pappalardo.

23                   The law is very clear, your Honor.  In this

24   case -- in the only claim that survives in this case,

25   the participants may only recover benefits directly from

1    the plan as an entity.  There is so much in the plan.

2    There's so much cash and there's so much stock, and once

3    it's gone, there is no ability to access the funds of

4    Mr. Pappalardo or the company.  Your Honor dismissed

5    their claim for breach of fiduciary duty.  The

6    plaintiffs apparently forgot that in their reply brief

7    when they say, We've got all these fiduciary duty

8    claims.  They don't.  They're gone.

9              So, what happens here is that, number one,

10   Mr. Collora -- I'm sorry -- Mr. Hubert, who knew about

11   this -- who knew the stock was undervalued seven years

12   before he brought this case.  Mr. Trainor, who knew the

13   stock was undervalued, he testified under oath, nine

14   years before he brought this case.  Mr. Hinchliffe, who

15   testified he knew the stock was undervalued 10 to 15

16   years before he brought this case.

17             And, your Honor, every single one of the

18   named plaintiffs testified under oath that they never

19   asked, never asked, never once went to the company --

20   they worked there for 20 years -- and said, "Could you

21   explain to me how the stock was valued."  They testified

22   that there were annual meetings for the employees, at

23   which they could have learned that, and they decided not

24   to attend.  So, they sat on their rights.

25             In the meantime, your Honor, the board