UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL P. HUBERT, WILLIAM
TRAINOR, and DAVID HINCHLIFFE,
Individually And On Behalf Of All Persons
Similarly Situated,

        Plaintiffs,

        v.

MEDICAL INFORMATION TECHNOLOGY
PROFIT SHARING PLAN, MEDICAL
INFORMATION TECHNOLOGY, INC., and
A. NEIL PAPPALARDO,

        Defendants.

Civil Action No. 05-10269RWZ

**ORAL ARGUMENT REQUESTED**

<u>DEFENDANTS' OPPOSITION TO
PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION</u>

Stephen D. Poss, P.C. (BBO # 551760)
Kevin P. Martin (BBO # 655222)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
(617) 570-1000

Dated: April 8, 2008

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................4

    I.    FACTUAL BACKGROUND ..................................................................................4

    II.    PROCEDURAL BACKGROUND ..........................................................................4

ARGUMENT ...........................................................................................................................6

    I.    THE AMENDED MOTION IS UNTIMELY AND PREJUDICES
        DEFENDANTS ........................................................................................................6

    II.    THE AMENDED MOTION DOES NOT AVOID THE INTRA-CLASS
        CONFLICTS PREVIOUSLY IDENTIFIED BY THIS COURT .........................11

    III.    PLAINTIFFS AND THEIR COUNSEL ARE NOT ADEQUATE
        REPRESENTATIVES OF THE CLASS ..............................................................14

        A.    Trainor Is Inadequate Because He Knows Almost Nothing About
                the Litigation or his Duties as a Named Plaintiff ......................................14

        B.    Hinchliffe is Inadequate Because He Admittedly Cares Nothing
                About Absent Class Members ...................................................................16

        C.    The Adequacy of Plaintiffs and Their Counsel is Questionable
                Based on Their Failure to Vigorously Pursue Plaintiffs' Claims ..............17

CONCLUSION .......................................................................................................................20

## TABLE OF AUTHORITIES

CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). .........................................6, 11, 12

*Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541 (1949) ....................................14

*General Tel Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)....................................6

*In re Bank of Boston Corp. Securities Litigation*, 762 F.Supp. 1525 (D. Mass. 1991)........................................... ....................................................15

*In re Biogen Securities Litig.*, 179 F.R.D. 25 (D. Mass. 1997) ........................................5

*In re Commonwealth Oil/Tesoro Petroleum Securities Litig.*, 484 F.Supp. 253 (W.D. Tex. 1979) ..................................... ....................................................14

*In re New Motor Vehicles Canadian Antitrust  Litigation*, __ F.3d __, 2008 WL 820922 (1st Cir. Mar. 28, 2008) ........ ....................................7, 8, 18, 19

*Jones v. Hartford Ins. Co.*, 243 F.R.D. 694 (N.D. Fla. 2006)..........................................6, 7

*McDaniel v. County of Schenectady*, 2005 WL 1745566 (N.D.N.Y. 2005)...............14, 15

*Scott v. New York City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, (S.D.N.Y. 2004) ........................... ....................................................14

*Stock v. Integrated Health Plan, Inc*., 2007 WL 2304055 (N.D. Ill. 2007).....................18

*Swack v. Credit Suisse First Boston*, 230 F.R.D. 250 (D. Mass. 2005) ...........................6

*Weissman v. Darneille*, 78 F.R.D. 669 (S.D.N.Y. 1978)..................................................16

STATUTES AND RULES

Federal Rule of Civil Procedure 23(c)(1)(A)............... ..................................................1, 6

OTHER

Memorandum of Decision dated March 20, 2006 (Docket No. 38) ...................................8

Memorandum of Class Certification Decision dated March 20, 2007 (Docket No. 92) ............................................... ........................................... *passim*

Scheduling Order dated May 15, 2006 (Docket No. 42)....................................................7

## INTRODUCTION

Plaintiffs' new Amended Motion for Class Certification ("Amended Motion"), filed on March 25, 2008, is improper under the Rules of Civil Procedure, untimely under the scheduling order in this case, wholly without merit, prejudicial to Defendants, was seemingly filed solely to drive up expenses for Defendants, and should be denied for at least the following reasons.

First, the Amended Motion is improper under the Rules and untimely. The Rules of Civil Procedure state that class certification should be decided "at an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Consistent with that Rule, this Court set a deadline for the filing of class certification motions of August 15, 2006, more than 18 months ago. Plaintiffs moved for certification of a class on that date ("First Class Certification Motion"), and that motion was denied on March 20, 2007, more than one year ago ("Class Certification Decision") (Docket No. 92) (a copy of the Class Certification Decision is appended to the Affidavit of Kevin P. Martin ("Martin Aff.") as Exhibit 5). Plaintiffs' Motion for Reconsideration was denied over ten months ago, the First Circuit denied Plaintiffs' petition for interlocutory appeal over eight months ago, and fact discovery has been closed for over three months. Nothing prevented Plaintiffs from bringing the Amended Motion a year ago. For Plaintiffs to bring it now – after discovery proceeded solely with respect to the individual claims of the three plaintiffs, with no motive or opportunity for Defendants to take discovery with respect to class issues or other members of the newly proffered Amended Class – is wholly improper.

