UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL P. HUBERT, WILLIAM TRAINOR, and DAVID HINCHLIFFE, Individually and On Behalf Of All Persons Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL INFORMATION TECHNOLOGY PROFIT SHARING PLAN, et al.<br><br>Defendants. | Civil Case No. 05-10269-RWZ |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

In this suggested class action, terminating employees Trainor and Hinchliffe seek unpaid benefits due them and their fellow departing employees in 1998 because the Trustee at the end of 1997 deliberately undervalued the primary asset – Meditech common stock – in the Meditech ERISA profit sharing plan. This under pricing is a violation of the contractual and statutory duty of the Trustee to the proposed 1998 class. The 100 plus person class shares common legal and factual elements, and this Court should recognize that.

In their opposition, Defendants focus instead on attempting to demean the two proposed class representatives, pointing out for example how much money the two made by being in the Plan. *See* Opp. Memo, p. 2-3. In doing so, they ignore the financial manipulation of the price and its benefits to the Trustee. From 1995 – 1998, the Trustee himself gobbled up over 400,000 shares of stock at depressed prices ranging from (post split) $10 to $13.50, shares which have

1

tripled in the meantime. More importantly, Defendants do not address and seemingly concede the numerosity, typicality and commonality of the proposed class. Rather, Defendants focus their time on three failing argument,, each of which is addressed below.

### I.   Plaintiff's Timely Amended Motion Does Not Prejudice the Defendants

Defendants claim in their Opposition that this Motion is not timely and has prejudiced them. *See* Opp. Memo p. 6-11. They filed no affidavit nor did they suggest specifically what they would have done differently had it been filed earlier. Plaintiffs filed the original Complaint in this case on February 10, 2005 as a class action for the period 1997 – 2005, giving the Defendants notice from the beginning of the litigation that they intended to move for class certification. Class discovery in this case was conducted for well over a year and closed in August 2006. During that time, the Defendants had ample opportunity to take discovery, taking depositions of Mr. Trainor and Mr. Hinchliffe (as well as Mr. Hubert), and sending interrogatories and document requests. Defendants have not demonstrated, nor have they even indicated by an offer of proof or otherwise, what additional class certification discovery they would have taken if Plaintiffs had merely proposed a sub-class of the original proposed class. Indeed, given the potential intraclass conflicts this court found in its class ruling, a subclass is an ideal remedy for that problem. *See In re Mutual Sav. Bond sec. Ltig.*, 166 F.R.D. 377, 384-385 (E.D. Mich. 1996).

Rather, defendants argue that had the sub-class been certified earlier, they would have proceeded to take merits discovery of each individual member of the class and had their expert do the same. Opp. Memo, p. 8-12. Defendants' contentions notwithstanding, neither course of action would have occurred regardless of the timing of the present Motion. First, discovery of absent class members is not favored and rarely permitted. *Mehl v. Canadian Pacific Ry.*, 216

F.R.D. 627, 631 (D.N.D. 2003) (discovery of absent class members "is not generally encouraged due to its potential for harassment and due to concerns regarding its practicality"); *see also On the House Syndication Inc. v. Federal Express Corp.,* 203 F.R.D. 452, 455 (S.D. Cal. 2001) ("discovery of absent class members is ordinarily not permitted in class actions."); *Kline v. First Western Gov't Securities,* 1996 WL 122717 at *1 (E.D.Pa. Mar. 11, 1996) ("[U]pon a survey of cases, it is safe to state that discovery of absent class members is disfavored."); *Adkins v. Mid-America Growers, Inc.,* 141 F.R.D. 466, 468 (N. D. Ill.1992) ("[T]he ideas of a class action and individualized discovery do not fit together well.... If joinder of all parties is impracticable, propounding discovery like interrogatories, depositions, and requests to produce on an individual basis is even more impracticable."); *In re Worlds of Wonder Sec. Litig.,* 1992 WL 330411, *2 (N. D. Cal. July 9, 1992) ("Absent class members are not parties and separate discovery of individual class members not representatives is normally not permitted.") (citation omitted); *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 260, 264 (N. D. Ill. 1979) ("Named plaintiffs are always parties subject to discovery, while absent class members are not subject to discovery except under special circumstances"). In commenting on the duties of class members, the Supreme Court has noted that, "an absent class-action plaintiff is not required to do anything." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 810 (1985).

