UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL P. HUBERT, WILLIAM TRAINOR, and DAVID HINCHLIFFE, Individually and On Behalf Of All Persons Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL INFORMATION TECHNOLOGY PROFIT SHARING PLAN, et al.<br><br>Defendants. | Civil Case No. 05-10269-RWZ |

**PLAINTIFFS' PRETRIAL MEMORANDUM**

I.    **Plaintiffs' Summary Of Facts to be shown at Trial**

Plaintiffs William Trainor ("Mr. Trainor") and David Hinchliffe ("Mr. Hinchliffe") (collectively, "the Plaintiffs") will offer testimony that they were employed by Medical Information Technology, Inc. ("Meditech"), and were participants in its profit sharing plan (the "Plan") through part of 1998, during which time they left Meditech's employ and received a check representing their interest in the Plan. Neither knew how the primary asset in the Plan, shares of common stock of Meditech, were valued and neither received any notice that they could contest valuation of the assets in the Plan, or their interest in the Plan, at time of termination.

Plaintiffs will offer testimony that the Chairman of the Board of Meditech, A. Neil Pappalardo ("Mr. Pappalardo"), essentially dictated to the Board of Directors (the "Board") at its October meeting each year the value of the shares, a value used for contribution of shares to the

Plan and sale to employees. No outside appraiser was used. In the fall of 1997, the Board set the price as $13.50 (reflecting a later 2/1 split in May 2001). Mr. Pappalardo, as the longtime Trustee of the Meditech Profit Sharing Trust (the "Trust") holding the Plan's assets, picked the same price at year end (December 1997) as did the Board in October 1997 and filled in a template setting forth his "methodology."

Plaintiffs will demonstrate that Mr. Pappalardo picked a low price to favor buyers and those holding stock and to penalize sellers. At the same time, during the relevant period Mr. Pappalardo himself and through him a few officers were buyers of Meditech stock.

Evidence will show the company was growing at a 15% rate in revenues and profits in the 1996-1997 time frame, was very profitable, and paid a handsome dividend. The only ready market for its stock was the Trust, which bought stock from employees and others at the then dictated share price.

Plaintiffs' expert, Daniel Van Vleet from the Chicago firm of Duff & Phelps, has given an opinion that the fair market value of the stock as of December 31, 1997 was $21.60, not $13.50 as selected by the Trustee/Defendant.

If the class is certified, damages would be approximately $1,500,000, plus interest from December 31, 1998 and legal fees.

**II.     Facts Established by Pleadings**

By their answer, Defendants have admitted to the following relevant facts.

1. The Plan is sponsored by Meditech. The Plan is governed by the Employee Retirement Income Security Act ("ERISA") Title 29 U.S.C. 1001, et seq.

2. Defendant Pappalardo is a resident of Boston, Massachusetts. Mr. Pappalardo is a founder, chairman of the Board of Directors, and chief executive officer of Meditech. As the sole

Trustee of the Plan, Mr. Pappalardo is both a named fiduciary and a functional fiduciary for purposes of this lawsuit.

3. The Plan is required to file an informational federal tax return on Form 5500.

4. Meditech contributed 80,000 split-adjusted shares to the Plan in 1998, 1999, 2000, 2002, 2003, and 2004, and 75,000 split-adjusted shares in 2001.

5. The Board of Directors of Meditech have a fiduciary duty to ensure that the Plan's Trustee fulfills his or her obligations. Defendant Pappalardo is the current Trustee of Meditech.

6. The Plan's Trustee is responsible for valuing the fair market value of the Plan's assets on an annual basis, allocating each participant's interest in the Plan's assets to the participant's individual account, and determining the amounts due to Plan participants upon distribution. Defendants admit that Mr. Pappalardo is the Trustee of the Plan.

7. Meditech employees are not permitted to contribute any money to the Plan. Rather, benefits under the Plan are considered deferred compensation.

8. Under the terms of the Plan, each participant is assigned an individual account, into which the Trustee allocates that participant's proportional share of Meditech's annual contribution.

