UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL P. HUBERT, WILLIAM TRAINOR, and DAVID HINCHLIFFE,<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL INFORMATION TECHNOLOGY PROFIT SHARING PLAN, MEDICAL INFORMATION TECHNOLOGY, INC., and A. NEIL PAPPALARDO,<br><br>Defendants. | Civil Action No. 05-10269 (RWZ)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF MICHAEL P. HUBERT'S MOTION
FOR VOLUNTARY DISMISSAL OF CLAIM**

On April 17, 2008, with fact and expert discovery closed, with a pretrial conference only two business days away, and having been informed that Defendants would soon be moving for summary judgment, Plaintiffs' counsel filed a motion to voluntarily dismiss the claim of the original named plaintiff in this litigation, Michael Hubert, *without* prejudice (the "Motion to Voluntarily Dismiss").  The Motion to Voluntarily Dismiss provides absolutely *no* explanation why it should be granted.  At this stage in the case, with Defendants having incurred substantial costs, attorney's fees, and expert fees preparing a defense to Hubert's meritless claim and with a motion for summary judgment now pending, it is preposterous for Plaintiffs' counsel to think that Hubert should be permitted to walk away, potentially to take another bite at the apple.  It is even more ridiculous when one considers that the Motion to Voluntarily Dismiss provides absolutely *no* explanation to either the Court or Defendants why this extreme step should be permitted.  The Motion to Voluntarily Dismiss should be denied, but if Hubert's claim must be dismissed, then the dismissal must be with prejudice.

1

## BACKGROUND

Hubert, a former regional sales manager for defendant Medical Information Technology, Inc. ("Meditech" or the "Company") who made millions of dollars through his membership in the Medical Information Technology, Inc. Profit Sharing Plan (the "Plan") and from his personal ownership of Meditech's non-publicly traded stock, has been considering ways to wring additional money out of the Company for years.

In February 2002 Hubert sent an anonymous email to a number of Boston law firms, including Plaintiffs' counsel at Dwyer & Collora, proposing this very lawsuit. Hubert, however, signaled that he would not be satisfied merely with any recovery on his own claim in such a case. Instead, he wrote "As an employee of this firm, bringing this case to you, and willing to be active in the case, I wish be [sic] receive financial consideration for my efforts." *See* email dated February 18, 2002 (appended to the Affidavit of Kevin P. Martin ("Martin Aff.") as Exhibit 1).

In October 2002, Hubert approached a former Meditech director, Jerome Grossman, who was involved in a dispute with the Company. In emails and in meetings, Hubert, with the assistance of Plaintiffs' counsel Michael Collora, secretly offered to sell Grossman confidential, internal Meditech information that, Hubert believed, Grossman could use to blackmail the Company into conceding his demands. In a draft written agreement Hubert sent to Grossman, Hubert proposed: "It is understood that when this agreement is reached $x,xxx,xxx will be paid to Michael Hubert." Email dated October 1, 2002 (Martin Aff., Ex. 2). When the Company learned (through discovery in litigation Grossman brought against the Company) of Hubert's secret effort to enrich himself by selling confidential Company information to Grossman, it fired Hubert in July 2004.

Since his firing, Hubert has repeatedly attempted to convince his fellow Meditech shareholders that the Company would be better off having an outside appraiser value Meditech's non-publicly traded stock for purposes of sales to employee and contributions to the Trust, rather than the Board as has been the case for decades. Each time, Hubert's shareholder proposal was rebuffed by wide margins: by nearly 10 to 1 in 2005, and by more than 15 to 1 in 2006. *See* Medical Information Technology, Inc. Form 10-Q for the quarter ended March 31, 2005 and Medical Information Technology Inc. Form 10-Q for the quarter ended March 31, 2006 (Martin Aff., Exs. 3, 4, respectively).

This lawsuit began over three years ago, in February 2005, with a putative class action complaint (the "Complaint") filed by Dwyer & Collora on behalf of only one named Plaintiff: Hubert. Defendants moved to dismiss the Complaint, at which point Plaintiffs filed an amended complaint (the "Amended Complaint") naming two additional plaintiffs, David Hinchliffe and William Trainor, who Hubert had recruited. Defendants again moved to dismiss, and after that motion was granted in part and denied in part on March 20, 2006, class discovery began. *See* Amended Complaint (Docket No. 15); Memorandum of Decision dated March 20, 2006 (Docket No. 38). Class discovery revealed that Hinchliffe and, especially, Trainor had almost no idea what was happening in the case and clearly were deferring to counsel and Hubert.