Second, the Amended Motion does not come close to addressing the key problem with Plaintiffs' first proposed class that led this Court to deny the First Class Certification Motion. Plaintiffs assert that limiting a class to individuals who departed the Medical Information Technology, Inc. Profit Sharing Plan (the "Plan") in only one year (1998) eliminates the intra-

class conflicts that this Court discussed in denying class certification. That is not true. As the Court stated, "the only employees guaranteed to have identical interests in choosing a valuation methodology are those *who entered the Plan in the same year and* who later exited the Plan in the same year," and the Court further recognized that "[e]ven this oversimplifies the analysis," because "[t]o the extent two employees entering and exiting in the same years have differing high earning years (and thus larger Plan contributions), they might prefer differing valuation methodologies." Class Certification Decision at 14-15 & n. 9. Plaintiffs ignore this analysis, simplistically asserting that limiting the class to individuals departing the Plan in 1998 somehow solves the conflict issue. Because Plaintiffs have made no showing – nor could they – that members of the proposed class all "entered the Plan in the same year" and had the same "high earning years," the conflict among class members over a preferred valuation method still exists.

Third, the proposed class representatives, David Hinchliffe and William Trainor, do not even remotely meet the criteria for serving as adequate representatives of the class – criteria on which the Plaintiffs bear the burden of proof. The Supreme Court has described class representatives as "fiduciaries," and it is difficult to imagine two worse fiduciaries for the putative class (other than, arguably, the third plaintiff, Michael Hubert). Trainor, who received $929,943 under the Plan and is seeking hundreds of thousands more in this case, was not even aware at his deposition that this was a class action – he repeatedly testified that the "class" consisted of only the three Plaintiffs. He was unaware that he had any responsibilities as a named plaintiff in a class action. He testified that he did "nothing" to prepare for the deposition, and made clear that his role in the case so far has been *de minimis*. Trainor did not know who the Defendants were and was unaware how much money his signed retainer agreement called for

him to pay class counsel.  Trainor repeatedly testified that he was not sure whether key allegations in the Amended Complaint are even true.

Hinchliffe, who received $1,123,639 under the Plan and, like Trainor, asserts a claim for hundreds of thousands more, displayed a similar disregard for the interests of absent class members.  When Hinchliffe was asked about the interests of absent class members at his deposition, he bluntly answered "I'm not concerned, really, with people that left in 2000.  I'm concerned with me."   Given the existence of intra-class conflicts even within the amended class, Hinchliffe's candid disregard for the interests of anyone other than himself must disqualify him from "fiduciary" status.  Hinchliffe also testified under oath that he was not aware of any responsibilities he had as a named Plaintiff to fellow class members.

Fourth, at this point the adequacy of prepared class counsel is open to serious question. In the Class Certification Decision, this Court explained that the "only proper way" to determine whether Plaintiffs are due any additional benefits from the Plan "is to revalue the shares from the beginning of the Plan" in 1973.   Class Certification Decision at 14 (emphasis in original). Plaintiffs and their counsel, however, did not have an expert conduct this analysis.  The only expert report (the "Van Vleet Report") that they disclosed contains a valuation only as to a single date, December 31, 1997.  Indeed, Plaintiffs' counsel did not even disclose an expert supporting the claim of named plaintiff Hubert, who received a distribution from the trust established under the Plan (the "Trust") in 2004.  Perhaps even more troubling, by email dated April 4, 2008, Plaintiffs' counsel informed counsel for Defendants that they were attempting, at this very late date and apparently over Hubert's objection, to drop his claim from this case – despite the fact that Hubert was the only Plaintiff on the original Complaint filed in this Action and despite having represented him in varying capacities at least since 2002.  *See* April 4, 2008 Email

(Martin Aff., Ex. 8). If Plaintiffs and their counsel will not vigorously pursue Plaintiffs' own claims by providing the expert discovery that this Court informed them would be necessary, and are willing to jettison the original named Plaintiff only days before the pretrial conference, it seems inconceivable that they can be trusted to adequately represent absent class members, or overcome conflicts they have with members of the newly proposed Amended class.[1]

## BACKGROUND

### I.    FACTUAL BACKGROUND

The factual background relevant to the Amended Motion has not changed since Plaintiffs filed their First Motion for Class Certification. Accordingly, to the extent necessary for the Court's consideration of the Amended Motion, Defendants direct the Court to the "Background" section of their Opposition to the First Motion to Class Certification (Docket No. 65) ("First Class Certification Opposition") (Martin Aff., Ex. 4).