     Moreover, Defendants would have no justification for engaging in said discovery. Defendants claim that additional discovery would illuminate that the claims were untimely. In doing so, the Defendants contend that Mr. Trainor and Mr. Hinchliffe's actions are barred by the statute of limitations because they thought during their employment that the stock might be undervalued. Defendants ignore the fact that this is completely insufficient to start the statute of

limitations running. Mere conjecture as to a wrong is an insufficient storm warning to initiate the running of the statute of limitations. Rather, it was not until February 2002 when a member of the Board of Directors, Dr. Grossman, filed a Form 13D that a floor for the running of the limitations period was established, because it marked the first time that anyone with a basis for knowledge of the under pricing publicly accused any of the Defendants of wrongdoing in the setting of Meditech stock value. *See Edes v. Verizon Communications, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005) ("there cannot be actual knowledge of a violation for purposes of the limitation period unless a plaintiff knows the essential facts of the transaction or conduct constituting the violation") (citations omitted); *Kling v. Fidelity Management Trust Co.*, 323 F. Supp.2d 132, 136-37 (D. Mass. 2004) (when determining beginning of limitations period for breach of fiduciary claim under ERISA, "it is not enough that [plaintiffs] had notice that something was awry; [plaintiffs] must have had *specific knowledge of the actual breach of duty* upon which [they sue]") (citation omitted) (emphasis and brackets in original). Defendants concede that the Trustee never advised the class of his methodology of valuation nor his philosophy of pricing the stock at the law end of a range. *See* Pappalardo Depo. at 41-44, 47-49, 57, 75-76,114-21, 124-25, 162.[1] Whatever idea the class members had about the value of the stock, they knew nothing about these facts constituting the violation nor did they have any specific knowledge of an actual breach of duty by the trustee. *See id*.

Defendants further contend that they would have elicited expert opinion pertaining to the claims of each of the members of the newly proposed class. Defendants do not allege what specifically they would have elicited nor what an expert would have done with this information.

---

[1] The excerpts from the Pappalardo deposition are already before the Court as support for Plaintiffs' Motion for Class Certification, and Plaintiffs' Amended Motion for Class Certification.

The reality is that the Trustee valued the stock at the end of the year and that same value applied to each and every individual who received a distribution of any portion of their interest in that Plan from January 1, 1998 to December 31, 1998. The expert need not look at each individual claim because same valuation of the value of the stock applies to each member of the proposed class.

Finally, Plaintiffs' motion was timely filed. When a plaintiff is denied certification because of a conduct within the class, plaintiff should be given reasonable time to construct sub-classes. *See Quintana v. Harris,* 663 F.2d 78, 80 (10th Cir. 1981). Moreover, the First Circuit recently noted, "A district court which has taken an initial look at the merits is not foreclosed from later entertaining, post-discovery, a summary judgment motion from defendants asserting that plaintiffs cannot establish the requisite antitrust and consumer protection impact through common means. Indeed, it is not uncommon to defer final decision on certifications pending completion of relevant discovery." *See In re Motor Vehicles Canadian Antitrust Litig.*, __ F.3d ___ 2008 WL 820922, *17 (1st Cir. Mar. 28, 2008) (internal citations omitted). After the Petition for Leave to Appeal was denied, the Plaintiffs had six months in which to conduct fact discovery (less than half the time that Defendants had in which to conduct discovery on a far more limited topic, that of class certification.) During that time, the Plaintiffs actively engaged in discovery acquiring information to prove their individual cases. It was more than appropriate for Plaintiffs to conduct merits discovery and to provide the information acquired to the expert. Finally, in light of the Court's concerns with the valuation process, the Plaintiffs sought to attach the expert letter to their motion for class certification demonstrating that Trustee did not conduct the valuation for 1998 correctly.

## II.   IntraClass Conflicts are a Red Herring

The proposed class is very simple. The Plan states at the end of every year the Trustee must value the assets in the Plan at fair market value. The Plaintiffs' Expert has opined that the Trustee did not value the Plan correctly, stating that the Trustee undervalued the Plan on December 31, 1997 by sixty (60) percent. Thus, every individual of the 100 plus who terminated his or her interest in the Plan in 1998 was subject to the same undervaluation, getting less from the Plan that he or she was entitled to. While the issue of when one entered a class might have been relevant for a class spanning six years, it simply is not relevant for a class that is contained within one year. All of the individuals in the proposed class are subject to the same valuation and when they entered the class does not affect the valuation.

## III.   Plaintiffs and Their Counsel Are Adequate Representatives of the Class

Defendants insult both Plaintiffs and their Counsel in a mean-spirited attempt to obscure the very sound adequacy of both. While Mr. Trainor and Mr. Hinchliffe were not savvy and sophisticated executives, they most certainly possess the necessary traits to adequately represent the proposed class. The Defendants mischaracterize each Plaintiff's testimony in an underhanded effort to disqualify each as an adequate class representative. Defendants' tactics merely demonstrate that Plaintiffs are, in fact, more than adequate or Defendants would have been able to point to actual reasons for inadequacy rather than distorting the record.

Defendants attack Mr. Trainor, a high school graduate, for his lack of sophistication in understanding legal terms and procedure. Mr. Trainor is entitled to rely on counsel's expertise in framing the legal issues. *Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 215-16 (D. R.I. 2005). Mr. Trainor further demonstrated the utmost integrity during his testimony. When asked directly

whether he knew that the stock was undervalued, he honestly answered that he did not and that he relied on the information provided to him by Mr. Hubert in deciding to join the suit. *See* Trainor Depo. at 6, 11-12.[2] Any other answer would have been patently false – Mr. Trainor is by his own admission "not a stock person" (*id.* at 62) – yet Defendants ask this Court to find him inadequate precisely because of his honesty. *But see Surowitz v. Hilton Hotel Corp.*, 383 U.S. 363, 373-74 (1966) (dismissal based on ignorance of class representative improper where no indication of improper motive or trickery on plaintiff's part). Mr. Trainor is willing and able to represent this class, and should be allowed to do so.