9. Under the Plan, on or around the time of separation of employment, the participant receives a letter stating his or her proportional interest in the Plan's assets and a benefits election form, permitting the participant to elect the manner in which his or her interest will be distributed.

10. Plaintiffs Michael Hubert, William Trainor and David Hinchliffe each received the distribution of their fully vested interest in the Plan at or around the time they terminated their employment with Meditech without submitting any claim for benefits.

11. Meditech is a successful and profitable creator and licensor of medical information software to hospitals and similar types of health related businesses. Meditech owns five pieces of developed real estate in Massachusetts, and Meditech rents approximately 40% of the real estate it owns to commercial tenants.

12. Meditech had total revenue of $203 million in 1998; $225.6 million in 1999; $217 million in 2000; $223.8 million in 2001; $256 million in 2002; $270.7 million in 2003; and $280.8 million in 2004. Meditech had a net income of $53.3 million in 1998; $60 million in 1999; $55 million in 2000; $56.8 million in 2001; $64 million in 2002; $67 million in 2003; and $71.4 million in 2004.

13. The following chart correctly sets forth, for each year listed in the chart, the dividends per share paid during the four quarters preceding the end of that year. The chart correctly sets forth the fair market values per share of Meditech stock, as determined by Meditech's board of directors as of December 31st for each year set forth in the table, for purposes of Meditech's voluntary contribution of Meditech stock to the Plan.

| YEAR | STOCK PRICE | DIVIDEND (post May, 2001 split) |
|---|---|---|
| 1998 | $14.50 | $.94 |
| 1999 | $16.00 | $1.00 |
| 2000 | $17.00 | $1.16 |
| 2001 | $19.00 | $1.24 |
| 2002 | $22.00 | $1.36 |
| 2003 | $26.00 | $1.56 |
| 2004 | $29.00 | $1.80 |

14. In 2002, a Board member publicly questioned whether the stock values were being determined at "an artificially low price" and whether the Board ought not to hire an independent appraiser to verify the stock's value rather than "relying on an outdated valuation methodology that does not properly reflect the Issuer's current fair value."

15. The ratio of the fair market value per share of Meditech stock as determined by Meditech's board of directors for purposes of making a voluntary contribution of Meditech stock to the Plan to the earnings per share of Meditech was 8.8 on December 31, 1998 and 8.7 on December 31, 1999.

### III. Contested Issues of Fact

Whether the Trustee undervalued Meditech stock as of December 31, 1997.

Whether the Trustee acted in good faith.

### IV. Jurisdictional Questions

### V. Pending Motions

Whether a class should be certified representing all those terminating their interest in the Plan during the calendar year 1998.

Whether Michael Hubert's Motion For Voluntary Dismissal should be granted.

Plaintiffs also plan to file for leave to file a rebuttal expert report.

### VI. Issues of Law

(i) Whether the Trustee's opinion as to value is entitled to "due deference."

(ii) What is the standard of review to be adopted by the Court of the Trustee's opinion as to value.

(iii) Whether the class (or its representatives) were required to comply with an internal administrative process before filing suit.

(iv) What is the statute of limitations for filing a claim for benefits under ERISA in Massachusetts.

(v) Whether any party other than the Plan is liable for a judgment, if one is entered.

### VII. Any Requested Amendments to the Pleadings

To voluntarily dismiss claims of Michael Hubert.

### VII. Any Additional Matters to Aid in the Disposition of the Action

### IX. Probable Length of Trial

Plaintiffs suggest they will need four full days, or six half days for their evidence.

### X. Plaintiffs' Witnesses

1. David Hinchliffe, 13 Newsome Park, Jamaica Plain, MA 02130 – Will testify to working at Meditech, participation in the Plan, termination of employment, and his receipt of his interest in the Plan in 1998. He will testify as to his lack of knowledge of both (i) valuation of the Plan's assets, and (ii) administrative remedies.