Throughout this litigation, Defendants have spent considerable time and incurred substantial costs and attorney's fees due to the assertion of Hubert's claim, much of which would not have been incurred had Hubert not been a plaintiff.

During class discovery, which lasted from April until August 2006, Defendants took discovery concerning defenses unique to Hubert's claim and concerning Hubert's suitability to be a class representative, and responded to Plaintiffs' discovery with respect to Hubert. Among other things, Hubert was deposed by Defendants on July 26, 2006, and Defendants also asked

3

both Hinchliffe and Trainor what they knew about Hubert's offer to sell Meditech information to Grossman. Furthermore, Defendants had to prepare and defend Meditech's Chairman and CEO and trustee of the Trust (defendant Pappalardo), and Meditech's CFO and the administrator of the Trust for the Company (Barbara Manzolillo), at depositions noticed by Plaintiffs, depositions at which Plaintiffs' counsel repeatedly asked the witnesses questions specifically relating to Hubert's claim. *See, e.g.,* Deposition of A. Neil Pappalardo ("Pappalardo Depo.") dated July 21, 2006 at 142-144, 152, 192-193 (Martin Aff., Ex. 6); Deposition of Barbara Manzolillo ("Manzolillo Depo.") at 93-100 ("Martin Aff., Ex. 8"). Defendants prepared and served interrogatories and document requests directed specifically to Hubert's claim, and responded to interrogatories and document requests from Plaintiffs that were clearly intended to obtain information relevant to Hubert's claim. *See, e.g.,* Martin Aff. Ex. 5 (compiling the written discovery requests served in this litigation).

When Plaintiffs moved for class certification on August 15, 2006, they proposed Hubert as a class representative. *See* Plaintiffs' Motion for Class Certification (Docket No. 55). Accordingly, Defendants prepared arguments, both in briefing and for oral argument, as to why Hubert would be an inadequate class representative – including arguments based on Hubert's offer to sell confidential Meditech information for personal profit – and why Hubert's interests are in conflict with those of absent class members.

When class certification was denied on March 20, 2007, Plaintiffs moved this Court for reconsideration and then petitioned the First Circuit for leave to file an interlocutory appeal. *See* Plaintiffs' Motion for Reconsideration of Denial of Class Certification (Docket No. 93). Defendants opposed both those efforts, again making arguments specific to Hubert. *See*, *e.g.*, Defendants' Opposition to Plaintiffs' Motion for Reconsideration of Denial of Class Certification (Docket No. 99). Throughout this process Plaintiffs' counsel continued to give

4

every indication that they would be proceeding with Hubert's claim, stating for example that they intended to rely upon an expert opinion concerning the valuation of Meditech stock from 2001 through 2004. *See id.*

During merits discovery in the summer and fall of 2007, Defendants again expended considerable time and expense defending themselves with respect to Hubert's individual claim. Plaintiffs deposed defendant Pappalardo, four additional members of the Meditech board, and Meditech's President, and in all six depositions Plaintiffs' counsel asked questions concerning the valuation of Meditech stock in periods that Plaintiffs now argue are only relevant to Hubert's claim because they occurred after Hinchliffe and Trainor had already left the Company in 1998. *See*, *e.g.,* Deposition of A. Neil Pappalardo dated November 27, 2007 at 168-172 (Martin Aff., Ex. 7).[1] As recently as February 21, 2008, Plaintiffs took the deposition of Grossman, and at his deposition asked him questions concerning events and valuations of Meditech stock occurring after Hinchliffe and Trainor left Meditech, but while Hubert was still employed by the Company. *See, e.g.*, Deposition of Jerome Grossman dated February 21, 2008, at 92-102 (Martin Aff., Ex. 9).

In merits discovery Plaintiffs also subpoenaed third-party investors in Meditech concerning purchases and sales of Meditech stock that occurred after Hinchliffe and Trainor left the Company and the Plan in 1998. Defendants not only reviewed these documents but also prepared their witnesses to be deposed on the subject of these transactions. Again, this is evidence that Plaintiffs' counsel now asserts is not relevant to the case. *See* Martin Aff., ¶ 15.