### II.    PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint in this action in February 2005. The original Complaint listed only Hubert (who was fired by Meditech in 2004) as a plaintiff, but on May 23, 2005, Plaintiffs filed an Amended Complaint adding two individuals who left Meditech and received distributions from the Trust in 1998: Hinchliffe (who was Meditech's Director of Operations for Computer Programming) and Trainor (who was Director of Building and Computer Operations).

Class discovery began in April 2006 following this Court's grant in part of Defendants' motions to dismiss on March 20, 2006 (the "Motion to Dismiss Decision") (Martin Aff., Ex. 6). On August 15, 2006, Plaintiffs moved for certification of a class consisting of all persons who

---

[1]    Plaintiffs' Amended Motion and Memorandum in Support contain numerous misstatements of fact and law. Defendants lack the space to address them all herein, and their silence concerning Plaintiffs' misstatements should not be interpreted as acquiescence.

received a distribution of benefits from the Trust established under the Plan from January 1, 1998 through the present.  Defendants opposed this motion and class certification was denied on March 20, 2007.  Plaintiffs next moved for reconsideration of the Class Certification Decision, and that motion was denied on May 3, 2007 (the "Motion for Reconsideration Decision").  Plaintiffs then petitioned the First Circuit for leave to file an interlocutory appeal of the Class Certification Decision, and that petition was denied on July 12, 2007.  For more than eight months after July 12, Plaintiffs did not seek the certification of any class.

Throughout the summer and fall, discovery continued on the individual claims of the three plaintiffs until discovery closed in December 2007.  On February 19, 2008, in accordance with this Court's most recent scheduling order, Plaintiffs made an expert disclosure to Defendants of the Van Vleet Report.  The Van Vleet Report provides a value for Meditech stock only on December 31, 1997; it does not provide a value for Meditech stock in any earlier period, and neither it nor any other report disclosed by Plaintiffs provided a valuation for December 31, 2003, as relevant to Hubert, who received a distribution from the Trust in 2004.  On April 7, 2008 Defendants disclosed their experts to Plaintiffs.

A pretrial conference has long been scheduled for April 22, 2008.  On April 4, 2008, Plaintiffs' counsel sent counsel for Defendants an email enclosing Plaintiffs' draft of the joint pretrial submission.  The cover email stated, in its last lines and out of the blue:  "We do not yet have MHubert's permission to drop his portion of the claim and it may be an issue at the hearing.  I will further advise you as to that."  April 4, 2008 Email.  This decision to seek to dismiss the original named plaintiff in the case, apparently over his objection, was wholly unexpected and has introduced uncertainty and complications into Defendants' preparation for trial, and certainly caused Defendants to incur potentially wasted expenses in connection with their experts.

**ARGUMENT**

Plaintiffs bear the burden of proving that class certification is appropriate. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *In re Biogen Securities Litig.*, 179 F.R.D. 25, 40 (D. Mass. 1997) (internal quotation marks and citation omitted). Before certifying a class, this Court must conduct a "rigorous analysis" of the prerequisites of Rule 23(a). *See General Tel Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 257 (D. Mass. 2005). In examining questions of predominance and superiority, a court is required to take a "close look" at the difficulties likely to be encountered in the management of a class action. *Amchem*, 521 U.S. at 614-17.

Certification of the class sought by Plaintiffs in the Amended Motion is improper for several reasons. Defendants address some of those reasons in this Opposition, but also direct the Court to the further reasons raised in the First Class Certification Opposition, which the Court explicitly did not need to reach in denying the First Motion for Class Certification, *see* Class Certification Decision at 5 & n. 3, and all of which Defendants stand by and incorporate herein by reference.

## I.    THE AMENDED MOTION IS UNTIMELY AND PREJUDICES DEFENDANTS

The Rules of Civil Procedure explicitly state that class certification should be decided "at an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). This requirement serves important purposes. As explained by the Northern District of Florida:

> A timely motion for class certification is premised on sound practical considerations. Delay by a representative plaintiff impedes the court's consideration of the issue and may prejudice the rights of the class members. Judge Frankel of the Southern District of New York has observed "pertinent statutes of limitation may be running and important interests may be exposed to injury or destruction. There is no limitations problem, of course, if the suit is eventually held properly maintainable as a class action. But that can be known only after, not before, the determination under

> (c)(1). And while the determination is delayed, members of a putative plaintiff class may be led by the very existence of the lawsuit to neglect their rights until after a negative ruling on this question–by which time it may be too late for the filing of independent actions."

*Jones v. Hartford Ins. Co.*, 243 F.R.D. 694, 695 (N.D. Fla. 2006).