Defendants harp on the fact that when Mr. Trainor was asked, "Do you care what the proper stock value of Meditech's stock was in 2001," he answered "no." Trainor Depo. at 102. Defendants fail, however, to note that defense counsel tried to lead Mr. Trainor to admit that he was not concerned about the fair value of Meditech's stock in years after he left, Mr. Trainor answered: "It didn't [concern me] until I heard that Jerry Grossman, who was a member of the board of directors, was suing the company for what I understand is he felt the stock was undervalued, and I think was the first time I thought about it." *Id.* Thus, it is clear from his answer that Mr. Trainor thought that he was being asked whether, during those years, he was concerned that his own stock had been undervalued. At no time did he testify, as Defendants assert, that he does not care about absent class members, or that is he "unwilling" to pay his share of the litigation. *Id.* at 38. Moreover, Mr. Trainor did testify that he cared about the valuation for the year that he left. Because the Plaintiffs are only moving to certify the class for the year that Mr. Trainor exited, his interests are exactly aligned with the class.

---

[2] The excerpts of Mr. Trainor's deposition are already before the Court as support for Plaintiffs' Motion for Class Certification, and Plaintiffs' Amended Motion for Class Certification.

As for Dave Hinchliffe, Defendants can muster only that he is not sufficiently "concerned" about absent class members. Class representatives do not have to be altruistic in their pursuit of an action, they just have to avoid conflicts with absent class members. In both instances cited by Defendants as demonstrating a lack of concern, Mr. Hinchliffe was actually responding appropriately to improper and irrelevant questions from defense counsel. In the first instance, Mr. Hinchliffe was asked, "[d]o you think it would be fair for someone who left MEDITECH in 2001 or 2002 and took a distribution at that time to receive a smaller distribution from the trust based on a per-share value lower than someone who left in 1998, the year you left." *See* Hinchliffe Depo. 35.[3] In the second, Mr. Hinchliffe was asked what he thought might happen to current participants if the Plan had to pay a judgment as a result of this litigation. *Id.* at 25-26. That Mr. Hinchliffe refused to allow himself to be guilt-tripped by defense counsel speaks volumes about his ability to vigorously fight for his and the class's rights. And given the nature of the questions at issue, he should not be disqualified for his answers. Additionally, his answers show that he quite diligent and determined to pursue the claim with respect to the year that he left, 1998. Thus, Mr. Hinchliffe will adequately represent the interests of the proposed class.

The only issue pending before the court is whether those individuals who exited the class in 1998 received their full and proper benefits under the Trust. A valuation from the beginning of the trust is simply not necessary nor would it inform the decision that this court needs to address: whether the proposed class of individuals who exited the plan in 1998 should be certified. Mr. Hinchliffe and Mr. Trainor can prove their individual claims with the valuation that has been

---

[3] The excerpts of Mr. Trainor's deposition are already before the Court as support for Plaintiffs' Motion for Class Certification, and Plaintiffs' Amended Motion for Class Certification.

performed. Similarly, the claims of the class can also be proven with the analysis that has been conducted. Analyses of the value of companies and stocks are often performed without recreating the value from the inception; this case is no different.

Similarly, Defendants attack the adequacy of counsel based upon counsel's disclosure of an intention to file a motion to voluntarily dismiss Plaintiff Hubert's claims without prejudice. Defendants rely on inference and conjecture to attack the adequacy of class counsel based on a private decision between counsel and client despite its complete lack of relevance to the motion pending before the Court. Mr. Hubert was not proposed as a class plaintiff. The motion does not seek to certify a class for 2004, the year that Mr. Hubert exited the Plan. Rather, Defendants seek to malign class counsel in a deliberate attempt to attack his credibility before the Court. Unfortunately for the Defendants, their insults and inferences in no way relate to the motion pending. The proposed class completely aligns with the interests of proposed class representatives, Mr. Trainor and Mr. Hinchliffe. Mr. Hubert is not associated with the proposed class.

## CONCLUSION

For all of the reasons stated above and in their original motion, the Plaintiffs respectfully request that this Court grant the Plaintiffs' Amended Motion for Class Certification.

Respectfully submitted,
**Michael P. Hubert,**
**William Trainor, and**
**David Hinchliffe,**
Individually and as representatives of a class of all others similarly situated,
By their attorneys,


   /s/ Jennifer M. Ryan
Michael A. Collora (BBO #092940)
David A. Bunis (BBO #550570)
Jennifer M. Ryan (BBO #661498)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA  02210
671-371-1000
671-371-1037

Dated:  April 21, 2008

## CERTIFICATE OF SERVICE

I, Jennifer M. Ryan, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on this 21 day of April, 2008.

/s/ Jennifer M. Ryan
Jennifer M. Ryan