2. William Trainor, 485 West Street, Wrentham, MA 02093 - Will testify to working at Meditech and his participation in the Plan, including termination of employment, and his later receipt of his interest in the Plan in 1998. He will testify as to lack of knowledge of both (i) valuation of the Plan's assets, and (ii) administrative remedies.

3. A. Neil Pappalardo, 10 Rowes Wharf, Boston, MA 02110 – Plaintiffs expect he will testify he is CEO of Meditech, a founder, and member of its Board of Directors. He will

6

likely testify as to how stock is valued by the Board of Directors each October, and by him as Trustee of the Plan. He will identify various documents, including Board reports, minutes, Trustee valuations, and his communications with Plan members. He will admit he has purchased stock at the then declared fair market value as set by him and the Board from 1996-2005. He will admit that employees terminating their employment received their interest in the company profit sharing plan. He will admit he valued the stock at the "lower end of the range," admit his process favored buyers, and will claim he used a form of the Discounted Cash Flow Method to reach the value at issue.

4. Michael Hubert, 48 Narragansett Road, Quincy, MA 02169 – Will testify as to his employment at Meditech, his interest in the Plan, statements of the Trustee/CEO heard by him during the course of employment, and his concern over value.

5. Barbara Manzolillo, 43 Mount Vernon Street, Boston, MA 02108 – Will testify she was administrator of the Plan for Meditech, and will introduce and explain various documents, including the Plan and Amendments, financial statements of Meditech, Board reports, Trustee reports, notices to Plan members, and administration thereof.

6. Edward Roberts, 300 Boylston Street, Boston, MA 02116 – Director of Meditech, will testify as to meetings and discussions over value in the 1995-1998 era.

7. Roland Driscoll, 20 Colby Road, Braintree, MA 02184 – Director of Meditech, will testify as to meetings and discussions over value in the 1995-1998 era.

8. Howard Messing, 41 Martingale Lane, Westwood, MA 02090 – Vice President, then President, Meditech. Can introduce minutes of meetings. Will testify as to the company's products, its competitors, sales of Meditech, purchases of stock from Mr. Pappalardo, valuation of stock by Board of Directors, and his reports to the Board.

9. Expert Daniel Van Vleet, Duff & Phelps, 311 South Wacker Boulevard, Chicago, IL 60606 - Will testify as to fair market value as of December 31, 1997 of Meditech stock, and process of arriving at such figure (i.e. $22.60), more than 50% greater than value given to stock by Trustee at that time.

10. Jerome H. Grossman, M.D. (deceased) by deposition.

## XI. Plaintiffs' Proposed Exhibits

Plaintiffs reserve the right to supplement this list in response to Defendants' Expert Report, Defendants' proposed exhibits, or, at trial, Defendants' witnesses' testimony, or Defendants' cross examinations.

| Proposed Exhibit No. | Description | Bates No./Deposition Exhibit |
|---|---|---|
| | Defendants' Response to Plaintiffs' Initial Set of Interrogatories dated June 5, 2006 | Plaintiffs' Deposition Exhibit 2 |
| | Defendants' Response To Plaintiffs' Requests For Admissions dated February 25, 2008 and related exhibits | |
| | Meditech Profit Sharing Plan, Amended and Restated Trust Agreement as of January 1, 1989 | DEF000001-DEF000071 (Plaintiffs' Deposition Exhibit 4) |
| | Summary Plan Description of the Meditech Profit Sharing Plan, Plan Amended and Restated as of January 1, 1989 | DEF001524-DEF001536 (Plaintiffs' Deposition Exhibit 5) |
| | Meditech Profit Sharing Plan, Amended and Restated Trust Agreement as of January 1, 1998 | DEF000084-DEF000143 (Plaintiffs' Deposition Exhibit 6) |
| | Summary Plan Description of the Meditech Profit Sharing Plan as of January 1, 1998 | DEF000072-DEF000083 (Plaintiffs' Deposition Exhibit 9) |