Defendants also expended time and money preparing offensive discovery – interrogatories and document requests – during the merits phase of this case concerning Hubert's

---

[1] At a meet and confer Plaintiffs and Defendants held on April 17, 2008, Plaintiffs' counsel reserved the right to object to the introduction of any valuation-related documents pertaining to periods after Hinchliffe and Trainor left Meditech, or documents concerning Hubert's individual claim, on the basis that they are not relevant. *See* Martin Aff. ¶ 22. Defendants dispute that position.

claim. Indeed, as late as December 27, 2007, Plaintiffs produced documents to Defendants and served interrogatory responses concerning Hubert's claim. *See* Plaintiffs' Supplemental Response to Defendants' Second Set of Interrogatories (Martin Aff., Ex. 10).

More recently, Defendants have expended considerable time and money retaining experts to prepare reports opining, in part, on Hubert's claim. On April 7, 2008, Defendants served two expert reports, both of which contain opinions disproving Hubert's claim. For example, Defendants' expert valuation report examines the effect of Plaintiffs' proposed alternate valuation methodology on Hubert's claim for additional benefits, concluding that application of Plaintiffs' method would result in the trust set up under the Plan (the "Trust") running out of cash and cash equivalents by 2000, as a result of which Hubert would actually receive less in benefits (indeed, if anything) than he actually did under Defendants' method. *See* Expert Report of Rick S. Nathan and Christopher C. Barry dated April 7, 2008 (Martin Aff., Ex. 11). This analysis required significant work to determine what Meditech's share values might be under Plaintiffs' alternate methodology in years for which Plaintiffs provided no values, as well as measuring the impact of these hypothetical valuations on the cash and cash equivalent holdings of the Trust. *See id.* Defendants also incurred considerable expense having their experts opine on the returns enjoyed by Hubert through his purchases of Meditech stock and membership in the Plan, and asking the experts to measure comparative returns from public companies and stock market indices and volatility for the same periods applicable to Hubert. *See id.*

Knowing that Defendants' expert reports were due to be served on April 7, 2008, Plaintiffs' counsel waited until April 4, 2008, to send an email to counsel for Defendants vaguely stating "We do not yet have MHubert's permission to drop his portion of the claim and it may be an issue at the hearing. I will further advise you as to that." Email dated April 4, 2008 (Martin

Aff., Ex., 12). This was the first indication that Plaintiffs counsel ever provided to Defendants that they might be seeking to voluntarily dismiss Hubert's claim, and it was delivered far too late for Defendants to avoid the considerable expert and other expenses discussed above. *See* Martin Aff., ¶ 16.

Defendants also had been preparing, and on April 18, 2008 filed, a motion for summary judgment (the "Motion for Summary Judgment") (Docket No. 132). The Motion for Summary Judgment and its supporting documents, including a memorandum in support, a statement of undisputed material facts, and an attorney's affidavit, all (among other arguments) support summary judgment arguments specifically directed at Hubert's claim. Defendants had long signaled to Plaintiffs' counsel that the Motion for Summary Judgment would be filed. More recently, in Defendants' Opposition to Plaintiffs' Amended Motion for Class Certification, filed on April 8, 2008 (Docket No. 125), Defendants stated (at pg. 19) that they "will be filing a motion for summary judgment based, among other reasons, on Plaintiffs' failure to come forward with a viable theory of the case." And on April 14, 2008, the parties negotiated mutual consent to reply briefs on Plaintiffs' Amended Motion for Class Certification and Defendants' then-anticipated Motion for Summary Judgment. *See* Martin Aff., ¶ 19.

During the period between April 4 and the filing of the Motion to Voluntarily Dismiss on April 17, Defendants requested that Plaintiffs provide a firm indication whether they actually would be moving to voluntarily dismiss Hubert's claim. On April 14, counsel for Defendants asked Plaintiffs' counsel to inform them by the end of the day whether a motion to dismiss would be filed, but no response was received. *See* Martin Aff., ¶ 18. Plaintiffs' counsel did not provide any additional information concerning their plans for Hubert until the morning of April 17, 2008, when Plaintiffs' counsel – without stating what the basis for the motion would be –

called to ask if Defendants would consent to the dismissal of Hubert's claim without prejudice, a request Defendants rejected.  *See* Martin Aff., ¶¶ 18, 20.