In accordance with these sound policies, early in the litigation this Court set a period for class discovery and set a deadline for Plaintiffs to file a motion for class certification: August 15, 2006, more than 18 months ago. *See* Scheduling Order Dated May 15, 2006 (Docket No. 42) (Martin Aff, Ex. 10). On that date, Plaintiffs did indeed file the First Motion for Class Certification, identifying a different class composed of all Plan participants who received a distribution of any portion of their interest in the Trust from January 1, 1998 through the present. *See generally* First Class Certification Motion. The First Class Certification Motion, however, was denied on March 20, 2007. No provision has ever been made in the Court's scheduling orders for additional class certification motions, and Plaintiffs have never asked for one. The Amended Motion, accordingly, is not only untimely under the broad principles of Rule 23(c)(1)(A), it is inconsistent with the specific scheduling order set out by the Court in this case.

There is no justification for Plaintiffs' delay in filing the Amended Motion. While Plaintiffs did seek reconsideration of the Class Certification Decision by motion dated April 2, 2007, that motion was denied on May 3, 2007. And while Plaintiffs also sought leave to file an interlocutory appeal with the First Circuit by petition dated May 15, 2007, that petition was denied on July 12, 2007. If Plaintiffs thought that the certification of a subclass could address the problems that led to the denial of the First Class Certification Motion, they could have sought leave to file a new motion for class certification at any point after March 20 of last year. This is not a case in which "full discovery" has yielded any additional information concerning the motion for class certification. *See In re New Motor Vehicles Canadian Antitrust  Litigation*, __

F.3d __, 2008 WL 820922, * 17 (1st Cir. Mar. 28, 2008) ("*New Motor Vehicles*") (Martin Aff., Ex. 15) (observing that in some cases full discovery may justify decertification of an earlier certified class). Yet, until Plaintiffs filed the Amended Motion on March 25, 2008, they never moved for certification of the subclass now identified.

Now is not only not an "early practicable time" for seeking class certification, now is a highly *impracticable* time. Class discovery in this case closed in August 2006, and merits discovery in December 2007. For the past year, this case has proceeded as an individual action brought only by the three Plaintiffs. To suddenly certify a class at this stage in the litigation, with discovery closed, would greatly prejudice Defendants. Had the proposed class been certified while discovery was still open, Defendants would have sought discovery from each member of the class on issues such as their beliefs about the valuation of Meditech stock in prior years as relevant to the statute of limitations and Defendants' equitable defenses. Defendants would also have sought additional discovery relevant to the proposed new class from each of the three individual plaintiffs. And Defendants would have elicited expert opinion pertaining to the claims of each member of the newly-proposed class. (Defendants' expert reports were served on April 7, 2008). Certification of a new class now would unduly prejudice Defendants in their preparation for summary judgment and trial.

The prejudice that would be felt by Defendants should a class be certified after the close of discovery is not a matter of conjecture. It is easily seen, for example, with respect to Defendants' statute of limitations defense. In the Court's order granting in part Defendants' Motions to Dismiss, the Court ruled that the benefits claim brought in this case was subject to a six-year statute of limitations that would begin to run from the time a plaintiff either knew he had a claim, or through the exercise of "reasonable diligence" could have known of the existence of

the claim. *See* Motion to Dismiss Decision at 10–11. Defendants believe that each member of the putative class, all of whom received a distribution of benefits in 1998 and hence more than six years before the Complaint in this case was filed on February 10, 2005, either were aware of the claim or could through the exercise of reasonable diligence learned from publicly available information of the existence of the claim brought in this lawsuit more than six years before the Complaint was filed, wherefore all of their claims are untimely. If the class now sought had been certified before the close of merits discovery Defendants would have sought discovery from each member of the class to see whether he or she actually was aware of the existence of a claim more than six years before February 10, 2005 or had additional grounds to be on notice.

There is reason to believe that such discovery would have uncovered evidence that the claims of absent class members, like those of at least Hinchliffe and Trainor, are untimely. Both testified that they thought even before they received their benefits from the Trust in 1998 that Meditech stock was undervalued. Hinchliffe testified that he came to believe that Meditech stock was undervalued in the "late '80s, early '90s"; said "I always felt that it was valued low. We all did. Everybody in the company did"; and admitted "[p]eople who have already purchased [Meditech] stock," as Hinchliffe did, "already knew everything, knew what they were getting into, knew what it was all about." Deposition of David Hinchliffe at 15-16, 18-19, 52-53 ("Hinchliffe Depo.") (Martin Aff., Ex. 1). Trainor likewise admitted believing that Meditech stock was undervalued "at least a couple of years" before he left the Company in 1998. Deposition of William Trainor at 58-59 ("Trainor Depo.") (Martin Aff., Ex. 2). And Hinchliffe and Trainor both stated, in their depositions and in interrogatory responses, that they spoke with other individuals at Meditech about the value of Meditech stock before leaving Meditech in 1998. *See* Hincliffe Depo. at 18-19; Trainor Depo. at 60. Hubert, meanwhile, admitted he was

comparing Meditech's P/E ratio to that that of public companies – the very analysis used in the Amended Complaint – in the 1980s.  *See* Deposition of Michael Hubert at 121-22, 131 (Martin Aff., Ex. 3); *see also* Martin Aff., Ex. 7, Demonstratives L, M.