Plaintiffs' Correspondence

|  | Description | Bates |
|---|---|---|
|  | Letter to D. Hinchliffe re: Summary of Compensation dated January 30, 1998 | DEF013141 |
|  | Letter from D. Hinchliffe dated February 9, 1998 and Direct Rollover Authorization form | DEF001056-DEF001058 |
|  | Distribution Note & Benefits Letter to D. Hinchliffe dated April 15, 1998 | DEF001052-DEF001055 |
|  | Disbursement of $1,123,639 lump sum to D. Hinchliffe dated May 28, 1998 | DEF001051 |
|  | Hinchliffe papers | HIN 004-HIN 005; HIN 007-HIN 012 |
|  | Distribution Note & Benefits Letter to W. Trainor dated April 15, 1998 | DEF001046-DEF001048 (part of Plaintiffs' Deposition Exhibit 17) |
|  | Letter from W. Trainor and Request for Direct Rollover form dated April 28, 1998 | DEF001049-DEF001050 (part of Plaintiffs' Deposition Exhibit 17) |
|  | Disbursement of $929,943 lump sum to W. Trainor dated May 28, 1998 | DEF001045 (part of Plaintiffs' Deposition Exhibit 17) |

Plan Assets

|  | Description | Bates |
|---|---|---|
|  | Letter to staff dated January 31, 1997 | DEF001388-DEF001395 (part of Plaintiffs' Deposition Exhibit 10) |
|  | Letters to staff dated January 30, 1998 | DEF001396-DEF001405 |
|  | 1996 Trust Financial Report | DEF001393 (part of Plaintiffs' Deposition Exhibit 12) |
|  | 1997 Trust Financial Report | DEF001402-DEF001404 (part of Plaintiffs' Deposition Exhibit 12) |
|  | 1998 Trust Financial Report and Condensed Plan Report | DEF001415-DEF001418 (part of Plaintiffs' Deposition Exhibit 12) |

Form 5500s

|  | Meditech Form 5500 dated June 26, 1997 for Plan Year 1996 | DEF000848-DEF000860 (part of Plaintiffs' Deposition Exhibit 14) |
|---|---|---|
|  | Meditech Form 5500 dated June 15, 1998 for Plan Year 1997 | DEF000861-DEF000873 (part of Plaintiffs' Deposition Exhibit 14) |
|  | Meditech Form 5500 dated July 22, 1999 for Plan Year 1998 | DEF000874-DEF000886 (part of Plaintiffs' Deposition Exhibit 14) |

Internal Trustee Reports

|  | Memo from Pappalardo to Manzolillo dated December 31, 1996 re: Annual Valuation of the Trust's Assets for 1996 | DEF001337-DEF001340 (Plaintiffs' Deposition Exhibit 20) |
|---|---|---|
|  | Memo from Pappalardo to Manzolillo dated January 2, 1998 re: Annual Valuation of the Trust's Assets for 1997 | DEF001333-DEF001336 (Plaintiffs' Deposition Exhibit 21) |
|  | Memo from Pappalardo to Manzolillo dated January 5, 1999 re: Annual Valuation of the Trust's Assets for 1998 | DEF001329-DEF001332 (Plaintiffs' Deposition Exhibit 22) |

Financial Statements/SEC Forms

|  | Form 10K filed by Meditech dated April 15, 1997 for year 1996 | DEF003646-DEF003673 (part of Plaintiffs' Deposition Exhibit 82) |
|---|---|---|
|  | Form 10K filed by Meditech dated March 26, 1998 for year 1997 | DEF003619-DEF003645 (part of Plaintiffs' Deposition Exhibit 82) |
|  | Form 10K filed by Meditech dated May 13, 1999 for year 1998 | DEF003674-DEF003699 (part of Plaintiffs' |