The Motion to Voluntarily Dismiss was then filed on the morning of April 17.  The *full* text of the Motion to Voluntarily Dismiss simply reads:

> Pursuant to Rule 41(A)(2) Plaintiff Hubert seeks dismissal of his claim for benefits pursuant to 29 U.S.C. which claim is contained within Count I of the Complaint, as a claim for damages for failure to receive his ERISA benefits in 2004. Hubert seeks dismissal, without prejudice, of his claim for benefits.

The Motion to Voluntarily Dismiss provides no explanation why dismissal without prejudice should be granted after the close of class, fact, and expert discovery, and only two business days before the pretrial conference, and it was accompanied by no memorandum in support.

Later in the morning of April 17, the parties held a previously scheduled meet and confer pursuant to this Court's March 20, 2008 Procedural Order regarding Pretrial Conference/Trial (the "March 20, 2008 Order").  At the meet and confer counsel for Defendants repeatedly inquired of Plaintiffs' counsel whether they would provide any further explanation why they were seeking to voluntarily dismiss Hubert's claim.  Plaintiffs' counsel at first replied that no explanation would be given, and that if the Court were to inquire into the basis for the Motion to Voluntarily Dismiss, Plaintiffs' counsel would seek an *in camera* conversation with the Court with Defendants excluded.  Defendants told counsel for Plaintiffs that Defendants would object to any such *in camera* or *ex parte* communication with the Court.  Plaintiffs counsel later stated that they might provide Defendants with the basis for their Motion to Voluntarily Dismiss on Friday, April 18.  No explanation, however, was ever provided.  *See* Martin Aff., ¶ 21.

At the meet and confer, Plaintiffs' counsel reserved the right to object, on the basis of relevance, to the introduction of any valuation-related documents pertaining to periods after

8

Hinchliffe and Trainor left Meditech.  Plaintiffs' counsel also reserved the right to object to the introduction of any materials pertaining to Hubert.  See Martin Aff., ¶ 22.

In the meantime, a pretrial conference has long been scheduled in this case for April 22, 2008.  In accordance with the Court's pretrial order, sent to the parties on March 20, 2008, and in light of the uncertainty concerning Hubert's claim, Defendants, among other items of preparation, spent considerable time and effort preparing exhibit and witness lists, and considering potential stipulated facts, based on the current status of the case with Hubert as a plaintiff.  *See* Martin Aff., ¶ 23.

## ARGUMENT

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that "an action shall not be dismissed at the plaintiff's insistence save upon order of the court and upon such terms and conditions as the court deems proper."  Dismissal without prejudice should be denied if it would cause prejudice to the defendants or if evidence of abuse by the movant is shown.  *See Doe v. Urohealth Systems, Inc.*, 216 F.3d 157, 160 (1st Cir. 2000)   The First Circuit has directed district courts, in ruling on a Rule 41(a)(2) motion, to consider "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant."  *Id.* at 160; *Zagano v. Fordham University*, 900 F.2d 12, 14 (2nd Cir. 1990) ("Factors relevant to the consideration of a motion to dismiss without prejudice include … the duplicative expense of relitigation").  The trial court has broad discretion in evaluating the appropriateness of dismissal without prejudice.  *See, e.g., Doe*, 216 F.3d at 160 ("The district court is responsible under the rule for exercising its discretion to ensure that such prejudice will not occur").

9

### I.     Hubert is not Entitled to Dismissal Without Prejudice Because He has Provided No Explanation or Support for his Motion to Voluntarily Dismiss

As a first grounds for denying the Motion to Voluntarily Dismiss, Hubert has failed to provide *any* explanation for why dismissal without prejudice is warranted after three years of litigating this matter. Instead, Hubert has submitted to this Court a one sentence motion simply requesting dismissal no questions asked, no basis given, and no memorandum of law provided. Such a motion is patently insufficient and should be denied. *See*, *e.g., Doe*, 216 F.3d at 160 (referring to "insufficient explanation for the need to take a dismissal" as a grounds for denying a motion); *Guptill v. Martin*, 228 F.R.D. 62, 65 (D. Me. 2005) (refusing to grant a voluntary dismissal without prejudice because the plaintiffs' proffered explanation was insufficient).