Remarkably, in an effort to avoid the barrier posed to class certification by the need to depose every class member concerning statute of limitations issues, Plaintiffs repeat the assertion in their First Class Certification Motion, right down to the typos, that the statute of limitations question raised by this case is subject to common proof (and thus not a barrier to class certification) because "no Plan participant could reasonably have known of a possible misconduct in connection with Meditech stock valuations before February 27, 2002, when Dr. Grossman filed his Form 3-D [sic]" with the SEC.  *See* Plaintiffs' Memorandum in Support at 12 ("Plaintiffs' Memo").  As Defendants have repeatedly observed, however, including in the First Class Certification Opposition, plaintiff Hubert admitted at his deposition that he sent an anonymous email to numerous attorneys – including Mr. Collora – *before* Grossman's SEC filing, stating that it was acknowledged "by all" that Meditech stock was undervalued and seeking to find a lawyer to bring the very ERISA claim now before the Court.  *See* Hubert Depo. at 29-30; *see also* February 18, 2002 Email (Martin Aff., Ex. 9).  Indeed, as quoted *supra*, all three named Plaintiffs testified that they believed before 1998 that Meditech stock was being undervalued by Defendants.  Plaintiffs' statement about what Plan participants "could reasonably have known" before Grossman's SEC filing, therefore, is a blatant falsehood squarely and unambiguously contradicted by the factual record.  Unless one takes the position that the claims of all members of the putative class are barred by the statute of limitations because public information would have revealed the claim brought in this case to any class member who

exercised reasonable diligence, the statute of limitations issue in this case, among others, is not susceptible to common proof.

All told, by not filing the Amended Motion until well after the deadline for class certification motions set by this Court and after the close of merits discovery Plaintiffs have greatly prejudiced Defendants in their preparation for summary judgment and trial. Under the circumstances, and in the exercise of the Court's inherent authority to impose deadlines for motions practice, Defendants submit that the Motion should be denied. (If, however, a class is certified fairness would dictate that discovery be reopened to permit Defendants the opportunity to take discovery from each member of the putative class with respect to the statute of limitations and other individual issues, and to submit an additional expert report.)

## II. THE AMENDED MOTION DOES NOT AVOID THE INTRA-CLASS CONFLICTS PREVIOUSLY IDENTIFIED BY THIS COURT

Plaintiffs assert that the Amended Motion should be granted because it avoids the barriers to class certification that underlay the Court's previous decision to deny the First Class Certification motion. That is not true. Plaintiffs' argument only makes sense if one ignores what this Court said repeatedly throughout the Class Certification Decision – that even a class composed entirely of individuals who left the Plan in the same year will face intra-class conflicts over the selection of an appropriate valuation method for the Trust's non-publicly traded Meditech stock.

In the Class Certification Decision, this Court correctly applied principles laid out by the Supreme Court in *Amchem*, *supra*, to deny class certification. In *Amchem*, the Supreme Court made clear that, in determining adequacy, a court must consider how the named plaintiffs would allocate damages amongst the class. The Third Circuit had reversed the district court's certification of a settlement class, holding that even though "the members of the class are united

in seeking the maximum possible recovery for their … claims," the settlement made "important judgments on how recovery is to be allocated *among different kinds of plaintiffs*, decisions that necessarily favor some claimants over others."  521 U.S. at 610-11 (emphasis supplied).  The Supreme Court affirmed the Circuit Court, refusing to allow the named plaintiffs to make such "essential allocation decisions" among class members where the goal of one group of class members "tugs against" the interest of another.  *Id.* at 626-27.

Denying the First Class Certification Motion, this Court explained that in this case "the choice of a particular alternate methodology to value [Meditech] stock pits class members against one another and places them in direct conflict with the proposed class representatives." Class Certification Decision at 7.  "Valuing the equity of a private company is an 'art,' not simply a matter of plugging numbers into a formula," and "[d]ifferent appraisers can come to significantly different valuations based on the same set of facts."  *Id*. at 8.  Given the manner in which contributions are made by the Company to the Trust, and distributions are paid by the Trust to Plan participants, the Court recognized that "the very issue to be decided – the proper method to value the Company stock in the Plan – results in radically different recoveries for class members depending on the valuation method chosen, the year the member exited the Plan, as well as the year the member entered the Plan."  *Id*. at 7-8.