10

|   |   |   |
|---|---|---|
|   |   | Deposition Exhibit 82) |
|   | Form 13D filed by Grossman, et al. dated February 27, 2002 | Plaintiffs' Deposition Exhibit 30 |
|   | Schedule 14A filed by Defendant Pappalardo with the SEC dated March 22, 2002 | DEF011807-DEF011817 Grossman case – Pappalardo Deposition Exhibit 1; Roberts Deposition Exhibit 4 |
|   | Statement of Stock Ownership of Defendant Pappalardo dated September 26, 2003 | DEF011655-DEF011656 |

Meditech Internal Documents

|   |   |   |
|---|---|---|
|   | Full Report to the Board for Quarter Ending December 31, 1995 | DEF000334-DEF000390 (portion – Plaintiffs' Deposition Exhibit 63) |
|   | Full Report to the Board for Quarter Ending September 30, 1996 | DEF006858-DEF006908 |
|   | Full Report to the Board for Quarter Ending December 31, 1996 | DEF006909-DEF006965 (portion – Plaintiffs' Deposition Exhibit 64) |
|   | Full Report to the Board for Quarter Ending March 31, 1997 | DEF002950-DEF003000 |
|   | Full Report to the Board for Quarter Ending September 30, 1997 | DEF002840-DEF002893 (Plaintiffs' Deposition Exhibit 37) |
|   | Full Report to the Board for Quarter Ending December 31, 1997 | DEF002779-DEF002839 (Plaintiffs' Deposition Exhibit 79) |
|   | Full Report to the Board for Quarter Ending March 31, 1998 | DEF002723-DEF002778 |
|   | Full Report to the Board for Quarter Ending June 30, 1998 | DEF002672-DEF002722 |
|   | Full Report to the Board for Quarter Ending March 31, 1999 | DEF002505-DEF002555 (portions – Plaintiffs' Deposition Exhibits 44, 70) |

Chairman's Comments to the Board of Directors[1]

|  | Description | Bates |
|---|---|---|
|  | Chairman's Comments for Quarter Ending September 30, 1998 | DEF002618; DEF002626-DEF002630 (Plaintiffs' Deposition Exhibit 41) |
|  | Chairman's Comments for Quarter Ending December 31, 1998 | DEF002556; DEF002567-DEF002574 (Plaintiffs' Deposition Exhibit 43) |
|  | Chairman's Comments for Quarter Ending September 30, 1999 | DEF002399; DEF002406-DEF002410 (Plaintiffs' Deposition Exhibit 45) |
|  | Chairman's Comments for Quarter Ending December 31, 1999 | DEF002330-DEF002331; DEF002340-DEF002350 (Plaintiffs' Deposition Exhibit 47) |
|  | Chairman's Comments for Quarter Ending December 31, 2001 | DEF001848; DEF001859-DEF001867 (Plaintiffs' Deposition Exhibit 52) |
|  | Chairman's Comments for Quarter Ending September 30, 2002 | DEF001670; DEF001678-DEF001684 (Plaintiffs' Deposition Exhibit 53) |

Other

|  | Description | Bates |
|---|---|---|
|  | Letter from E. Roberts to A. Pappalardo dated November 4, 1999 | DEF012082-DEF012085 (Plaintiffs' Deposition Exhibit 78) |
|  | R. Driscoll's notes | RD000001-RD000004; RD000043-RD000044 |

---

[1] Defendants reserve the right to object to these proposed exhibits on the basis of completeness.

|  |  |  |
|---|---|---|
|  |  | (parts of Plaintiffs' Deposition Exhibit 54) |
|  | Notice of 30(b)(6) deposition dated May 26, 2006 | Plaintiffs' Deposition Exhibit 1 |
|  | H. Messing letter to staff dated June 9, 2000 | Plaintiffs' Deposition Exhibit 32 |
|  | H. Messing letter to staff dated March 25, 2002 | Plaintiffs' Deposition Exhibit 33 |
|  | Plaintiffs' Expert Report dated February 19, 2008 and possible supplement[2] |  |
|  | Excerpts from Defendant Pappalardo's deposition testimony plus exhibits[3] | See attached Schedule A |
|  | Excerpts from the Jerome Grossman deposition testimony dated May 5, 2005 in the Grossman v. Medical Information Technology, et al. case[4] | See attached Schedule B |

---

[2] Defendants reserve the right to object to this proposed exhibit.
[3] Defendants reserve the right to object to this proposed exhibit.
[4] Defendants reserve the right to object to this proposed exhibit.