Indeed, the Motion to Voluntarily Dismiss is in fragrant violation of Local Rule 7(B)(1) of this Court, which requires that:

> A party filing a motion shall at the same time file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted. Affidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion.

Plaintiffs' blatant disregard for the Rules of this Court is reason alone to deny the motion.

On this point, the Court should not permit Plaintiffs to provide the Court with an explanation for the absurdly tardy and prejudicial Motion to Voluntarily Dismiss only *ex parte* or *in camera*. Considering the substantial expense and effort incurred by Defendants over the past three years in defending this action, and given Hubert's record of deceit, Defendants are entitled to know, to comment on, and if appropriate to take discovery concerning whatever grounds might be put forward by the Plaintiffs.

### II.    Plaintiffs Caused Defendants to Incur Significant Costs in Defending Hubert's Claim

As described in detail above, Defendants have incurred substantial costs and attorney's fees, and expended considerable effort, addressing Plaintiffs' allegations and establishing their own defenses, including specifically responding to allegations and developing defenses relevant to Hubert's claim but not those of the other named Plaintiffs. Such costs, attorney's fees and effort are a clearly, independently sufficient grounds to deny a voluntary motion to dismiss. *See Doe*, 216 F.3d at 160 (referring to "the defendant's effort and expense of preparation for trial" as grounds for denying a voluntary motion to dismiss without prejudice).

Plaintiffs could only have maximized further the prejudice to Defendants if they had waited to file the Motion to Voluntarily Dismiss the day before the trial, if any, in this action. (For the reasons given by Defendants in the Motion for Summary Judgment, a trial in this case is unnecessary because the undisputed material facts demonstrate that Defendants are entitled to judgment against each of the three Plaintiffs, including Hubert). Plaintiffs waited until April 4, 2008 – the Friday before Defendants' expert reports were due on Monday, April 7, long after the close of discovery, and less than three weeks before the pretrial conference long scheduled for April 22 – to announce ambiguously that they *might* be moving to dismiss Hubert's claim. And Plaintiffs did not actually file the Motion to Voluntarily Dismiss until April 17, only *two business days* before the pretrial conference. Throughout this entire period, including during the last few weeks and days, Defendants have incurred considerable expense preparing for a trial in which Hubert is a plaintiff. Indeed, because the Motion to Voluntarily Dismiss was filed only on April 17 and has not been ruled on, Defendants *continue* to incur costs and attorneys' fees, and to expend effort, preparing for a trial with Hubert as a Plaintiff.

The case is now three years old. Throughout this case – including in briefing Defendants' motions to dismiss; engaging in class discovery; briefing class certification

11

including opposing Plaintiffs' motion for reconsideration and petition for interlocutory review; engaging in merits discovery; retaining expert witnesses to prepare and serve expert reports; and preparing for trial – Plaintiffs have had to confront the individual claim of Hubert, the only one of the three named Plaintiffs to have left the Plan in 2004 (Hinchliffe and Trainor having left in 1998). The idea that Hubert could, at this point, with discovery closed, a motion for summary judgment filed, and a pretrial conference only days away, and without even explaining why, dismiss his claim without prejudice is not only frivolous and absurd as a matter of first principles but contrary to the law.

Moreover, the juxtaposition of Plaintiffs' two recent, tardy motions filed within the last four weeks – the March 25, 2008, "amended" motion for class certification and the April 17, 2008 Motion to Voluntarily Dismiss – is suspicious to say the least. If Plaintiffs' counsel believes that there is a conflict among his clients, or that Hubert's history of dishonest and shady conduct might taint or conflict with the claims of the suddenly and improperly proposed new "class," Plaintiffs counsel was responsible for solving those problems years ago. At this stage, if Hubert's claims are ever to be tried they must be tried together with his co-plaintiffs, in one trial, or Defendants will be severely prejudiced. Defendants justifiably fear that Plaintiffs' latest gambit is a tactical maneuver, and an improper one.

Dismissal without prejudice would leave open the possibility that Defendants would have to re-litigate Hubert's claim. Hubert should not be permitted to harass Defendants in this way. Nor should any of the three Plaintiffs be able to force a second trial on these claims. Defendants have diligently defended this litigation, so to bring a close to this matter and prevent further expense and distractions from their business. To bring an end to this litigation, and to prevent

Hubert from wasting Defendants' and the Court's resources in the future, the Court should deny the Motion or dismiss Hubert's action with prejudice.