While the intra-class conflict in selection of a valuation method is perhaps maximized in a class containing members who exited the Plan in different years, Plaintiffs' decision to limit the class proposed in the Amended Motion does not even come close to eliminating the class conflicts identified by the Court.  As the Court observed, "the only employees guaranteed to have identical interests in choosing a valuation methodology are those *who entered the Plan in the same year and* who later exited the Plan in the same year."  Class Certification Decision at

14-15 (emphasis added). Even then, however, the Court noted that "this oversimplifies the analysis, since employees have an interest in the lowest share valuation in years in which they had the highest dollar contributions to the plan. To the extent two employees entering and exiting in the same years have differing high earning years (and thus larger Plan contributions), they might prefer different valuation methodologies." *Id*. at 15 & n. 9.

It should be clear that Plaintiffs, by limiting the class to Plan participants who all received distributions in 1998, have failed to sure the class conflicts that doomed the First Class Certification motion. Intra-class conflicts based on the year one receives a distribution may have been removed from the equation. However, Plaintiffs have done nothing to address the conflicts that the Court found based on share valuations in the year each class member entered the Trust and in the years leading up to the year of distribution, during which various class members might prefer different valuation methodologies that maximize the share valuation in their differing "high earnings years." Plaintiffs make no argument that the valuation method employed in the Van Vleet Report treats all putative class members equally vis-à-vis the years in which contributions were being made to their Trust accounts. Nor could they, since Plaintiffs did not bother to have their expert, Van Vleet, provide a valuation for any period other than December 31, 1997. Moreover, as discussed below, the interests of plaintiff Hubert, who class counsel now seeks to drop like a "hot potato" and who, as Defendants' experts have now shown, would receive nothing under Plaintiffs' valuation methodology, are also adverse to the class.

All told, the Amended Motion fails to cure the deficiencies found by the Court in the Class Certification Decision. Given the wide range not only of potential valuation methods that exist, but the probability that even two appraisers employing the same method would employ different assumptions valuing Meditech stock over the life of the Trust, the likelihood that all

members of the class would prefer the valuation method selected by Hinchliffe and Trainor, rather than Defendants' method or even some third method, asymptotically approaches zero. Accordingly, the same concerns under *Amchem* that this Court identified with the First Class Certification Motion are still present, and the Amended Motion must be denied.

## III.    PLAINTIFFS AND THEIR COUNSEL ARE NOT ADEQUATE REPRESENTATIVES OF THE CLASS

Under Rule 23(a)(1), Plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." A class representative is a "fiduciary," and the interests of the class are "dependent upon his diligence, wisdom and integrity." *See Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 549-50 (1949). It is difficult to imagine either Trainor or Hinchliffe as a fiduciary for the proposed class. Indeed, events since the Class Certification Decision suggest that class counsel may also be inadequate.

### A.    Trainor Is Inadequate Because He Knows Almost Nothing About the Litigation or his Duties as a Named Plaintiff

Plaintiffs cannot demonstrate that Trainor is an adequate class representative because, among other reasons, he has paid no attention to this litigation. Trainor was not even aware that this case was a class action; asked the question several different ways, he repeatedly testified at his deposition that the "class" consisted only of the three named plaintiffs. Trainor Depo. at 45-46; *see also Scott v. New York City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004) ("Spillers' deposition makes equally clear that he is unsuited to be a class representative. He did not know what a class action is, nor that his case was such an action"). Trainor also testified that he was unaware of his responsibilities as a named plaintiff, and had undertaken no effort to find out what they are. Trainor Depo. at 30; *see also In re Commonwealth Oil/Tesoro Petroleum Securities Litig.*, 484 F.Supp. 253, 263-66 (W.D. Tex.

1979) (denying class certification in part because the named plaintiffs were not aware of any duties they might have as class representatives).

Indicative of Trainor's general disinterest in the case, he testified that he had done "nothing" to prepare for his deposition. Trainor Depo. at 41; *see also McDaniel v. County of Schenectady*, 2005 WL 1745566, *3 (N.D.N.Y. 2005) ("Assuming this fiduciary role, the class representative must vigorously pursue all facets of the litigation in the interest of the class," including attendance at depositions). He was unaware of basic facts concerning the litigation. He could not name the three defendants in the case, insisting that the only defendant was the Plan. Trainor Depo. at 97. The Amended Complaint's key allegation is that in his capacity as Trustee defendant Pappalardo intentionally undervalued Meditech stock; Trainor testified at his deposition "I don't know that he did or didn't value it at what it was worth." *Id*. at 93.