Schedule A

Defendant Pappalardo Deposition Excerpts

| |
|---|
| July 20, 2005 Deposition in <u>Grossman v. Medical Information Technology, et al.</u> Volume I (as 30(b)(6) witness): <br><br> Cover Page 1, plus <br> pp.10-11 <br> pp.106-111 |
| May 16, 2005 Deposition in <u>Grossman v. Medical Information Technology, et al.</u>: <br><br> pp.1-3 <br> p.5, lines 12-17 <br> p.63, line 3 to p.66, line 22 <br> p.75, line 4 to p.76, line 25 <br> p.92, line 5 to p.94, line 7 <br> p.111, line 10 to p.112, line 16 <br> p.155, line 16 to p.167, line 7 <br> p.172, line 5 to p.178, line 9 <br> p.188, line 10 to p.189, line 10 <br> p.196, line 6 to p.197, line 22 <br> p.199, line 3 to p.200, line 1 |
| July 21, 2006 Deposition in <u>Hubert, et al. v. Meditech, et al.</u> <br><br> p.11, line 22 <br> p.13, line 24 (omit p. 14, lines 3-10) to p.15, line 6 <br> p.15, lines 8-24 <br> p.17, lines 2-18 <br> p.22, lines 11-15 <br> p.23, line 1 to p.25, line 2 <br> p.29, line 1 to p.30, line 7 <br> p.40, line 19 to p.41, line 20 <br> p.43, line 22 to p.44, line 3 <br> p.46, line 23 to p.50, line 5 <br> p.114, line 3 to p.116, line 11 <br> p.136, line 23 to p.138, line 21 <br> p.139, line 24 (starting "I would…") to p.141, line 21 <br> p.164, line 4 to p.167, line 167 <br> p.196, line 4 to p.197, line 21 <br> p.198, line 8 to p.199, line 3 |

15

> November 27, 2007 Deposition in <u>Hubert, et al. v. Meditech, et al.</u>
>
> p.1 to p.6, line 9
> p.14, line 16 to p.18, line 15
> p.24, line 21 to p.28, line 9
> p.43, lines 2-19
> p.44, line 21 to p.46, line 10
> p.54, line 2 to p.57, line 7
> p.71, line 24 to p.72, line 1, to
>     p.72, line 6 to p.74, line 6
> p.97, lines 3-6
> p.101, line 24 to p.106, line 23

Schedule B

Grossman v. Medical Information Technology, et al.
Jerome H. Grossman Deposition Excerpts
May 5, 2005

```
p.5, lines 15-18
p.8, line 17 (starting "Was there…") to p.9, line 1
p.10, lines 4-18
p.12, line 6 to p.13, line 6
p.13, lines 14-22
p.16, line 9 to p.18, line 15
p.52, line 15 to p.66, line 1
p.68, line 17 to p.71, line 8
```

Respectfully submitted,
**Michael P. Hubert,**
**William Trainor, and**
**David Hinchliffe,**
Individually and as representatives of a class of all others similarly situated,
By their attorneys,


  /s/ Jennifer M. Ryan
Michael A. Collora (BBO #092940)
David A. Bunis (BBO #550570)
Jennifer M. Ryan (BBO #661498)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA  02210
671-371-1000
671-371-1037

Dated:  April 21, 2008

**CERTIFICATE OF SERVICE**

I, Jennifer M. Ryan, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on this 21 day of April, 2008.

/s/ Jennifer M. Ryan
Jennifer M. Ryan

04/18/08

Exhibit A to Plaintiffs Pre-trial Memorandum

The Plan

(1) In or about 1973, Medical Information Technology, Inc. ("Meditech") adopted a defined contribution plan ("The Plan") for the benefit of its employees, which has been in existence at all relevant times. Pursuant to the Plan Meditech also created the Medical Information Technology, Inc. Profit Sharing Trust (the "Trust"), to be maintained by a Trustee.