### III.     Defendants Have Filed a Motion for Summary Judgment

As a third, independently sufficient basis for denying Plaintiffs' belated effort to voluntarily dismiss Hubert's claim without prejudice, the undisputed evidence collected throughout this case demonstrates that Defendants are entitled to summary judgment on Hubert's claim.

As discussed in Defendants' Memorandum in Support of their Motion for Summary Judgment, filed on April 18, 2008 (Docket No. 133), Defendants are entitled to summary judgment against Hubert because, among other reasons, Plaintiffs have provided no evidence supporting his claim that he was denied benefits owed him by the Trust. In particular, while Plaintiffs provided an expert report purporting to estimate the value of Meditech stock as of December 31, 1997 (the last valuation before Hinchliffe and Trainor received their benefits from the Trust) they provided no report valuing the stock as of December 31, 2003, as necessary for Hubert. Indeed, use of the stock valuation methodology employed by Plaintiffs' only expert in this case suggests that Hubert would have received *less* in benefits under Plaintiffs' alternate valuation methodology than he actually did under Defendants' method. That is because Plaintiffs' method would result in the Trust receiving fewer shares of Meditech stock than were contributed to the Trust through use of Defendants' valuation methodology. It would also result in the Trust bleeding large amounts of cash and cash equivalents in the period leading up to Hubert's receipt of benefits in 2004, such that Hubert might have received nothing at all, or certainly much less than he did.

Moreover, Defendants believe that they are entitled to summary judgment on Hubert's claim because he failed to exhaust administrative remedies available to him under the Plan.

13

Additionally, if the case were to proceed to trial Defendants would argue that they are entitled to judgment because Meditech stock was not, in fact, undervalued as of December 31, 2003; that the Trustee did not act arbitrarily and capriciously in valuing Meditech stock held by the Trust; that even if Defendants' methodology does undervalue Meditech stock that the undervaluation did not cause Hubert to receive any less in benefits than he would have under other methodologies; and that Hubert's claim is barred based on equitable doctrines including laches, waiver, and estoppel.

Because Defendants are entitled to judgment on Hubert's claim under the record developed in this case, Hubert should not now be entitled to walk away without prejudice, so that he can put Defendants through all of this expense again, or wait to see what happens in the first trial and then decide whether to proceed with a second trial.  Hubert's claim is meritless and Defendants are entitled to judgment; if the claim is to be dismissed before the Motion for Summary Judgment is ruled on, or before trial if there is one, then the dismissal must be with prejudice.

## CONCLUSION

For the reasons given above, the Court should either deny the Motion to Voluntarily Dismiss, or dismiss Hubert's claim with prejudice.  Given the impropriety of Plaintiffs' pending Motion, and Plaintiffs' utter failure to file the Motion in compliance with the Rules of this Court, Defendants respectfully pray for their costs and attorneys fees in preparing this Opposition.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Defendants respectfully request a hearing on the pending Motion to Voluntarily Dismiss.  Defendants believe that oral argument may assist the Court,

particularly given the long history of this case relevant to consideration of Plaintiffs' improper Motion to Voluntarily Dismiss. Accordingly, Defendants respectfully wish to be heard at oral argument.

          Respectfully submitted,

          MEDICAL INFORMATION TECHNOLOGY, INC. PROFIT SHARING PLAN, MEDICAL INFORMATION TECHNOLOGY, INC. and A. NEIL PAPPALARDO.

          By their attorneys,

          /s/ Kevin P. Martin
          Stephen D. Poss (BBO # 551760)
          Kevin P. Martin (BBO # 655222)
          GOODWIN PROCTER LLP
          Exchange Place
          Boston, Massachusetts 02109-2881
          (617) 570-1000
          sposs@goodwinprocter.com
          kmartin@goodwinprocter.com

Dated: April 22, 2008

## CERTIFICATE OF SERVICE

      I, Kevin P. Martin, hereby certify that I caused a true copy of the above document to be served upon the counsel of record for each other party via this Court's ECF System on April 22, 2008.

                                        /s/  Kevin P. Martin