Moreover, although Trainor received a distribution of approximately $930,000, an amount Plaintiffs claim was several hundred thousand dollars too small, at the time of his deposition he had contributed only $125 toward this litigation, and was unwilling to contribute any more than $1,125. Trainor Depo. at 31, 33-34; *see also In re Bank of Boston Corp.*, 762 F.Supp. 1525, 1535 (D. Mass. 1991) ("*some* financial commitment" by the named Plaintiff is necessary to "ensure that the representative will be conscientious and attentive to the interests of all members of the class"). Indeed, Trainor was unaware of the terms of his own retainer agreement with Mr. Collora –  including the fact that it requires Trainor to pay $2,500 – confirming that he cannot be trusted to monitor class counsel. Trainor Depo. at 38-39.

Trainor not only appears to care very little about vigorously prosecuting his own claim, he admitted he does not care about the claims of absent class members. When Trainor was asked a question meant to elicit his concern for the claims of then-absent class members – "Do you

care what the proper value of Meditech's stock was in 2001?" – he simply answered "No." Trainor Depo. at 102. While Plan participants who received distributions in 2001 are no longer members of the amended class, as discussed above intra-class conflicts are still present, and there is no reason to believe that Trainor's attitude toward absent class members who departed in 1998 is any different than toward those who departed in 2001.

Any one of the above facts about Trainor would be a sufficient basis to find him an inadequate class representative. Together, they demonstrate that Trainor is utterly and completely inadequate. *See Weissman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978) (denying class certification where plaintiff had "done little more in this action than write an initial letter to his counsel, sign a retainer and submit to a deposition").

### B.    Hinchliffe is Inadequate Because He Admittedly Cares Nothing About Absent Class Members

Hinchliffe's inadequacy as a class representative is shown, *inter alia*, by his own deposition testimony. Hinchliffe, who received a distribution from the Plan in 1998, was asked to consider his interests versus those of then-absent class members who left in later years. He responded "I'm not concerned, really, with people that left in 2000. I'm concerned with me." Hinchliffe Depo. at 35. In addition, when Hinchliffe was asked what he thought would happen to people still participating in the Plan – some of whom were members of the class as then proposed by the Plaintiffs – "if you win this lawsuit and the plan pays out the kind of money that you are talking about," he answered "Quite frankly, I'm just concerned about this case." *Id*. at 25-26. In addition, Hinchliffe, like Trainor, was not aware of his responsibilities as a named plaintiff in a class action. *See id*. at 8.

In light of Hinchliffe's testimony, it remains amazing that Plaintiffs' counsel put him forward as someone who will "fairly and adequately protect the interests" of any absent class

members, including those who like him received distributions in 1998, but whose interests, this Court has recognized, might be differently furthered by selection of a valuation method other than that used by Van Vleet.

### C.    The Adequacy of Plaintiffs and Their Counsel is Questionable Based on Their Failure to Vigorously Pursue Plaintiffs' Claims

While Defendants previously did not directly question the adequacy of class counsel, the adequacy of class counsel and of the Plaintiffs is now open to serious question as a result of their conduct of expert discovery and other more recent developments in this case.

In the Class Certification Decision, this Court cautioned Plaintiffs that they could not prove an entitlement to additional benefits simply by proving that Meditech shares were undervalued by Defendants in the years Plaintiffs received their benefits:

> Plaintiffs imply that the proper resolution of their suit is merely to revalue upwards the share price for each year at issue and multiply that price by the vested share balance of each class member who received a distribution (subtracting the distribution they have already received) to calculate the per-member recovery.  But as I noted in my earlier decision, the number of shares owned by each class member was calculated based on the allegedly undervalued price.  Had the plaintiffs' pricing methodology been used when the shares were originally contributed to the Plan, fewer high-priced shares would have been allocated to each employees' account based on the same total dollar value contribution by the Company. Thus, while the per-share value at redemption would be higher, the total number of shares owned would be lower.  As I stated previously, the actual issue to be decided in this case is whether "the parties' competing valuation methodologies involve different rates of growth (or decline) over time, so that the difference in actual share values would not necessarily be a constant margin."

Class Certification Decision at 13–14.  Thus, the Court continued, "*[t]he only proper way* to calculate the proper payout under any alternate valuation methodology is to revalue the shares from the beginning of the plan." *Id.* at 14 (italics added, underlining in original).

Remarkably, Plaintiffs and their counsel made no effort to produce the evidence this Court said was necessary for them to prove their case "the only proper way." Van Vleet's "alternate valuation methodology" was not used "to revalue the shares from the <u>beginning</u> of the plan." Instead, he opined only as to the value of Meditech stock on a *single* date: December 31, 1997, the date used to determine Hinchliffe's and Trainor's distributions in 1998. Van Vleet Report at 13. Equally astonishing, while this Court rejected "merely … revalu[ing] upwards the share price for each year at issue and multiply[ing] that price by the vested share balance of each class member who received a distribution . . . to calculate the per-member recovery," the Van Vleet Report proposes doing precisely that:

> [T]he Trust contained 2,938,020 shares of Meditech …. If the stock of the Company contained in the Trust had been valued at the $21.62 fair market value price per share as opposed to the $13.50 price per share, the total assets of the Trust would have increased by 36.2 percent. … Consequently, in order to estimate damages suffered in this matter, it is necessary to multiply the amount received by [Hinchliffe and Trainor] by 36.166 percent.