(2) The Plan was amended and restated in January, 1989 and January, 1998.

(3) According to the Plan, employees of Meditech who have been employed for more than one year are eligible to join the Plan, and are fully vested after five years of service with the company. Employees make no monetary contributions to the Trust.

(4) While the Plan's claims procedures permit the adoption of regulations to guideclaims, no regulations have ever been adopted. No claims for additional benefits have ever been filed under the Plan.

The Company

(5) For the calendar years dated 1995, 1996, and 1997 Meditech had the following revenue, net income, and earnings per share:

|      | Revenue (in millions) | Net Income | Earnings per Share |
|------|-----------------------|------------|--------------------|
| 1995 | $143,721              | $37,085    | $2.35              |
| 1996 | $167,884              | $44,350    | $2.80              |

  1997  $193,805  $50,284  $3.14

Management Revenue Goals

(6) Meditech has one class of common stock and the stock is not listed on an Exchange. For the years 1995, 1996, 1997, and 1998, the Meditech Board of Directors determined the following values for Meditech stock as of December 31 of each year, for purposes of Meditech contributing stock to the Trust and selling shares to Meditech employees:

  1995  $10.00  (post May 2001 split)

  1996  $12.00

  1997  $13.50

  1998  $14.50

(7) The Board votes in 1996 and 1997 regarding the price of Meditech stock for purposes of contribution of stock to the Trust and sale of stock to employees were:

  <u>1996</u>: Upon motion duly made and seconded it was unanimously

   Resolved: That based upon statistical data submitted by the Chairman and upon projections of income for the fourth quarter of 1996 submitted by the Chief Financial Officer, the fair market value of the company's common stock is hereby stipulated to be $24.00 per share as of the Company's forthcoming year-end date of December 31, 1996.

  <u>1997</u>: Upon motion duly made and seconded it was unanimously

   Resolved: That based upon statistical data submitted by the Chairman and upon projections of income for the fourth quarter of 1997 submitted by the Chief Financial Officer, the fair market value of the company's common stock is hereby stipulated to be $27.00 per share as of the Company's forthcoming year-end date of December 31, 1997.

### Valuation of Meditech Stock by Trustee

(8)     The Trustee of the Meditech profit sharing trust, since its inception in 1973 has always been A. Neil Pappalardo, a founder of the company. Pappalardo is also Meditech's Chairman and CEO.

(9)     The Trustee must value the assets in the Plan each year.

(10)    The Trustee of the Plan has always determined the same value for the fair market value of Meditech common shares at year end as the Board of Directors had selected the previous October.(31) Jerome Grossman and his family filed a Form 13D on or about February 27, 2002 with the Securities & Exchange Commission.

(11)    Jerome Grossman sued Meditech, A. Neil Pappalardo and others in Suffolk Superior Court (MA) in 2003, # 03-1872-BLS2

(12)    Jerome Grossman is now deceased.

### Statistics Regarding The Plan

(13)    On the following dates, the Plan had the following number of active members:

As of December 31, 1997:    1393

As of December 31, 1998:    1549

(14)    According to Defendants' Answers to Interrogatories, the following number of Plan participants withdrew their interest in the Plan and received aggregate amounts as noted:

|          | Number | Amount      |
|----------|--------|-------------|
| in 1996: | 98     | $2,212,565  |
| in 1997: | 117    | $2,111,284  |
| in 1998: | 135    | $4,777,565  |

(15)   The Trustee's financial report for year end 1997 indicates the Trust owns 1,469,010 shares of Meditech stock worth $39,663,270 at the then prevailing value of $27 [$13.50 post split] per share.  The Trust itself had $65,963,861 in assets including the stock

Case 1:05-cv-10269-RWZ   Document 138-2   Filed 04/21/2008   Page 4 of 4