Van Vleet Report, Cover Letter Dated February 19, 2008, at 3.

Defendants will not speculate on the strategy involved in the decision not "to revalue the shares from the <u>beginning</u> of the plan." Whatever the reason, it is indisputable that Plaintiffs and their counsel, by declining to pursue this case in "the only proper way," have effectively capitulated on the merits. While Plaintiffs are entitled to sink their own claim, they cannot drag absent class members down with them. Accordingly, the inadequacy of Plaintiffs and their counsel as seen in their conduct of expert discovery is another reason to deny certification.

The First Circuit has confirmed that Plaintiffs' failure to come forward with a plausible theory of liability is grounds for denying class certification. In *New Motor Vehicles* 2008 WL 820922, *1, Plaintiffs sought certification of a consumer class based on an alleged conspiracy by dealers to illegally block lower-priced car imports from Canada. A key question in the case was

18

whether plaintiffs could demonstrate that any higher price paid by dealers for cars as a result of the alleged conspiracy was "passed through" to consumers, who were only indirect purchasers. Finding flaws in plaintiffs' proposed experts' model for finding harm to class members on a common basis, which the First Circuit characterized as relying solely on "intuitive appeal," *id*. at *19, the court vacated class certification, explaining "At the class certification stage, however, the district court must still ensure that the plaintiffs' presentation of their case will be through a means amenable to the class action mechanism. … If there is no realistic means of proof, many resources will be wasted setting up a trial that plaintiffs cannot win." *Id*. at *20.

So too here.  By declining to have their expert perform the research this Court told them would be necessary to prove Plaintiffs' claims in the "only proper way," and instead relying on a theory of proving harm that lacks even the "intuitive appeal" of the theory in *New Motor Vehicles*, Plaintiffs are steering this case toward a scenario in which "many resources will be wasted setting up a trial that plaintiffs cannot win."  Defendants will be filing a motion for summary judgment based, among other reasons, on Plaintiffs' failure to come forward with a viable theory of the case.  The only appropriate course is to deny class certification.

Plaintiffs' counsels' treatment of Hubert also raises troubling questions concerning their adequacy to represent the interests of absent class members.  Mr. Collora has been representing Mr. Hubert since at least 2002, when Hubert tried to secretly sell confidential Meditech information to a third party for millions of dollars.  Hubert was the only named plaintiff on the original complaint in February 2005, and it was Hubert who recruited Hinchliffe and Trainor – who had never taken any steps since receiving their distributions in 1998 to bring any kind of administrative or ERISA claim for more benefits – to serve as additional named Plaintiffs.  Yet Plaintiffs' counsel engaged no expert to value Meditech stock as of December 31, 2003 in

support of Hubert's claim, and on April 8, 2008, suddenly announced an intention to seek dismissal of Hubert's claim, apparently over Hubert's objection. While Plaintiffs' counsel have not yet explained why they intend to abandon Hubert, Defendants suspect, but cannot be sure, that Plaintiffs' counsel have recognized the conflicts involved in representing individuals receiving distributions in different years and decided that the claims of Hinchliffe and Trainor (assuming they survive Defendants' statute of limitations and other defenses and can be proved on the merits) offer the possibility of a greater payout. Given the conflicts between even class members leaving the same year, *see supra*, such motivation should be automatically disqualifying. In any event, the decision to seek the dismissal of Hubert's claims shortly before the pretrial conference opens to question counsel's adequacy to represent the interests of the diverse class proposed by the Amended Motion.

## CONCLUSION

Defendants respectfully pray that Plaintiffs' Amended Motion be denied.

Respectfully submitted,

MEDICAL INFORMATION TECHNOLOGY, INC. PROFIT SHARING PLAN, MEDICAL INFORMATION TECHNOLOGY, INC. and A. NEIL PAPPALARDO.

By their attorneys,

/s/ Stephen D. Poss
Stephen D. Poss (BBO # 551760)
Kevin P. Martin (BBO # 655222)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
(617) 570-1000
(617) 523-1231 (fax)
sposs@goodwinprocter.com
Dated: April 8, 2008                    kmartin@goodwinprocter.com

**CERTIFICATE OF SERVICE**

      I, Stephen D. Poss, P.C., hereby certify that I caused a true copy of the above document to be served upon the counsel of record for each other party via this Court's ECF System on April 8, 2008.

/s/  Stephen D. Poss        
Stephen D. Poss
